

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

AES:LHE/JAM/GSM
F. #2018R01064

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 23, 2021

By ECF

The Honorable Diane Gujarati
United States District Judge
Eastern District of New York
Brooklyn, New York 11201

      Re:    United States v. Gentile, et al.
                Criminal Docket No. 21-54 (DG)

Dear Judge Gujarati:

      The government respectfully submits this letter motion to ask the Court to enter an Order, pursuant to Rule 502(d) of the Federal Rules of Evidence, authorizing the government to produce a collection of data obtained in connection with the February 2019 judicially-authorized search of the offices of GPB Capital Management LLC ("GPB") that has been identified as potentially subject to attorney-client or attorney work product privileges (the "Potentially Privileged Materials"). See Proposed Order, enclosed hereto as Exhibit A.[1] Counsel to GPB has no objection to the Proposed Order. Defendant Jeffrey Lash likewise has no objection to the Proposed Order. Defendants David Gentile and Jeffry Schneider object to the Proposed Order on the grounds that, either as a consequence of David Gentile's ownership of GPB, or unspecified "common interest" agreements between one or more parties, they are themselves privilege holders and object to the prospect of their privileged materials being produced to their co-defendants.

      The government respectfully submits that production of these materials pursuant to the Proposed Order is the solution that best balances the government's interest in complying with its discovery obligations and the interests of those parties who may hold privileges implicated by these documents. In the alternative, the government respectfully requests that the Court rule that because the Potentially Privileged Materials remain segregated outside the possession of the prosecution team, they are not subject to any ongoing disclosure obligation and direct the government not to produce them to the defendants and instead return them to GPB.

---

    [1]    The government proposes that its filter team would produce the materials directly to the individual defendants. The materials would remain segregated and not be provided to the prosecution team.

I.      Factual Background

As detailed in the Indictment, ECF Dkt. No. 1, during the relevant period, GPB, founded by defendant Gentile in or around 2013, was a New York-based investment advisor registered with the United States Securities and Exchange Commission ("SEC"). Indictment ¶¶ 1-2. GPB served as the general partner of several investment funds (collectively, the "GPB Funds"). Id. The business of GPB was to manage the GPB Funds, which raised and invested capital in a portfolio of private equity investments. Id. Defendants Gentile and Schneider worked closely together on the founding, development, operation and marketing of the GPB Funds. Id. ¶¶ 2-3, 18-19. From 2013 through early 2018, defendant Lash was responsible for overseeing the GPB Funds' investments in car dealerships, which made up a sizable percentage of GPB's portfolio companies. Id. ¶ 9. As alleged in the Indictment, the defendants deceived investors and prospective investors about the profitability of certain GPB Funds. Id. ¶¶ 15-49.

   A.   The Search of GPB Offices

On or about February 27, 2019, the Honorable Ona T. Wang, Magistrate Judge for the Southern District of New York, authorized warrants to search GPB's Manhattan office, located at 535 West 24th Street, as well as GPB's computer server, housed at 104 West 40th Street (the "S.D.N.Y. Warrant,"). Also on February 27, 2019, the Honorable Steven I. Locke, Magistrate Judge for the Eastern District of New York, authorized a warrant to search GPB's Long Island office, located at 1581 Franklin Avenue, Garden City (the "E.D.N.Y. Warrant," together with the S.D.N.Y. Warrant, the "Search Warrants").

The following day, the Search Warrants were executed at GPB's Manhattan and Garden City offices as well as at its server. Counsel for GPB was present at the Manhattan location during the search and communicated with both the agents executing the warrant and members of the prosecution team during the search. Pursuant to the Search Warrants, electronic evidence from GPB's server was seized, as well as electronic devices such as laptops, tablets and related peripherals associated with several custodians, including Gentile. These items were either forensically imaged on site during the execution of the Search Warrants, or were taken and imaged at FBI facilities by members of the Computer Analysis and Response Team ("CART") and subsequently returned to GPB's counsel.

   B.   The Privilege Screen

Prior to any member of the prosecution team reviewing the seized evidence for material responsive to the Search Warrants, forensic software and other tools were utilized to identify and segregate any potentially privileged communications or materials. This included the use of word search techniques, such as the names, emails and other identifiers of known in-house or outside attorneys that were retained or consulted by individuals and entities associated with GPB, as well as Boolean operators. These identifiers were provided to the government by GPB's counsel, upon request, and contained well over 100 attorneys and consultants from dozens of firms. Any items that "hit" on these searches were removed, placed in the custody of

Assistant United States Attorneys assigned to serve as filter counsel (the "Filter Team"),[2] and have not been available to any member of the prosecution team. In total, the Potentially Privileged Materials comprise approximately 146,601 documents.

      C.   Discovery to Date and the Proposed Rule 502(d) Stipulation

Since the defendants' arrest on February 4, 2021, the government has made eleven discovery productions, including the returns from the Search Warrants—specifically, the dataset available to the prosecution team and excluding the Potentially Privileged Materials.

To comply with its discovery obligations while balancing the interests of parties who may hold privileges in certain materials seized pursuant to the Search Warrants, the government proposed a Rule 502(d) stipulation (the "Proposed Stipulation"). The provisions of the Proposed Stipulation largely tracked those of the instant Proposed Order—namely, that the Filter Team would produce the Potentially Privileged Materials to all the defendants while preserving any and all potential privilege claims that could be asserted by any of the signatories or other privilege holders. Defendants Gentile and Schneider were unwilling to join the Proposed Stipulation.

II.    Applicable Law

The government is subject to a variety of legal disclosure obligations in a criminal case, including, most relevant here, obligations under Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure, requiring disclosure of any data material to the preparation of the defense, and obligations under Brady v. Maryland, 373 U.S. 83 (1963) ("Brady") and Giglio v. United States, 405 U.S. 150 (1972) ("Giglio"), requiring the government to disclose evidence that is favorable to the accused and evidence that is useful for impeaching a government witness.[3]

The attorney-client privilege applies to any communication (1) between client and counsel that (2) was intended to be and was in fact kept confidential and (3) was made for the purpose of obtaining or providing legal advice. In re County of Erie, 473 F.3d 413, 419 (2d Cir.

---

[2]    The Filter Team is comprised of Assistant United States Attorneys and staff with no responsibility for prosecuting this matter.

[3]    In addition to the foregoing constitutional requirement, the government abides by the expanded disclosure policy set forth in the Justice Manual, which, inter alia, "encourages prosecutors to err on the side of disclosure in close questions of materiality and identifies standards that favor greater disclosure in advance of trial through the production of exculpatory information that is inconsistent with any element of any charged crime" or that "establishes a recognized affirmative defense." Justice Manual §§ 9-5.001(F) & (C)(1). This policy, moreover, recognizes that "information which is irrelevant or not significantly probative of the issues," or involves "spurious issues or arguments," is not subject to disclosure. Justice Manual §§ 9-5.001(C).

3

2007). The attorney work product doctrine provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation. In re Grand Jury Subpoena dated July 6, 2005, 510 F.3d 180, 183 (2d Cir. 2007).

"[C]riminal defendants have a constitutional right to present a complete defense . . . . In certain cases, a criminal defendant's constitutional right to present a defense may outweigh a third party's right to assert privilege." United States v. Weisberg, 08-CR-347 (NGG), 2011 WL 1327689, at *4-5 (Apr. 5, 2011) (considering motion from a criminal defendant seeking evidence from a third party in response to a Rule 17 subpoena that the third party claimed was privileged) (citing Fed. R. Evid. 501 ("Except as otherwise required by the Constitution of the United States . . . the privilege of a witness [or] person . . . shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.")). Cf. United States v. Nixon, 418 U.S. 683, 713 (1974) ("The generalized assertion of [executive] privilege must yield to the demonstrated, specific need for evidence in a pending criminal trial.").

III.    The Government's Motion

    A.   The Proposed Order Will Allow the Government to Comply with its Discovery Obligations in the Absence of a Waiver

As in every case prosecuted by this Office, the government is committed to fully complying with its disclosure obligations, as well as Department of Justice discovery policies. In complex cases such as this, involving lengthy multi-component schemes with multiple participants acting in different roles, reasonable attorneys can reach different conclusions as to the usefulness of any given piece of evidence to a given defendant. Consequently, in its discovery productions to date, the government has chosen to err on the side of disclosure and has provided the defense with materials beyond what is strictly required to be disclosed under the law.

The government would prefer to proceed similarly with the Potentially Privileged Materials and hoped to achieve their production pursuant to the Proposed Stipulation. Similar stipulated orders have been entered, on consent of the parties, in other complex fraud cases where the government has obtained potentially privileged materials through the execution of search warrants on corporate offices. See United States v. Nordlicht, 16-CR-640 (BMC), ECF Dkt. No. 246. Here, defendants Gentile and Schneider have objected to the Proposed Order, resulting in the instant motion.

    1.   Courts Have Taken Varied Approaches to Handling Conflicts Between the Government's Disclosure Obligations and Applicable Privileges

Prior cases addressing the intersection of the government's disclosure obligations and attorney-client privileges yield conflicting precedent. Some courts have found violations of the government's disclosure obligations where it has failed to produce evidence because it was protected by a third party's privilege. In United States v. Paulus, 952 F.3d 717 (6th Cir. 2020), the district court had ordered the government not to disclose certain evidence to which a third party had claimed privilege; in doing so, the district court declined to assess the privilege claim

but found the evidence was inadmissible.  Id. at 722.  Upon review, the Court of Appeals found the Court erred, and ruled that a Brady violation had occurred, finding that "[i]rrespective of the good faith or bad faith of the prosecution, the failure to disclose favorable, material evidence to the defense violates due process."  Id. at 728.  Even more recently, in United States v. Avenatti, a district court in the Central District of California declared a mistrial where certain data, which had been identified as potentially privileged through the use of search terms, segregated from the prosecution team, and not timely produced before trial commenced, was found to be potentially useful to the defense.  See Transcript of Proceedings dated August 24, 2021, United States v. Avenatti, No. 19-CR-61 (JVS), attached hereto as Exhibit B.

       This reasoning is consistent with other cases where courts have ruled that where there is a conflict between a defendant's due process rights and attorney-client privilege, the defendant's constitutional right to a fair trial must prevail.  See also United States v. Sattar, No. 02-CR-395 (JGK), 2003 WL 22137012 (S.D.N.Y. Dec. 20, 2010) ("[T]he evidentiary privileges [of attorney-client privilege and attorney work product] are not constitutional in nature.  The attorney-client privilege is itself based on policy, rather than in the Constitution, and therefore it alone cannot stand in the face of countervailing law or strong public policy and should be strictly confined within the narrowest possible limits underlying its purpose.").

       By contrast, in another recent case, United States v. Hall, No. 18-CR-623, 2020 WL 7027473 (Nov. 30, 2020), a district court in the Northern District of Texas denied the government's motion for an order under Rule 502(d) under circumstances somewhat similar to those here.  In that case, the government had searched a pharmacy business located in Fort Worth Texas.  Id. at *1.  Like here, the government assigned a filter team of prosecutors who had no responsibilities relating to the instant investigation to isolate potentially privileged materials by using search terms provided by counsel to the pharmacy.  Id.  The government then requested a Rule 502(d) order allowing its filter team to produce those isolated materials in fulfillment of its various discovery obligations.  Id. at 2.  The Court found that the government was not entitled to such an order as it related to documents for which objecting defendants had a privilege, and concluded that the government had no right to "use or disclose materials confiscated during the execution of the September 2016 search warrant that the warrant did not specifically authorize it to seize," specifically including privileged materials.  Id.  Notably, in its order, the Court remarked that it had previously granted orders under Rule 502(d) in other analogous cases, see id. at *4, citing United States v. Harris, et al., 17-CR-103, ECF Dkt. No. 251 (N.D. Tex. Aug. 28, 2017), but "could only conclude that such an order falls outside the bounds of Rule 502(d)."

       In other cases, courts have preferred to proceed by reviewing potentially privileged material in camera to determine whether it should be disclosed.  In Sattar, Judge Koeltl considered a government motion for authorization to produce to an indicted criminal defendant audio and video recordings of prison visits and calls between two of his co-defendants and an attorney, which had been obtained by the government pursuant to surveillance under the Foreign Intelligence Surveillance Act of 1978 ("FISA").  2003 WL 22137012 at *1-2.  There, the government's filter team had prepared redacted transcripts of the material in question, removing any material that the filter team decided was privileged.  The Court decided to conduct an in camera review of the materials identified as privileged to determine what should be disclosed to Sattar.  Id. at *22.

Informed by this precedent, the government seeks the guidance of the Court, and requests the Proposed Order to be consistent with its decision to err on the side of disclosure in this case. In requesting that the Court enter the Proposed Order, the government acknowledges that the prospect of any Brady violation resulting from the non-disclosure of the Potentially Privileged Materials is speculative, as the prosecution team does not know whether there is, in fact, any evidence of exculpatory value within the Potentially Privileged Materials. The government respectfully submits, however, that it would be inappropriate, and potentially ineffective, to task the Filter Team, which has been specifically assigned because they have no role in handling this investigation or case, to review the Potentially Privileged Materials for information that could be useful to the defense. Identifying material of potential usefulness to the defense in a case involving a complex, multi-year fraud scheme, such as this matter, is a nuanced task under the best of circumstances, let alone if assigned to a group of attorneys who lack a deep understanding of the facts of the case. Moreover, such a delegation would not end the matter, because at present, the government has a limited understanding of the defendants' planned defenses. It is possible that the Filter Team would be required to conduct multiple reviews of the Potentially Privileged Materials as information regarding the defendants' possible defenses comes to light and informs the Filter Team's view as to what might be useful to the defense.

As a result, the government respectfully submits that the Proposed Order presents the appropriate resolution of the various competing interests at play, as it would provide the defendants with the most complete disclosure possible while avoiding waiver of any relevant privilege interest. Should the Court disagree, and as discussed in more detail in Section IV, infra, the government alternatively seeks an Order directing it not to disclose the Potentially Privileged Materials, which are outside the scope of materials "seized" by the government pursuant to the Search Warrants and to which the prosecution team has no access, and instead to return those materials to GPB.

B. Defendants Gentile and Schneider's Counterproposal Is Unreasonable and Unjust

In discussions between the parties regarding the Proposed Order, defendants Gentile and Schneider have alleged that they have standing to object to the Proposed Order; specifically, defendant Gentile contends he is a joint privilege holder with GPB because he is the owner of GPB, and defendant Schneider has suggested that he holds a "common interest" privilege with GPB or some other privilege holder. For the reasons set forth below, neither Gentile nor Schneider has a viable claim of being a privilege holder. Moreover, defendant Gentile's suggestion that the government create a privilege log of the more than 140,000 documents that comprise the Potential Privileged Materials is impracticable, unduly burdensome for the parties, the Court and GPB, and risks unfairness to defendants Schneider and Lash.

1. Gentile and Schneider Lack Standing to Object

It is unclear how Gentile and Schneider have standing to object to the Proposed Order, as neither appears to have a viable claim of being a privilege holder. The Potentially Privileged Materials were seized from GPB's offices, and GPB's corporate policy reflected that its employees lacked any expectation of privacy in the company's computer systems or email accounts, including personal, non-work-related messages and all data stored on company

6

computers. See GPB Capital Employee Handbook at 17-18 (Nov. 1, 2014) (previously produced as SEC-EDNY-006455252) (reflecting that GPB employees have "no expectation of privacy" in any of GPB's computer technology resources, including devices and email accounts). Thus, to the extent Gentile and Schneider claim privilege over hypothetical communications with personal attorneys made over GPB systems, that claim fails. See e.g., United States v. Finazzo, No. 10-CR-457 RRM RML, 2013 WL 619572, at *11 (E.D.N.Y. Feb. 19, 2013) (holding that attorney-client privilege was waived where employee communicated on company email with attorney); In re Rsrv. Fund Sec. & Derivative Litig., 275 F.R.D. 154, 164 (S.D.N.Y. 2011) (holding that marital privilege was waived where employee communicated on company email with wife). Moreover, given that the list of attorneys used to conduct the privilege screen was provided by counsel for GPB,[4] who represented to the government that the list comprised in-house and outside counsel to GPB, it is unlikely that the Potentially Privileged Materials contain communications with individuals' personal lawyers.[5]

To the extent defendant Gentile is arguing that he has some special claim to privilege over communications with GPB's counsel, by virtue of his status as an employee or owner of the company, that argument fails as a matter of law. Any privilege applicable to communications with GPB's counsel belongs to GPB, because in the case of communications with corporate counsel, "the privilege belongs to the corporation, not to the agent." In re Grand Jury Proc., 219 F.3d 175, 185 (2d Cir. 2000) (citing United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, 119 F.3d 210, 215 (2d Cir. 1997)); Teamsters, 119 F.3d at 215 ("Recognizing that entities can act only through agents, courts have held that any privilege that attaches to communications on corporate matters between corporate employees and corporate counsel belongs to the corporation, not to the individual employee, and that employees generally may not prevent a corporation from waiving the attorney-client privilege arising from such communications.") (citations omitted). Moreover, it makes no difference that Gentile was both an employee and an owner of GPB, as Gentile is not the privilege holder over communications with counsel to GPB. See United States v. Deluca, No. 72-C-496, 1972 W l3187, at *1 (S.D.N.Y. Oct. 13, 1972) ("Any claims to personal privilege as to corporate records [on the part of a "sole owner"] are relinquished when the corporate form of doing business is chosen. The rule has application even where the corporation is the mere alter ego of its owner.") (internal citations and quotation marks omitted); United States v. Daugerdas, 757 F. Supp. 2d 364, 370–71 (S.D.N.Y. 2010) (holding that a chief executive partner's "privilege claim is properly evaluated under the Teamsters standard, notwithstanding that BDO is a partnership rather than a corporation."); Cf. United States v. Rosenstein, 474 F.2d 705, 715 (2d Cir. 1973 (finding that a sole owner of a corporation cannot assert the Fifth Amendment to refuse to produce documents requested from the corporation). Thus, Gentile cannot assert privilege over his communications with GPB's counsel by virtue of his ownership of the company.

---

[4] Neither Gentile nor Schneider ever sought to supplement that list with the names of any individual counsel.

[5] Notably, the Proposed Order provides that privilege over any documents in the production would not be waived by any party as a consequence of their production. See Proposed Order ¶ 4 (specifying that the production will trigger no waiver of any privilege holder).

Finally, defendant Schneider purports to have never been an employee of GPB, and so the government understands his claim to standing to be an unspecified "common interest" agreement. Without further details regarding this agreement the government is unable to respond directly to Schneider's claim, but it seems unlikely that Schneider has or had a common interest agreement with GPB.

2. Gentile's Proposed Solution is Impracticable and Risks Unfairness

Assuming, arguendo, that Gentile and Schneider have standing to object to the Proposed Order, their proposed solution, which involves the Filter Team creating a privilege log setting forth information about each document and the basis for its being privileged, is impracticable. First, preparation of such a log would be extremely burdensome and threatens to delay progress in this case. Second, privilege logs are typically prepared by a party asserting privilege over a collection of documents. It would be unfair to task the government's Filter Team, which is not asserting privilege over these documents, with this undertaking. Moreover, the government's Filter Team is likely not well situated to identify the basis for privilege reflected in each of the over 140,000 documents comprising the Potentially Privileged Materials. While the prosecution team could provide the Filter Team with factual information relevant to identifying privileges that are related to this case, given the broad swath of communications with lawyers and consultants as to which GPB has claimed privilege, the Potentially Privileged Materials may well include material touching on other legal advice or work product relating to topics as to which the prosecution team is not aware.[6]

The proposed solution is also unreasonable because it would serve only to further delay resolution of this issue. Once a privilege log is created, there would doubtlessly remain a large subset of documents that appear to be subject to privileges held by GPB and be relevant to this case; the issue of whether those documents should be disclosed to the defendants would remain. The creation of a privilege log would only increase the likelihood that the Court would need to engage in a document by document weighing of privilege claims and exculpatory value to any of the individual defendants of some collection of materials. Such a process would be burdensome upon the Court, substantially delay progress in this case, and likely result in the Court ultimately needing to either order the production of some material over the objection of one of the defendants or deny a defendant's claim of constitutional entitlement in any event.

Finally, Gentile's proposal risks inflicting an injustice upon his co-defendants, particularly defendant Lash, who has requested discovery of these materials. It would be unfair to allow Gentile to manipulate the government's discovery process by objecting to making discovery accessible to his co-defendants, particularly where his claims to standing are tenuous at best.

---

[6] Typically, a privilege log would be created by a party asserting privilege over a given collection of documents. Here, GPB is not a party before the Court, and it is unclear whether the Court has authority to direct them to prepare such a log. Moreover, the preparation of such a log would undoubtedly require many attorney hours which would ultimately be paid by GPB, thereby reducing any recovery to GPB's investors, whom the government views as victims of the charged fraudulent scheme.

IV.      <u>In the Alternative, the Government Requests a Ruling Regarding its Discovery Obligations</u>

As discussed above, several courts that have considered the government's disclosure obligations in the context of privileged materials have concluded that evidence that is not properly "seized" by the government as responsive to a search warrant is not subject to any disclosure obligations, as such disclosure would be improper. See <u>Hall</u>, 2020 WL 7027473, at *5 ("[I]f the government is not authorized to seize [certain materials], it certainly has no authority or legal obligation to disseminate it."). Indeed, courts have observed that because evidence that has been segregated and removed from the prosecution team's possession is not "in the possession of" the prosecution team, the discovery obligations applicable to material <u>within</u> the prosecution team's possession logically do not apply. <u>See</u> <u>United States v. Fishoff</u>, 15-CR-586 (MAS), 2016 WL 4414780, at *4 (D. N.J. Aug. 16, 2016) (finding that privileged e-mail messages "do not fall under the government's <u>Brady</u> obligation because the government is not in actual or constructive possession of the documents as those documents were sequestered"). Following this reasoning, to the extent the Court declines to enter the Proposed Order, the government requests that the Court direct the government to not disclose the Potentially Privileged Materials and return them to GPB.

\* \* \* \* \*

The government respectfully requests that the Court enter the Proposed Order. In the alternative, should the Court decline to enter the Proposed Order, the government respectfully requests that the Court direct the government to not disclose the Potentially Privileged Materials, and instead return them to GPB.

            Respectfully submitted,

            JACQUELYN M. KASULIS
            Acting United States Attorney

By:     /s/
            Lauren Howard Elbert
            Artie McConnell
            Garen S. Marshall
            Assistant U.S. Attorneys
            (718) 254-7577