EXHIBIT B

1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

UNITED STATES OF AMERICA,      )CERTIFIED TRANSCRIPT
                    Plaintiff,  )
      vs.                       )
                                )  SACR-19-00061-JVS
MICHAEL JOHN AVENATTI,          )
                    Defendant.  )    TRIAL DAY 26
------------------------------)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

August 24, 2021

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(714) 543-0870

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
 1   APPEARANCES OF COUNSEL:

 2   For the Plaintiff:

 3   NICOLA T. HANNA
     United States Attorney
 4   BRANDON D. FOX
     Assistant United States Attorney
 5   Chief, Criminal Division
     ALEXANDER WYMAN
 6   Assistant United States Attorney
     Major Frauds Section
 7   1100 United States Courthouse
     312 North Spring Street
 8   Los Angeles, CA  90012
     (213) 894-6683
 9
     BRETT A. SAGEL
10   Assistant United States Attorney
     Ronald Reagan Federal Building
11   411 West Fourth Street, Suite 8000
     Santa Ana, CA  92701
12   (714) 338-3598

13   For the Defendant:

14   MICHAEL JOHN AVENATTI, PRO SE

15   H. DEAN STEWARD, ADVISORY COUNSEL
     H. DEAN STEWARD LAW OFFICES
16   107 Avenida Miramar, Suite C
     San Clemente, CA  92672
17   (949) 481-4900

18

19

20

21

22

23

24

25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 09:25 | **1** | SANTA ANA, CALIFORNIA; TUESDAY, AUGUST 24, 2021; 8:05 A.M. |
| 09:25 | **2** | (Jury not present) |
| 08:05 | **3** | THE CLERK:  Item 1, SACR-19-00061-JVS, United |
| 08:05 | **4** | States of America versus Michael John Avenatti. |
| 08:05 | **5** | MR. SAGEL:  Good morning, Your Honor.  Brett Sagel |
| 08:05 | **6** | and Alexander Wyman on behalf of the United States and the |
| 08:05 | **7** | Prosecution Team.  And at counsel table is Patrick |
| 08:05 | **8** | Fitzgerald with the Privilege Review Team of the United |
| 08:05 | **9** | States. |
| 08:05 | **10** | THE COURT:  Good morning. |
| 08:05 | **11** | MR. AVENATTI:  Good morning, Your Honor.  Michael |
| 08:05 | **12** | Avenatti, present with Mr. Steward and Ms. Cummings-Cefali. |
| 08:06 | **13** | THE COURT:  Good morning. |
| 08:06 | **14** | I received last night Mr. Avenatti's status |
| 08:06 | **15** | report, Re:  Search of Service for Financial Data at Docket |
| 08:06 | **16** | No. 775. |
| 08:06 | **17** | Any further supplement on the findings yesterday? |
| 08:06 | **18** | MR. FITZGERALD:  Yes, Your Honor.  I would like to |
| 08:06 | **19** | provide further information to the Court and counsel on |
| 08:06 | **20** | three issues:  one, a small what I believe point of |
| 08:06 | **21** | clarification to the defense status report; two, memorialize |
| 08:06 | **22** | certain agreements that the Prosecution Review Team and the |
| 08:06 | **23** | defense reached yesterday; and, third -- |
| 08:06 | **24** | THE COURT:  The Privilege Review Team. |
| 08:06 | **25** | MR. FITZGERALD:  Excuse me.  Thank you, Your |

08:06  1   Honor, the Privilege Review Team.  And third, provide a
08:06  2   brief supplement for events that happened yesterday after
08:06  3   the conclusion of the meeting with the defense at our
08:07  4   office.
08:07  5           First, as far as the clarifications go -- and once
08:07  6   I'm finished, I'll invite the defense to respond.
08:07  7           On lines 4 through 6 on page 2, there is a
08:07  8   reference to the number of Tabs files and QuickBooks files.
08:07  9   My understanding is that at the moment we are not able to
08:07  10  determine which of these files relate to the clients at
08:07  11  issue in this case and which relate to all the other clients
08:07  12  in the case.  It may be that we will need the license and
08:07  13  the software from the vendor to be able to do that.
08:07  14          The second clarification is on lines 12 through 14
08:08  15  about the discovery that we and the defense made at about
08:08  16  6:00 p.m.  I believe this refers to the assessment that we
08:08  17  made that there is probably information on the virtual
08:08  18  system that was not captured by the forensic searches that
08:08  19  Mr. Varani made for us yesterday.
08:08  20          Then in regard to the agreements of the parties,
08:08  21  first, the Privilege Review Team allowed the defense to take
08:08  22  iPhone photographs of certain screens on their review of the
08:08  23  virtual system, and we're trying to get screenshots.  They
08:08  24  said that they would provide those to the Privilege Review
08:08  25  Team.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:08  **1**        Second, all of this information that was produced

08:09  **2**    yesterday the parties agreed would be produced pursuant to a

08:09  **3**    modified Protective Order, which I would like to memorialize

08:09  **4**    now.

08:09  **5**        It is largely based on the applicable Protective

08:09  **6**    Order in this case, Document No. 74, that was filed on

08:09  **7**    December 31st, 2019, with certain changes.

08:09  **8**        First, in paragraph three, all of the material

08:09  **9**    that was produced yesterday will be deemed sensitive

08:09  **10**   information as that is defined in paragraph three.

08:09  **11**       Second, the permission in paragraph eight that

08:09  **12**   defendant and his counsel may provide this information in

08:09  **13**   other matters relating to Mr. Avenatti is stricken.  The

08:09  **14**   information that was provided by the Privilege Review Team

08:10  **15**   over the weekend and then yesterday is for use only in this

08:10  **16**   case and not for any other criminal, bankruptcy, or civil

08:10  **17**   proceeding absent further permission from the Court.

08:10  **18**       And then finally there is a new provision.  The

08:10  **19**   defense and the government agreed that in accessing this

08:10  **20**   material, the defense and anyone working on behalf of the

08:10  **21**   defense would in no way review or look at or attempt to

08:10  **22**   access any information relating to the clients that were

08:10  **23**   listed in the search warrant, which I believe is in

08:10  **24**   paragraph 17, which I will just say collectively is the

08:10  **25**   Clifford litigation, clients which they should not be

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:11   1   accessing which is set out in paragraph 17 of the search

08:11   2   warrant that was filed on March 25th, 2019.

08:11   3           And then finally as a supplement to what happened

08:11   4   last night after the defense finished reviewing the virtual

08:11   5   system, which is in a conference room in the United States

08:11   6   Attorney's Office, the case agent for the Prosecution Team

08:11   7   was given access to it under my supervision.

08:11   8           He looked at an overall list of clients to

08:11   9   determine which of the clients were applicable to this case.

08:11   10  Then he clicked on the information for those clients and,

08:11   11  after exploring the software, he found material that he

08:11   12  believed was relevant to the Court's inquiry.

08:11   13          He was allowed to put that on a hard drive and

08:12   14  have it exported from the virtual system.  And my

08:12   15  understanding is that that material then was sent to the

08:12   16  Prosecution Team, and it has been produced to the defense.

08:12   17          THE COURT:  Thank you.

08:12   18          Mr. Avenatti.

08:12   19          MR. AVENATTI:  Your Honor, a couple points.  The

08:12   20  defense agrees with the modifications to the Protective

08:12   21  Order relating to this information as Mr. Fitzgerald stated

08:12   22  them in their entirety.  So I wanted to put that on the

08:12   23  record.

08:12   24          THE COURT:  Well, let's follow up when a formal

08:12   25  document gets filed.

08:12  **1**         MR. AVENATTI:  Agreed, Your Honor.

08:12  **2**         As it related to lines 4 through 6 of the status

08:12  **3**  report, the number of files that were listed, each of those

08:12  **4**  Tabs files, Your Honor "relates" to the clients in this

08:13  **5**  case, because when the files were produced, they were not

08:13  **6**  produced by client.  All of the Tabs data and files on the

08:13  **7**  server were produced.  By their very nature, they include

08:13  **8**  information relating to the clients in this case.  So these

08:13  **9**  file numbers are correct because each Tabs file, electronic

08:13  **10**  file, will have some relevance to the clients in this case.

08:13  **11**  They are not client specific.

08:13  **12**         We are still in the process -- we got an enormous

08:13  **13**  amount of data, six gigabytes.  It's going to take us a

08:13  **14**  while to go through this.

08:13  **15**         Number two, Your Honor, at lines 12 through 14, as

08:13  **16**  to this discovery at 6:00 p.m., I want the Court to

08:13  **17**  understand exactly what happened.  Mr. Varani sent over six

08:13  **18**  gigabytes of data from Washington, D.C.  While I was in the

08:13  **19**  offices of the U.S. Attorney's Office in L.A., I said to

08:14  **20**  Mr. Tashchyan is there a way for us to confirm that

08:14  **21**  everything that is on this virtual machine is included

08:14  **22**  within Mr. Varani's files that he just sent over?

08:14  **23**         We then began a process by which we attempted to

08:14  **24**  do that.  It became apparent to Mr. Tashchyan and us that

08:14  **25**  all of the data files on the virtual machine were not

08:14 **1** included in what Mr. Varani sent over, and it's unclear that

08:14 **2** those data files were actually accessible on the virtual

08:14 **3** machine for a technical reason.

08:14 **4** Rather than -- well, actually it was impossible at

08:14 **5** that time because of -- in the interest of time to do a full

08:14 **6** comparison of the two data sets.  It was agreed that that

08:14 **7** would be done depending on what happens today, this morning,

08:14 **8** and at a later date.  That still needs to be done.  But

08:14 **9** there's no question that we don't have data files that were

08:15 **10** on the virtual machine that are not within Mr. Varani's data

08:15 **11** set.

08:15 **12** I'm aware of the production of the government late

08:15 **13** last night of various reports relating to these clients.

08:15 **14** I'm going to reserve comment to later as it relates to what

08:15 **15** those reports show and don't show, and I will leave it at

08:15 **16** that.

08:15 **17** THE COURT:  Okay.

08:15 **18** MR. AVENATTI:  We are in the process of -- due to

08:15 **19** a computer malfunction, we weren't able to look at any of

08:15 **20** this data until 4:00 last night at the IRS Office due to a

08:15 **21** computer misfunction on their end.  But needless to say,

08:15 **22** it's a lot of information, and there's a lot of different

08:15 **23** reports that are available now that we have access to the

08:15 **24** actual date and the software.  There's audit reports.

08:15 **25** There's entry reports.  There's a bunch of information that

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:15  1    we now have that we did not have from the cold hard page.

08:16  2          THE COURT:  I believe the parties have done what I

08:16  3    requested yesterday.  You've provided me with a sampling of

08:16  4    what's in the collection of documents held by the Privilege

08:16  5    Review Team.  I think that sufficiently informs me to rule

08:16  6    on Mr. Avenatti's motion at 706.

08:16  7          I don't think I need an exhaustive presentation of

08:16  8    exactly what's there.  I think I have enough information to

08:16  9    intelligently rule on 706.

08:16  10         With that said, Mr. Avenatti, would you like to be

08:16  11   heard?

08:16  12         MR. AVENATTI:  I would, Your Honor.  Can I use the

08:16  13   podium?

08:16  14         THE COURT:  Sure.

08:16  15         MR. AVENATTI:  Your Honor, there has obviously

08:16  16   been a fair amount of briefing on this issue and a fair

08:16  17   amount of exhibits.  I'm not going to rehash the entire

08:17  18   timeline of what has gone on over this odyssey of the last

08:17  19   two-plus years, but I do want to bring the Court's attention

08:17  20   to a few important what I would call guideposts.

08:17  21         Number one, on March 25th, 2019, a search warrant

08:17  22   was executed at Ms. Regnier's home.  According to her trial

08:17  23   testimony, she claims that she "probably" told Special Agent

08:17  24   Karlous and AUSA Sagel at that interview on that date about

08:17  25   Tabs.

08:17  1          The Indictment in this case was issued in April of

08:17  2    2019.  In May of 2019 after I retained Mr. Steward as

08:17  3    counsel, he requested all Rule 16 and Brady information.  He

08:17  4    specifically identified the servers as a location where such

08:17  5    information could be found.  That's Exhibits A and B to our

08:18  6    reply on the pending motion at Docket 745.

08:18  7          Assistant U.S. Attorney Julian Andre responded to

08:18  8    those requests on May 24th, 2019, and here is what he said

08:18  9    in particular, Your Honor.  And it's Exhibit C to our reply

08:18  10   at 745.  I've provided a copy for the benefit of the Court.

08:18  11   There should be a packet there.

08:18  12          THE COURT:  Okay.  Thank you.

08:18  13          MR. AVENATTI:  It should be the first document,

08:18  14   May 24th, 2019.  And here is what he said under EA LLP

08:18  15   server:  "In connection with the government's investigation,

08:18  16   the Court-appointed Receiver for EA LLP consented to IRS-CI

08:18  17   creating a forensic image of the six digital devices that

08:19  18   comprise the EA LLP server, which were being stored by

08:19  19   MixinIT, a company in Orange County that stored and managed

08:19  20   computer servers.  After creating a forensic image of the EA

08:19  21   LLP server, the EA LLP server was returned to the EA

08:19  22   Receiver.  The government has since obtained a warrant to

08:19  23   search the forensic copy of the EA LLP server for relevant

08:19  24   evidence.  We will produce any relevant evidence seized from

08:19  25   the EA LLP server once the government completes the review

08:19 **1**  protocols set forth in the search warrant."

08:19 **2**          That was the representation made by Mr. Andre on

08:19 **3**  May 24th, 2019, very early on in this case, well over two

08:20 **4**  years ago.

08:20 **5**          When he mentioned these forensic images, these are

08:20 **6**  the forensic images that Mr. Varani testified to during the

08:20 **7**  trial as having been in the possession of the Department of

08:20 **8**  Justice computer lab in Washington, D.C.  These are the same

08:20 **9**  forensic images that Mr. Varani searched yesterday for the

08:20 **10** first time for the Tabs data and produced it yesterday

08:20 **11** through the Privilege Review Team to the defense.  Those are

08:20 **12** the exact same forensic images.

08:20 **13**         Following this representation by Mr. Andre, the

08:20 **14** defense continued to demand copies of the servers and all

08:20 **15** Brady information in the case to no avail.

08:20 **16**         On July 25th, 2019, an interview was conducted of

08:20 **17** Ms. Regnier.

08:21 **18**         THE COURT:  Your Exhibit 1084.

08:21 **19**         MR. AVENATTI:  1084.  Correct, Your Honor.  The

08:21 **20** four most senior individuals from the Prosecution Team were

08:21 **21** present for this interview -- Special Agent Karlous, Special

08:21 **22** Agent Kim, and both Assistant U.S. Attorneys, Mr. Sagel and

08:21 **23** Mr. Andre.

08:21 **24**         The entire purpose of this call according to the

08:21 **25** memorandum was to ask questions regarding the Eagan

08:21 **1**    Avenatti, LLP, server and how client files are created and
08:21 **2**    maintained on the server.  During this call, Your Honor,
08:21 **3**    Ms. Regnier informed all four members of Tabs, not once but
08:22 **4**    twice.  Most importantly, she informed them that the client
08:22 **5**    billing and client accounting was handled through Tabs,
08:22 **6**    quote, "Tabs would be used."  That was July 25th, 2019.
08:22 **7**         A month later -- and this timing is important.  A
08:22 **8**    month after that interview Your Honor denied our motion to
08:22 **9**    compel a copy of the servers.  You only did so after you had
08:22 **10**   been provided repeated assurances by the government that
08:22 **11**   they were going to comply with Brady.
08:22 **12**        In fact, Your Honor's order specifically states:
08:22 **13**   "The government has acknowledged its obligation to produce
08:23 **14**   all documents within the scope of the search warrants, as
08:23 **15**   well as its Brady and Giglio obligations."
08:23 **16**        As of that date that Your Honor made that
08:23 **17**   statement and as of the date of the representations made by
08:23 **18**   the Assistant U.S. Attorneys, they were well aware of the
08:23 **19**   existence and importance of the Tabs data.  Despite that, it
08:23 **20**   was not produced.  Nothing was done to look for it.
08:23 **21**        On November 19, 2019, Special Agent Roberson,
08:24 **22**   Special Agent Karlous, and Assistant U.S. Attorney Sagel had
08:24 **23**   another interview lasting over eight hours with Ms. Regnier.
08:24 **24**        THE COURT:  For the record, that's your
08:24 **25**   Exhibit 1085.

08:24  **1**            MR. AVENATTI:  Correct, Your Honor, 1085.

08:24  **2**            Paragraph 14 reflects that each of those gentlemen

08:24  **3**   were advised that there were two systems that were used to

08:24  **4**   track expenses, QuickBooks and Tabs.  The data was still not

08:24  **5**   produced to the defense, and there does not appear to have

08:24  **6**   been any effort whatsoever made to produce it.

08:25  **7**            Your Honor, to be clear, the Tabs data could only

08:25  **8**   be exculpatory.  It could never be inculpatory.  It could

08:25  **9**   never increase the amount of money that was owed to the

08:25  **10**  client.  It could only decrease the amount of money that was

08:25  **11**  owed to each of the clients by its very nature because it

08:25  **12**  did not track income or revenue.  It only tracked case

08:25  **13**  client expenses.

08:25  **14**           I would submit, Your Honor, that is why the

08:25  **15**  government never made an effort to produce it or to provide

08:25  **16**  it, because by its very nature it was exculpatory.

08:25  **17**           THE COURT:  Well, there could have been other

08:25  **18**  reasons why it was exculpatory, but certainly it could be

08:26  **19**  exculpatory on that basis.

08:26  **20**           MR. AVENATTI:  It could be exculpatory on that

08:26  **21**  basis.  It could be exculpatory on Giglio.  It could be

08:26  **22**  exculpatory based on who was working on the case and who had

08:26  **23**  costs on the case.  I mean, there's a myriad of reasons why

08:26  **24**  or how it could be exculpatory.  I agree.

08:26  **25**           Meanwhile, Your Honor, time and time again we

08:26  **1**   complained that all Brady and Giglio information had not

08:26  **2**   been produced.  And time and time again we were told that

08:26  **3**   all of it had been produced.  I'm not going to go through

08:26  **4**   each and every time we have put it in the papers, but the

08:26  **5**   representations were made to us and this Court repeatedly

08:26  **6**   that all Brady and Giglio information had been produced.

08:26  **7**        In fact, I think on one call, a conference that we

08:26  **8**   had sometime in 2020, Mr. Sagel made the representation

08:26  **9**   there was no Brady.  There was no exculpatory information in

08:27  **10**  the entire case, something that I found to be rather

08:27  **11**  remarkable in light of how much discovery had already been

08:27  **12**  produced in the case.

08:27  **13**       But in any event, after the passage of the Due

08:27  **14**  Process Protection Act, we moved for an order before this

08:27  **15**  Court, and we asked the Court to issue an order directing

08:27  **16**  the government to produce all information required under the

08:27  **17**  DPPA.

08:27  **18**       On January 25th, this Court issued an order at

08:27  **19**  Docket 408, and this order directed the government to

08:27  **20**  produce to the defendant in a timely manner all information

08:28  **21**  or evidence known to the government that is either, one,

08:28  **22**  relevant to the defendant's guilt or punishment; or, two,

08:28  **23**  favorable to the defendant on the issue of guilt or

08:28  **24**  punishment.  The order went on to talk about the

08:28  **25**  consequences for noncompliance.

08:28   1            In the event there was any question in the
08:28   2    government's mind as to whether the Tabs data and all
08:28   3    QuickBooks data needed to be produced, this order made it
08:28   4    clear as to what had to be produced, crystal clear.  No Tabs
08:28   5    data was produced following this order.
08:29   6            The defense subsequently moved for contempt.  One
08:29   7    of the items that the defense claimed had not been produced
08:29   8    in response to the order was all financial data relating to
08:29   9    the expenses of the clients.  The government claimed
08:29   10   everything had been produced and that we didn't know what we
08:29   11   were talking about.  I'm paraphrasing.
08:29   12           We continued to complain that we were missing
08:29   13   information, including up through the beginning of the
08:29   14   trial.  I believe our status report immediately -- final
08:29   15   status report referenced our concerns in this regard.
08:29   16           Then in the middle of trial, it was established
08:30   17   through cross-examination that the Tabs data was an integral
08:30   18   part of proving what was owed to the client.  And it's
08:30   19   important to recognize in my view, Your Honor, how this came
08:30   20   about.
08:30   21           The government admitted Exhibits 48 and 174.
08:30   22   Exhibit 48 is the cost listing for Johnson, and 174 is the
08:30   23   cost listing for Barela, at least interim statements.
08:30   24           THE COURT:  Draft statements.
08:30   25           MR. AVENATTI:  Draft statements.  Correct, Your

08:30  1   Honor.

08:30  2          The defense did not admit those.  The defense did

08:30  3   not seek to use them.  It was the government that

08:30  4   interjected this issue of the costs and expenses first into

08:30  5   the case.

08:30  6          THE COURT:  Well, whether they did it or not,

08:30  7   weren't you entitled to bring that up either in

08:31  8   cross-examination or in your case-in-chief if you decided to

08:31  9   put one on?

08:31  10         MR. AVENATTI:  Absolutely, Your Honor, we would

08:31  11  have been entitled to do that, and we would have been

08:31  12  entitled to use the data.  The only point that I make is

08:31  13  that it was the government that first went down this road of

08:31  14  putting this cost and expense data before the jury.  So

08:31  15  there can be little question at this point that the

08:31  16  government considered it relevant and material.  That's why

08:31  17  they used it.

08:31  18         Now, they then proceeded to use 48 and 174 with a

08:31  19  number of witnesses.  And we attached it as Exhibit A to our

08:31  20  filing last night.  I think there's five or maybe six

08:31  21  witnesses at minimum that they used these two exhibits with,

08:31  22  including Special Agent Karlous, Ms. Regnier, Mr. Barela,

08:31  23  Mr. Johnson, Mr. Arden.  I think that may be all five.  I'm

08:31  24  not certain.

08:31  25         We again demanded the production of the data on

08:32  1   August 12th at the latest.  Nothing happened for eight days,
08:32  2   literally nothing.  The government made no effort to find
08:32  3   out if this data existed and, if so, where it was or how it
08:32  4   could be produced to the defense.
08:32  5        It was not until last Friday when the Court issued
08:32  6   its directive -- its clear directive -- that we started to
08:32  7   get traction and actually get the data produced.  It was
08:32  8   finally produced to the defense yesterday as outlined in the
08:32  9   status report.
08:32  10       We explained to the Court the very limited review
08:32  11  that we have been able to do in the last I guess it's 16
08:32  12  hours or so.  That review continues.  There is a lot of
08:32  13  information to go through, a lot of Tabs information to go
08:32  14  through and a lot of QuickBooks information to go through.
08:33  15       We cited the Court to the Bundy case from the
08:33  16  Ninth Circuit.  I'm sure Your Honor has read the case.  For
08:33  17  the court reporter, it's at 968 F.3d 1019 (Ninth Circuit
08:33  18  2020).
08:33  19       There are many parallels, Your Honor, between this
08:33  20  case and the Bundy case.  But what the Ninth Circuit made
08:33  21  clear in Bundy is the materiality standard is a
08:33  22  post-conviction appellate standard.  Now, even under that
08:33  23  standard, I think this information qualifies easily.  But in
08:33  24  any event, we don't have to meet that standard.  The
08:33  25  question is was this information relevant?  It most

08:34 **1**  certainly was.  And the question is was it favorable?  It

08:34 **2**  most certainly was.

08:34 **3**         Bundy makes clear -- and I will cite Olson and

08:34 **4**  Price as well, two other Ninth Circuit cases -- that indeed

08:34 **5**  even if information is not favorable, if it would cause the

08:34 **6**  defense to change the trial strategy or to use a different

08:34 **7**  strategy or to abandon a strategy even, that it is required

08:34 **8**  to be produced pursuant to Rule 16 and Brady and Giglio.

08:34 **9**         There is no question, Your Honor, this data should

08:34 **10**  have been produced pursuant to Brady and Giglio.  The

08:34 **11**  prejudice is substantial as outlined in our report of last

08:34 **12**  night.

08:34 **13**         THE COURT:  I think you have very credibly

08:34 **14**  outlined what use you could have made of that information.

08:35 **15**         MR. AVENATTI:  Then at this point I will not go

08:35 **16**  further except to say, Your Honor, we still don't know the

08:35 **17**  full extent of the prejudice because we haven't been able to

08:35 **18**  review all of the data.

08:35 **19**         There is little question, Your Honor, we cannot

08:35 **20**  proceed with this trial as it stands.  We need time to

08:35 **21**  review this data.  It changes the entire approach of the

08:35 **22**  case from the defense perspective.  We would have to recall

08:35 **23**  at least five, if not seven, witnesses.  The government's

08:35 **24**  expert would have to be struck.

08:35 **25**         Again, I'm not going to get into how prejudicial

08:35  **1**  this has been.  It is beyond substantial.

08:35  **2**          THE COURT:  You're not suggesting that this trial

08:35  **3**  could proceed in some fashion?

08:35  **4**          MR. AVENATTI:  No, Your Honor, I do not believe

08:36  **5**  that it is possible for this trial to proceed in this

08:36  **6**  fashion for many, many reasons.

08:36  **7**          This information should have been produced two

08:36  **8**  years ago.  It was not.  There are exhibits now in the case

08:36  **9**  that are demonstrably false.  There are opinions that have

08:36  **10**  been put before the jury that are false, that are not

08:36  **11**  accurate, namely, because the government never had the

08:36  **12**  expert look at any of the Tabs data.

08:36  **13**          The expert, despite claiming to be an expert,

08:36  **14**  never asked for the actual Tabs data, never asked for the

08:36  **15**  cost information, which is frankly shocking.

08:36  **16**          For each of these reasons, Your Honor, I believe

08:36  **17**  that the motion for relief requested in the motion at 706

08:36  **18**  should be granted.

08:37  **19**          Now, Brady speaks of the fact that whether the

08:37  **20**  government acted in good faith or bad faith is really not a

08:37  **21**  consideration when the Court decides motions such as 706.

08:37  **22**  I'm not going to spend time casting aspersions on the

08:37  **23**  government, et cetera, because I don't think it's

08:37  **24**  relevant --

08:37  **25**          THE COURT:  I agree.

08:37   1          MR. AVENATTI:  -- frankly.  What I will say is
08:37   2   this.  This was not an isolated, one-time failure.  This was
08:37   3   not one oversight that occurred in the heat of trial or in
08:37   4   the heat of preparing for trial.  There was a repeated
08:37   5   failure to comply with basic constitutional requirements and
08:37   6   the basic requirements of Bundy, Price, and Olson, and
08:38   7   others by the government over a period of years.
08:38   8          THE COURT:  Well, I want to focus on the Tabs.  As
08:38   9   you recall, you've made a number of motions for a mistrial
08:38   10  with respect to allegedly missing documents.  On a number of
08:38   11  those, I found that the claim wasn't substantiated when the
08:38   12  government made a full showing.  So I prefer to concentrate
08:38   13  on Tabs and QuickBooks.
08:38   14         MR. AVENATTI:  Your Honor, I didn't mean to
08:38   15  suggest otherwise.  When I was speaking of a repeated
08:38   16  failure, I'm speaking strictly in the context of Tabs and
08:38   17  QuickBooks.  I'm not dealing with the other issues that we
08:38   18  have talked about, Jencks and things of that nature.
08:38   19         As to the interview notes that I placed before the
08:38   20  Court, Your Honor is clearly familiar with them.  You know
08:38   21  them by exhibit numbers.  They demonstrate how long this
08:38   22  problem has gone on and the repeated failures of the
08:39   23  government.
08:39   24         I think for all of those reasons, Your Honor, I
08:39   25  would ask that the Court grant defendant's motion at 706.

08:39   1    Unless the Court has any further questions --

08:39   2              THE COURT:  No.  Thank you.

08:39   3              Mr. Sagel, wouldn't you agree that the financial

08:39   4    data goes to the heart of this case?

08:39   5              MR. SAGEL:  Partially, and I say that in the

08:39   6    sense --

08:39   7              THE COURT:  Well, if we look to the way you've

08:39   8    summed up the case with Mr. Drum, if we go to Exhibits 430

08:39   9    to 457, and 457 especially, he has analyzed the financial

08:39   10   data available to him to establish the losses on the part of

08:39   11   each of the client victims, and that's almost pure financial

08:40   12   data.

08:40   13             MR. SAGEL:  That's why I say partially.  I will

08:40   14   start with that in the sense of with three of the victims,

08:40   15   while he analyzes and does charts showing what probably

08:40   16   based on the finances should have been paid to them and what

08:40   17   they're entitled to and so forth, part of the analysis is

08:40   18   zero dollars of their settlement money goes to them, as well

08:40   19   as $4 million of Ms. Phan's money does not go to her.

08:40   20             And before anything ever happens with determining

08:40   21   the costs, expenses, and so forth --

08:40   22             THE COURT:  Are you suggesting I grant relief with

08:40   23   respect to the claims of some victims but not as to others,

08:40   24   for example, Ms. Phan?

08:40   25             MR. SAGEL:  No, Your Honor.  And I can go through

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 08:40 | 1 | some of the finances, too, with regards to what in a short |
| 08:40 | 2 | period of time we were able to find, which I don't believe |
| 08:40 | 3 | substantiates the claims that were made both last night and |
| 08:41 | 4 | today.  I think there's other issues, too, that I would like |
| 08:41 | 5 | to address.  But when it comes to the finances of the costs |
| 08:41 | 6 | and the expenses, it's to put in perspective to the jury |
| 08:41 | 7 | what was going on, how the defendant was doing it, and that |
| 08:41 | 8 | these people were entitled to money. |
| 08:41 | 9 | THE COURT:  But if that perspective were incorrect |
| 08:41 | 10 | because not all of the data was taken into account, wouldn't |
| 08:41 | 11 | that potentially provide a basis to question everything |
| 08:41 | 12 | Mr. Drum did, to question across the board the accuracy of |
| 08:41 | 13 | the government's financial presentation? |
| 08:41 | 14 | MR. SAGEL:  To question, yes, but I guess I would |
| 08:41 | 15 | point to several things that -- |
| 08:41 | 16 | THE COURT:  Well, doesn't the defendant have a |
| 08:41 | 17 | right to examination, to question the financial analysis |
| 08:41 | 18 | made by the government? |
| 08:41 | 19 | MR. SAGEL:  He does, Your Honor, but I think we |
| 08:41 | 20 | are skipping several steps in that process, including what |
| 08:41 | 21 | the finances even show.  I would like to address that, |
| 08:41 | 22 | because what he's saying in broadbrush wasn't available to |
| 08:42 | 23 | him is not accurate. |
| 08:42 | 24 | From a very quick review of what was in Tabs for |
| 08:42 | 25 | these clients as of the last reports, they support exactly |

08:42  1    what Mr. Drum testified to.  And even more so --

08:42  2        THE COURT:  Support in a generalized fashion or

08:42  3    support for the analysis he actually makes?  If the costs

08:42  4    that he calculated were incorrect --

08:42  5        MR. SAGEL:  They were not.  They were not, and I

08:42  6    have it right here, Your Honor, and I can walk through each

08:42  7    and every one of them.

08:42  8        THE COURT:  I think the defendant was entitled,

08:42  9    even if they are in fact correct -- if there is evidence out

08:42  10   there that would have allowed the defendant to make a

08:42  11   challenge under any theory, I think the defendant was

08:42  12   entitled to have the data to do that, even if in some other

08:42  13   fashion you can show prima facie that it was correct.  In

08:42  14   other words, I think he is entitled to make non-winning

08:43  15   challenges as well as winning challenges.  The point is he

08:43  16   is entitled to that data to make the challenges.

08:43  17       MR. SAGEL:  So let me go backwards to that first.

08:43  18   The defendant on two occasions that he took advantage of --

08:43  19   and on more occasions, as many as he wanted, had access to

08:43  20   the virtual servers.

08:43  21       THE COURT:  Sir, that doesn't convince me.  It's

08:43  22   the obligation of the government to produce Brady, Giglio,

08:43  23   et cetera.  He is entitled to sit back and wait for you to

08:43  24   serve it up on a platter.  Agreed?

08:43  25       MR. SAGEL:  If it's in our possession, yes.

08:43  **1**          THE COURT:  And for this discussion -- go ahead.

08:43  **2**          MR. SAGEL:  That's the part when he talks about

08:43  **3**  what Brady says or what he talks about Bundy says or Price

08:43  **4**  or Olson, any of the cases, is that it skips past what's in

08:44  **5**  our possession.

08:44  **6**          We cannot -- and I can focus on various different

08:44  **7**  times in the case, including when he starts talking about

08:44  **8**  August 12th to the present.  We as the Prosecution Team do

08:44  **9**  not have authority to go into the server that the search

08:44  **10**  warrants -- we are beholden on what comes to us in the

08:44  **11**  process, what's in our possession.

08:44  **12**          At the earliest time --

08:44  **13**          THE COURT:  Well, I think you've made a good-faith

08:44  **14**  showing that the Prosecution Team produced all of the Tabs

08:44  **15**  data that it had at Docket No. 737 and the attachment.  I

08:44  **16**  believe you put before the Court and the defendant the

08:44  **17**  totality of the Tabs data that the Prosecution Team had.

08:44  **18**          MR. SAGEL:  Yes, Your Honor.  And also to

08:44  **19**  basically put before the Court and the defendant over -- if

08:44  **20**  I'm doing my math right -- over a year ago of what was in

08:45  **21**  our possession with regard to costs and expenses,

08:45  **22**  including --

08:45  **23**          THE COURT:  Your possession, meaning the

08:45  **24**  Prosecution Team?

08:45  **25**          MR. SAGEL:  The Prosecution Team's possession.  If

08:45   1   there was a question that there was something was missing --
08:45   2   this was even discussed at the specific hearing where Your
08:45   3   Honor said if there is something specific, you file a Motion
08:45   4   to Compel.
08:45   5       Without us having access to the databases
08:45   6   themselves and without having access to the servers, we are
08:45   7   in a position where this is what we have.  We have provided
08:45   8   everything we have.  This is what we have seen.  If there is
08:45   9   something missing, there is a mechanism for the defendant to
08:45   10  say this is pertinent information, and I need it.
08:45   11      THE COURT:  Don't the events of the last 72 hours
08:45   12  suggest that there was a mechanism to determine whether the
08:45   13  Privilege Review Team in its capture of the subpoenaed
08:45   14  documents had Tabs data?
08:46   15      MR. SAGEL:  By whom?
08:46   16      THE COURT:  By the Prosecution Team.  What do you
08:46   17  make of Mr. Andre's statement in his letter of May 4th,
08:46   18  2019:  "In connection with the government's investigation,
08:46   19  the Court-appointed Receiver for EA LLP consented to IRS-CI
08:46   20  creating a forensic image of the six digital devices that
08:46   21  comprise the EA LLP server, which were being stored by
08:46   22  MixinIT, a company in Orange County that stored and managed
08:46   23  computer servers.  After creating a forensic image of the EA
08:46   24  LLP server, the EA LLP server was returned to the EA
08:46   25  Receiver.  The government has since obtained a warrant to

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

08:46    1    search the forensic copy of the EA LLP server for relevant

08:46    2    evidence.  We will produce any relevant evidence seized from

08:46    3    the EA LLP server once the government completes the review

08:46    4    protocols set forth in the search warrant."

08:47    5             It sounds like this is the same forensic copy I

08:47    6    think we've been talking about here.

08:47    7             MR. SAGEL:  Correct.  So to respond to both that

08:47    8    statement and --

08:47    9             THE COURT:  It seems that Mr. Andre was

08:47   10    acknowledging an obligation to go beyond what you had and to

08:47   11    investigate this forensic copy.

08:47   12             MR. SAGEL:  I don't know that I read it that way.

08:47   13    "We will produce any relevant evidence seized once the

08:47   14    government completes the review protocols set forth in the

08:47   15    search warrant."  The review protocols does it in a way

08:47   16    where it provides it to him.

08:47   17             I would also point out, Your Honor, if you turn to

08:47   18    the following page of this same section which discusses the

08:48   19    Eagan Avenatti servers, the last paragraph says:  "We would

08:48   20    also be glad to discuss alternative procedures to ensure

08:48   21    that you are able to access any information on the EA LLP

08:48   22    server that you believe may be relevant to your client's

08:48   23    defense, such as providing you and your client an

08:48   24    opportunity to review the forensic image of the EA LLP

08:48   25    server at the IRS-CI's Office."

08:48   1          THE COURT:  Would access free you of your

08:48   2   obligation under Brady to produce Brady material?  Does

08:48   3   access free you of your Brady obligation to produce Brady

08:48   4   material?

08:48   5          MR. SAGEL:  Under this circumstance, I have to

08:48   6   believe yes.  And the reason why is because if it's not in

08:49   7   our possession, we -- I don't have -- I have a Brady

08:49   8   obligation to material that I am in the possession of that I

08:49   9   can provide.  I'm not possessing --

08:49   10          THE COURT:  Well, suppose for whatever reason the

08:49   11   Taint Team, the Privilege Review Team, acting in absolute

08:49   12   good faith just misses a substantial volume of relevant data

08:49   13   that should have been passed over to the Prosecution Team.

08:49   14   Don't the sins of one part of the government, meaning the

08:49   15   Taint Team if my facts are accurate, fall upon the

08:49   16   Prosecution Team in terms of the Brady obligation?

08:49   17          MR. SAGEL:  If it did not exist at all, I would

08:49   18   follow your analogy.

08:49   19          THE COURT:  But hasn't it been established that

08:49   20   there does exist relevant Tabs material and potentially

08:49   21   QuickBooks materials that the Privilege Review Team had?

08:50   22          MR. SAGEL:  I'm not sure I know the answer to that

08:50   23   fully, but I don't believe that's correct.

08:50   24          THE COURT:  Well, I believe the representations

08:50   25   Mr. Avenatti has made from an initial review citing the

08:50  **1**    specific pieces of evidence undermine that position.

08:50  **2**         MR. SAGEL:  Well, to the specific -- that's why I

08:50  **3**    would like to get into some of the specific -- I'm not sure

08:50  **4**    that there are specifics, and I have some examples of

08:50  **5**    specifics that that does undermine.

08:50  **6**         May I proceed with that?

08:50  **7**         THE COURT:  Please.

08:50  **8**         MR. SAGEL:  With regards to Exhibit 48, Your

08:50  **9**    Honor, defendant references that he believes -- we put this

08:50  **10**   in through multiple witnesses, and it's demonstrably false.

08:50  **11**        Let me start with the fact that I think several of

08:50  **12**   the witnesses -- we never were saying it was accurate.  It

08:50  **13**   was the costs that he utilized to withdraw checks in the

08:51  **14**   same amount.  Whether it was interim, whether it was -- this

08:51  **15**   was what he was e-mailed and he utilized to withdraw money.

08:51  **16**        THE COURT:  Well, if he used inaccurate input, at

08:51  **17**   a minimum isn't he -- you're saying never mind whether it's

08:51  **18**   accurate or not.  This is what he relied upon.  Fine.  But

08:51  **19**   at a minimum would he not be subject to cross-examination if

08:51  **20**   it were shown that that data was inaccurate or outdated; or,

08:51  **21**   alternatively, under an Daubert analysis, it wasn't

08:51  **22**   reliable?

08:51  **23**        MR. SAGEL:  You're talking about Mr. Drum now?

08:51  **24**        THE COURT:  Right.

08:51  **25**        MR. SAGEL:  Correct.  Mr. Drum specifically said

08:51   1   and testified to that his analysis is based on the costs and
08:51   2   expenses of the material up to February 5th after the
08:51   3   settlement money came in based on all the records that were
08:51   4   there at the time.  He was cross-examined on whether or not
08:52   5   he included -- everything that was included after that date.
08:52   6   There was extensive cross-examination.
08:52   7        If you look -- and I can show you the Tabs reports
08:52   8   that are the, quote/unquote "most current," which still show
08:52   9   drafts where the defendant refers to what was done.  They
08:52   10  are all loan payments and payments to Mr. Johnson from four
08:52   11  months and later after his settlement.
08:52   12       There are no costs and expenses to the case.  They
08:52   13  are payments for his living expenses, his $1,900 payments to
08:52   14  him, and FedEx expenses to send him his checks.  There are
08:52   15  no costs and expenses for the case.
08:52   16       And even the $27,000 or $37,000 he dropped in a
08:52   17  footnote is even identified as basically the living expense
08:52   18  or medical expense to his new living center.  I would have
08:52   19  to look it up, but it's seven months after the settlement
08:53   20  when he moves into his new housing facility, Sunrise Living.
08:53   21  These are not costs and expenses of the case.  These are
08:53   22  what he's paying Mr. Johnson after he lied to him.
08:53   23       There are no -- and I can provide Your Honor the
08:53   24  Tabs data for Mr. Johnson.  I can do it for Mr. Barela, and
08:53   25  I can do it for Ms. Gardner.  I would like to do that so

08:53   **1**   that Your Honor has the full --

08:53   **2**          THE COURT:  Wait a wait.  There is no Tabs data

08:53   **3**   for Ms. Gardner in the record.  You didn't offer any

08:53   **4**   support --

08:53   **5**          MR. SAGEL:  We didn't have it.  I agree.  And what

08:53   **6**   I'm saying is what he's finding --

08:53   **7**          THE COURT:  Well, isn't that even more egregious

08:53   **8**   if it's out there --

08:53   **9**          MR. SAGEL:  No, because --

08:53   **10**          THE COURT:  Not if it's perhaps outdated or

08:53   **11**   mistaken but no Tabs data?  And there's no question there

08:53   **12**   were costs for Ms. Gardner.

08:53   **13**          MR. SAGEL:  We used QuickBooks for her, and we

08:53   **14**   used e-mails from Filippo Marchino who said he paid all the

08:53   **15**   expenses in the case.  And the Tabs data support is even

08:53   **16**   less than what we gave him credit for.  But the expenses we

08:53   **17**   gave him credit for under QuickBooks and Filippo Marchino or

08:54   **18**   whatever are greater than what's in Tabs.

08:54   **19**          With Johnson, there is nothing.  I can walk

08:54   **20**   through each and every one of them.  There is nothing after

08:54   **21**   February 3rd or 4th, which was before 2015 that relates to

08:54   **22**   the case.  They are all payments to Mr. Johnson's for his

08:54   **23**   living expenses, which are even itemized as such in his

08:54   **24**   data.

08:54   **25**          The Tabs data for the years of 2012 or '11 or '10

08:54 **1** or whatever the start date to February 4th, 2015, are

08:54 **2** identical.  The only difference -- and when he talks about

08:54 **3** these new transactions, they are paying the loan payments

08:54 **4** and the living expenses for Mr. Johnson.

08:54 **5** With regards to Mr. Barela, the only difference --

08:54 **6** and I can show you this, too, and I have them printed out --

08:54 **7** the only difference when you look at the two exhibits that

08:54 **8** the government introduced at trial, 174 and 193, 174 is the

08:55 **9** draft Barela bills as of 12/19/2017.

08:55 **10** Exhibit 193 is Ms. Regnier's e-mail, which she

08:55 **11** says are the total costs of the Barela matter to take out a

08:55 **12** check for $111,113.22.  The updated Barela Tabs matches to

08:55 **13** the penny 193, $111,113.22, exactly what Ms. Regnier

08:55 **14** testified to, that the reason for the difference was the

08:55 **15** costs that came through in those several weeks.

08:55 **16** And the Tabs data supports exactly what was

08:55 **17** introduced at trial.  There is nothing in this data that

08:55 **18** shows prejudice to the defendant.  There is nothing in this

08:55 **19** data that shows anything different at this trial, especially

08:56 **20** as it relates to Mr. Drum and it relates Mr. Johnson.  He

08:56 **21** even said (a) what his analysis was based on up through when

08:56 **22** the settlement comes because that's when the costs would be

08:56 **23** there.

08:56 **24** He was cross-examined extensively as to whether or

08:56 **25** not there could have been costs after the case settled that

08:56  1   he didn't include.  He said that's correct if it existed.

08:56  2   There is nothing to show it existed, Your Honor.

08:56  3          And we hear and we see broad statements about what

08:56  4   this Tabs data is and how concerning they are and so forth.

08:56  5   But the reason he did not show you the -- and I can provide

08:56  6   them for the record -- is because they matched exactly what

08:56  7   was presented at trial.

08:56  8          When it comes to Geoffrey Johnson, the new stuff

08:56  9   doesn't change anything at trial.  It actually supports

08:56  10  what's already been introduced at trial.

08:56  11         Similarly, there was no Tabs data for Michelle

08:57  12  Phan and Long Tran for the very reasons that the evidence at

08:57  13  trial has also established.

08:57  14         THE COURT:  That would delay their contracts a

08:57  15  little bit.

08:57  16         MR. SAGEL:  Correct.  And the only other data in

08:57  17  Tabs that he has referenced repeatedly and that he

08:57  18  references how there are all these other transactions, some

08:57  19  of his lawyers kept time sheets, but these weren't

08:57  20  contingency cases.  So the time sheets are irrelevant.  And

08:57  21  when you look at even some of the Tabs sheets, for example,

08:57  22  with Mr. Barela, they will have John Arden's time and then

08:57  23  how much he would charge if there was an hourly case.  But

08:57  24  then it's not there because it wasn't an hourly case.  So

08:57  25  they only used the expenses, costs, and so forth.

08:57 **1**          He references at least one client who he did other

08:57 **2**     work for.  You now have Tabs data to see the work that was

08:57 **3**     done on the other case.  That other case was this Cafe

08:58 **4**     Perche case with Mr. Barela.  It was nine and ten months

08:58 **5**     after Barela's settlement money came in.  So it's hard to

08:58 **6**     see how that relates to why he didn't get his money nine and

08:58 **7**     ten months earlier for $944.  So all these other costs were

08:58 **8**     from another case which was ten months after he should have

08:58 **9**     provided Mr. Barela his money, $900.

08:58 **10**          The numbers and the Tabs records do not support

08:58 **11**     what is being told to the Court.  I fully appreciate what

08:58 **12**     Your Honor is saying.  I'm not doubting any of the concerns

08:58 **13**     Your Honor has.  And I will say to you that every time along

08:58 **14**     the way --

08:58 **15**          THE COURT:  So your position is my concerns are

08:58 **16**     baseless?

08:58 **17**          MR. SAGEL:  No, I'm not saying that, Your Honor.

08:59 **18**     I am saying that with a review of what Your Honor has taken

08:59 **19**     a very cautious approach to in allowing him to gain access

08:59 **20**     to these reports -- with a review of those records, we can

08:59 **21**     now see why he never asked for these things for two years,

08:59 **22**     because they don't support any further costs and expenses on

08:59 **23**     these cases, and they don't support any reduction.

08:59 **24**          And for the same reason that we put in the

08:59 **25**     recommended jury instruction the dollar amounts, we don't

08:59  **1**  have to prove that for wire fraud.  What we have to prove is

08:59  **2**  that the defendant obtained money and property by false

08:59  **3**  statements, representations, and material omissions.  That

09:00  **4**  happened in each and every one of these cases.  Whether he

09:00  **5**  was entitled at the end to $1,810,000, $1,910,000, or a

09:00  **6**  number in between, he has had the data for that.

09:00  **7**       His request for Brady and which we've responded

09:00  **8**  every time -- everything in our possession we've provided.

09:00  **9**  If we are missing something, please let us know.  We have

09:00  **10**  even provided the example.  If there was data, we would

09:00  **11**  extract QuickBooks for him.  He has had QuickBooks since

09:00  **12**  2019.

09:00  **13**       If there was something from he thought from the

09:00  **14**  electronic files were missing, he had two years to ask us

09:00  **15**  what we didn't provide which he had access to.  Again, what

09:00  **16**  we don't know as we sit here is he was produced I think a

09:00  **17**  million more files than we were, or whatever the number was,

09:00  **18**  400,000.  We will never know what's in that delta either.

09:01  **19**  I'm not saying it exists, or I'm assuming not because it

09:01  **20**  hasn't been said, but we don't have access to that.  He has

09:01  **21**  had access to this information, and everything that's in our

09:01  **22**  possession has been provided.

09:01  **23**       To use just one example, to compare this to Bundy,

09:01  **24**  which he did again here today -- in Bundy, these were

09:01  **25**  videotapes that were in the government's possession at all

09:01 **1** times, and they didn't turn it over. It's night and day to

09:01 **2** what we're talking about here.

09:01 **3** The Tabs data -- all we have were the printout

09:01 **4** sheets that came through the process. We provided them to

09:01 **5** him and let him know this is what we have for costs and

09:01 **6** expenses, along with QuickBooks.

09:01 **7** In March of 2020 when we did the expert disclosure

09:01 **8** on John Drum, this is what he's relying upon. These are the

09:01 **9** documents that we have that we provided that he is relying

09:01 **10** upon. As to all these things, the government has been

09:02 **11** extremely transparent of what we have, what we're using, and

09:02 **12** what we've provided, not just to the defendant but by June

09:02 **13** of 2020 to the Court.

09:02 **14** At no point were we hiding anything that we didn't

09:02 **15** believe -- and as it relates to the Tabs data, which

09:02 **16** Ms. Regnier testified to, QuickBooks versus Tabs.

09:02 **17** QuickBooks was tied to the bank records when it was paid.

09:02 **18** Tabs was not.

09:02 **19** **And you have seen that with regards to**

09:02 **20** **Mr. Johnson, they double counted a lot of things because**

09:02 **21** **they actually didn't pay. It was how they kept track of**

09:02 **22** **costs but didn't actually pay the costs.**

09:02 **23** So there's an extra level of why he could also

09:02 **24** scrutinize these records, which maybe would not change

09:02 **25** anything because they aren't tied automatically to bank

09:02  **1**  records.

09:02  **2**          But that's I think tertiary of what was beyond the

09:02  **3**  issue.  I do believe -- one second, Your Honor.

09:03  **4**          (Government counsel conferring)

09:03  **5**          MR. SAGEL:  I will take a cue from the Court, but

09:03  **6**  I obviously have printouts with regards to Johnson, Barela,

09:03  **7**  and Gardner.  I would like to either provide them to the

09:03  **8**  Court and go over it with Your Honor now or be afforded the

09:03  **9**  opportunity to lodge it with the Court so that Your Honor

09:03  **10**  can see what is there to make the relevant and proper

09:04  **11**  inquiry to show the analysis that is needed under Brady, so

09:04  **12**  that when making the Brady analysis or the Brady test for

09:04  **13**  prejudice of what would be useful to the defendant, you

09:04  **14**  would be able to see with this that nothing in this changes

09:04  **15**  what did happen and what was provided to the defendant and

09:04  **16**  what he could have used, whether it be cross-examination of

09:04  **17**  Drum, whether it be for use with Ms. Regnier, which he did.

09:04  **18**          **He cross-examined her that you can't know all the**

09:04  **19**  **right things unless you have both.  He fully did that.  He**

09:04  **20**  **did that with several witnesses.  He wants to call more for**

09:04  **21**  **that very reason.**

09:04  **22**          When you really do the prejudice analysis under

09:04  **23**  the Brady prong -- again, there are other parts to the

09:05  **24**  equation that I would not agree have been established

09:05  **25**  either.  But when you look at these -- that's why I am

09:05  **1**  asking the Court if you want me to go over some of them in

09:05  **2**  examples now or to lodge with the Court --

09:05  **3**        THE COURT:  I don't think that's necessary.  If

09:05  **4**  you want to file anything in addition, that's fine.  I

09:05  **5**  believe it's my intention to hear Mr. Avenatti in rebuttal

09:05  **6**  and rule.

09:05  **7**        MR. SAGEL:  If I could just cover a couple of

09:05  **8**  other things very quickly or give me one second to make

09:05  **9**  sure.

09:05  **10**        (Pause in proceedings)

09:05  **11**        MR. SAGEL:  Your Honor, I've obviously been before

09:05  **12**  Your Honor for a long time, so I know that you are not

09:05  **13**  sitting there without knowing what I'm going to say.  But I

09:05  **14**  feel the need for the record that I want to make a couple of

09:05  **15**  comments.

09:05  **16**        With regards to Your Honor on two occasions

09:06  **17**  denying the request for full access to the server -- and I

09:06  **18**  think the representation was it was only because of the

09:06  **19**  government's representation -- I don't think that accurately

09:06  **20**  reflects what happened in both 2019 and 2020.

09:06  **21**        Obviously we represented that anything that was

09:06  **22**  Brady or Giglio in our possession we would turn over, as we

09:06  **23**  did.  But the servers didn't belong to him.  Your Honor gave

09:06  **24**  him the -- mentioned on multiple occasions his availability

09:06  **25**  and access to them, and he either at one point took no

09:06  **1**  advantage of it and the other time saying what he chose on

09:06  **2**  his own to do.  He still had the mechanism.

09:06  **3**          The comments about how Tabs could only be

09:06  **4**  exculpatory, again, this is a statement that's made without

09:06  **5**  referencing the Tabs because they are not exculpatory.  If

09:06  **6**  you want to say they could have been used and would have

09:06  **7**  been used, fine.  The best case scenario is at least to look

09:07  **8**  for it, but they don't change the analysis, especially with

09:07  **9**  regards to what the witnesses specifically testified to.

09:07  **10**  I'm going to conclude with two points, Your Honor.

09:07  **11**  Our special agent was at the virtual server last night for I

09:08  **12**  believe about two hours, maybe less.  And through the

09:08  **13**  virtual servers, he was able to find in there with no

09:08  **14**  experience with Tabs any and all of the Barela items, the

09:08  **15**  Johnson items, the Gardner items, and the lack thereof.  It

09:08  **16**  did not take very long at all to find each and every one of

09:08  **17**  them specific to the client to be able to print out any and

09:08  **18**  all of the related documents that show what they show.

09:08  **19**  It is not a voluminous, time-consuming process.

09:08  **20**  And when we mention the 6,000 files or whatever the numbers

09:08  **21**  are, that's the entirety of the law firm.  That's not

09:08  **22**  Johnson, Barela, Gardner, Phan, and Tran.  It will not

09:08  **23**  require a review of 6,000 client files to see what is

09:09  **24**  relevant for the specific clients.

09:09  **25**          With regards to -- one second, Your Honor.

| | | |
|---|---|---|
| 09:09 | 1 | (Government counsel conferring) |
| 09:09 | 2 | MR. SAGEL:  And then my final thought, comment, |
| 09:09 | 3 | position, is he says what would be of value to him, what |
| 09:09 | 4 | would be -- I think his comment was it was the government |
| 09:09 | 5 | who interjected costs and expenses in this case.  The |
| 09:10 | 6 | government was the one who went down this road, and it's |
| 09:10 | 7 | just now that he has to respond. |
| 09:10 | 8 | I will respond in this way, Your Honor, twofold. |
| 09:10 | 9 | One, his opening statements were when he created the chart |
| 09:10 | 10 | where he showed how you need to calculate the expenses.  He |
| 09:10 | 11 | has known from -- his defense position from minute one in |
| 09:10 | 12 | his opening statement is this is what is necessary.  This is |
| 09:10 | 13 | what is necessary to calculate the expenses, the total |
| 09:10 | 14 | costs, and so forth. |
| 09:10 | 15 | So this isn't anything new.  He has always known |
| 09:10 | 16 | what it is and what was going on.  These exhibits and |
| 09:10 | 17 | documents that have been in our possession have been |
| 09:10 | 18 | provided to him well long before this.  So he still has that |
| 09:10 | 19 | opportunity.  He's still in his defense case-in-chief to do |
| 09:10 | 20 | what he needs to do to utilize these, to call back John Drum |
| 09:11 | 21 | to continue his cross-examination, to continue to do |
| 09:11 | 22 | whatever he needs to do. |
| 09:11 | 23 | If Your Honor believes a short recess is necessary |
| 09:11 | 24 | for that, Your Honor can grant him that.  But there is no |
| 09:11 | 25 | reason why this jury who has heard the evidence for as long |

09:11  **1**   as they have heard the evidence with regards to what has

09:11  **2**   been on the table from the inception -- that anything other

09:11  **3**   than a short recess is needed to provide him the opportunity

09:11  **4**   to do whatever he needs to do if Your Honor even believes a

09:11  **5**   short recess is necessary.

09:11  **6**          Your Honor would need to have found an actual

09:11  **7**   violation I believe to get to some of the remedies he is

09:11  **8**   asking for.  I believe that the record does not show that at

09:11  **9**   all including, as Your Honor has mentioned, whether or not,

09:11  **10**  (a) it's in anybody's possession or anybody has acted in bad

09:11  **11**  faith or --

09:11  **12**         THE COURT:  Bad faith isn't necessary.

09:12  **13**         MR. SAGEL:  It's not necessary --

09:12  **14**         THE COURT:  And I'm not prepared on this record to

09:12  **15**  find that you were inaccurate when you said that the

09:12  **16**  Prosecution Team has been transparent.  To the extent of its

09:12  **17**  knowledge, I believe that's an accurate statement --

09:12  **18**  accurate to the extent of its knowledge.

09:12  **19**         MR. SAGEL:  I guess where I respond to Your Honor

09:12  **20**  in that regard is when you look at the cases that are being

09:12  **21**  cited and what the remedies are being sought both by the

09:12  **22**  defendant or in the cases he references, they are --

09:12  **23**         THE COURT:  I think I have your position.  Thank

09:12  **24**  you.

09:12  **25**         MR. SAGEL:  Thank you, Your Honor.

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
| 09:12 | 1  | THE COURT:  Mr. Fitzgerald, do you want to say               |
| 09:12 | 2  | something?                                                    |
| 09:12 | 3  | MR. FITZGERALD:  Yes, I do, Your Honor.  The Court           |
| 09:12 | 4  | is going to rule.  I need to have before it in the record    |
| 09:12 | 5  | certain very important facts from the Privilege Review side   |
| 09:13 | 6  | of the case.                                                 |
| 09:13 | 7  | The summary of that is to the extent that this               |
| 09:13 | 8  | Court believes this is a classic Brady case, to the extent    |
| 09:13 | 9  | that the Court believes that this case is controlled by       |
| 09:13 | 10 | Bundy, with all due respect, the Court is wrong.  It is       |
| 09:13 | 11 | wrong on the facts, and it is wrong on the law.              |
| 09:13 | 12 | Let me start with the facts because that informs             |
| 09:13 | 13 | why the Court is wrong on the law.  The facts are --          |
| 09:13 | 14 | MR. AVENATTI:  Your Honor, I'm going to interpose           |
| 09:13 | 15 | an objection because it's the government who has just         |
| 09:13 | 16 | opposed the motion.  If Mr. Fitzgerald is here, I don't      |
| 09:13 | 17 | understand the context of these statements.  This does not    |
| 09:13 | 18 | sound like this is a factual discussion about what happened   |
| 09:13 | 19 | with the Privilege Review Team.  Mr. Fitzgerald should not    |
| 09:14 | 20 | be advocating for either side under these circumstances.      |
| 09:14 | 21 | THE COURT:  I agree.  Mr. Fitzgerald is here to              |
| 09:14 | 22 | bring the facts to the Court, not argue the law.             |
| 09:14 | 23 | MR. FITZGERALD:  Very well, Your Honor.  I will             |
| 09:14 | 24 | forego the legal part of it, but there are other facts as     |
| 09:14 | 25 | opposed to just what has happened in the last 36 hours that   |

09:14    1    I think bear directly on the legal issues that are before
09:14    2    the Court.
09:14    3            THE COURT:  Please.
09:14    4            MR. FITZGERALD:  Those are the Privilege Review
09:14    5    Team really had two tasks.  The one that we have talked
09:14    6    about before -- for example, back in October with clawback
09:14    7    documents was taking the material that was found and
09:14    8    determining what the privilege consequences were and sending
09:14    9    it to the Prosecution Team or sending it to the defense.
09:15   10            But the other part that has turned out really in
09:15   11    the long-run I think to be more important and also more
09:15   12    difficult from my perspective is that we ended up on the
09:15   13    Privilege Review side being responsible for a major part of
09:15   14    the investigation of the case post-Indictment, namely,
09:15   15    making sure that the search warrants were conducted
09:15   16    correctly.
09:15   17            So we were responsible -- putting the digital
09:15   18    things aside, it would be as if we were then responsible to
09:15   19    send agents out to a house to seize things that were allowed
09:15   20    under the search warrant.  And it turned out in retrospect
09:15   21    that the things in the attic weren't seized.  And once they
09:16   22    weren't seized, then they are not part of the case.
09:16   23            **I don't mean that to make a distinction between**
09:16   24    **what the Prosecution Team knew and what I knew.  Obviously**
09:16   25    **for purposes of Brady, we can't rely on that distinction,**

09:16  **1**  **and we are not doing that.  But we can rely on the**

09:16  **2**  **distinction between things that were seized and things that**

09:16  **3**  **were not seized.  The things that were seized under the**

09:16  **4**  **search warrant were the things that went through filters,**

09:16  **5**  **went to the relativity database, were presented to a team of**

09:16  **6**  **agents who worked very diligently and as hard as they could**

09:16  **7**  **to fulfill the Court's reasonable request about when the**

09:16  **8**  **case would be ready for trial.**

09:17  **9**  And it was through those two processes, the

09:17  **10**  initial filtering and then the seizure by those agents, that

09:17  **11**  the case material, the things that for legal purposes were

09:17  **12**  in the possession of the government, that was created.

09:17  **13**  Now, again, was that search perfect?  I'm the

09:17  **14**  first to admit now that we know about the Tabs data, no, it

09:17  **15**  was not.  But that is still a difference between having

09:17  **16**  something that was in the government's possession and having

09:17  **17**  something that was not in the government's possession.

09:17  **18**  I may be treading on legal issues, but I would

09:17  **19**  respectfully submit based on this factual analysis there is

09:17  **20**  a legal argument on whether this Tabs data earlier was

09:17  **21**  something that had been, quote/unquote, "seized" and was

09:18  **22**  something that was therefore part of the case.

09:18  **23**  Now, could we have seized it?  Well, obviously

09:18  **24**  yes, because we have been able to do that now.  Should we

09:18  **25**  have seized it and should any consequences of the Privilege

09:18   1   Review Team's inability to find that or know about it or

09:18   2   seize it -- should that be held on behalf of the government?

09:18   3   That respectfully without getting into the merits is a

09:18   4   different argument than a pure Brady/Bundy argument.

09:18   5        In making that determination, the other fact that

09:18   6   needs to be in the record is pursuant to the Court's concern

09:18   7   in denying the defense full access to the servers in its

09:18   8   August 2019 order, it did order the Privilege Review Team to

09:18   9   make them available to the defense.

09:19   10       THE COURT:  I believe that was voluntary on behalf

09:19   11  of the government.  I don't believe I ordered that.  I

09:19   12  thought that was a government offer to have them come in and

09:19   13  sit down with the IRS rep.

09:19   14       MR. FITZGERALD:  I wasn't here when that happened,

09:19   15  but whether it was our suggestion as to a staff backlog that

09:19   16  they got what they needed or whether it was at the direction

09:19   17  or suggestion of the Court, certainly I thought we were

09:19   18  acting under the authority of the Court in making that

09:19   19  happen.

09:19   20       So in September 2019 and then in October 2019,

09:19   21  defense counsel and the defendant came to the IRS Offices,

09:19   22  and the same computer specialist who set up the system that

09:19   23  now exists in our office and which both parties reviewed

09:19   24  last night, a similar system, virtual system was set up in

09:20   25  September and October.  And based on those searches, certain

09:20  1    files were requested by the defense.

09:20  2         I went through and reviewed them.  And based on

09:20  3    the parameters of the search warrant -- because, again, this

09:20  4    was something that was totally outside the search warrant.

09:20  5    Obviously these weren't the protocols to let defense counsel

09:20  6    and the defendant just grab things.

09:20  7         So once they made their requests, I sat down with

09:20  8    my then colleague, and we determined that some of them were

09:20  9    valid, and some of them we thought under the search warrant

09:20  10   were not valid.  There were six of those.  So we told them

09:20  11   no, and we told them why.  And for all the others, we turned

09:20  12   them over to the defense.

09:21  13        The first one on that list I now feel I can

09:21  14   certainly say here in open court was a request for

09:21  15   QuickBooks files, which we produced.  And at that point

09:21  16   after we produced it, we did not get another specific

09:21  17   request from the defense.

09:21  18        So when the Court focuses on the issue of who knew

09:21  19   what and who is responsible for the Tabs data not being

09:21  20   available to the defense, it needs to take into account that

09:21  21   it was the defendant and his counsel who had seen this

09:21  22   virtual system which is now at issue.  They've seen it

09:21  23   twice.

09:21  24        The Prosecution Team has seen it zero.  The

09:21  25   Prosecution Team was not told about the files which were

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:22  1  produced to the defense two years ago.  And I think both

09:22  2  under the law and basic fairness that should really make a

09:22  3  difference.

09:22  4       Thank you, Your Honor.

09:22  5       THE COURT:  Let me ask you this.  If all this new

09:22  6  Tabs data and new QuickBooks data had come to light, if you

09:22  7  were aware of that at the beginning, would you have reviewed

09:22  8  those materials, made a determination whether anything in

09:22  9  those newly identified materials were subject to the

09:22  10  subpoena, and reviewed them and passed on what was

09:22  11  appropriate to the Prosecution Team?

09:22  12       MR. FITZGERALD:  Yes, Your Honor.  A small

09:22  13  correction.  The Court said subpoena.  Again, this was all

09:22  14  through the search warrants.

09:22  15       THE COURT:  Oh, search warrant.  Yes, that's

09:22  16  right.

09:22  17       MR. FITZGERALD:  We understand, Your Honor.

09:22  18       THE COURT:  But because those materials identified

09:22  19  in the past few days weren't identified by the Privilege

09:23  20  Review Team at the time, they have not yet been reviewed by

09:23  21  the Privilege Review Team to determine whether they are

09:23  22  material under the search warrant that was appropriate to

09:23  23  produce and would have been passed on to the Prosecution

09:23  24  Team.

09:23  25       MR. FITZGERALD:  Yes, Your Honor.  Of course, in

| | | |
|---|---|---|
| 09:23 | 1 | looking at something whether it would have been judged to be |
| 09:23 | 2 | relevant to the case and fall under the terms of the search |
| 09:23 | 3 | warrant, that of course can be sometimes a close issue or a |
| 09:23 | 4 | judgment call.  But here I can definitely say it is not a |
| 09:23 | 5 | close issue.  It is not a judgment call. |
| 09:23 | 6 | **If I had found out about the existence of the Tabs** |
| 09:23 | 7 | **data through the defense request in September of 2019, it** |
| 09:23 | 8 | **would certainly, like the QuickBooks data, have been** |
| 09:23 | 9 | **included in what was produced.  If any of the searching** |
| 09:23 | 10 | **taint agents had seized it and then it had been reviewed by** |
| 09:23 | 11 | **the Privilege Review Team, we would definitely have said** |
| 09:24 | 12 | **that it (a) is not privileged; and (b) it is certainly** |
| 09:24 | 13 | **relevant, and we would have passed it on to the Prosecution** |
| 09:24 | 14 | **Team.** |
| 09:24 | 15 | Again, this is not an issue where we are quibbling |
| 09:24 | 16 | about its relevance or the fact that reasonable prosecutors |
| 09:24 | 17 | and defense attorneys would like to have this.  It's just |
| 09:24 | 18 | the fact that it was -- again, in retrospect, certain things |
| 09:24 | 19 | that I would like to have had seized were not seized. |
| 09:24 | 20 | But going back to my earlier analogy where |
| 09:24 | 21 | searching agents went to a house and didn't search the attic |
| 09:24 | 22 | when one is talking about five terabytes of data, that is |
| 09:24 | 23 | more similar to having a search warrant for a small town.  I |
| 09:24 | 24 | think it is fair when you have the former mayor of the town |
| 09:25 | 25 | on the other side that you can get guidance as to where you |

| | | |
|---|---|---|
| 09:25 | 1 | need to look. |
| 09:25 | 2 | Thank you, Your Honor. |
| 09:25 | 3 | THE COURT:  Thank you.  We are going to take about |
| 09:25 | 4 | a ten-minute break here. |
| 09:25 | 5 | (Recess taken at 9:25 a.m.; |
| 09:25 | 6 | proceedings resumed at 9:36 a.m.) |
| 10:10 | 7 | |
| 10:10 | 8 | |
| 10:10 | 9 | |
| 10:10 | 10 | |
| 10:10 | 11 | |
| 10:10 | 12 | |
| 10:10 | 13 | |
| 10:10 | 14 | |
| 10:10 | 15 | |
| 10:10 | 16 | |
| 10:10 | 17 | |
| 10:10 | 18 | |
| 10:10 | 19 | |
| 10:10 | 20 | |
| | 21 | |
| | 22 | |
| 09:35 | 23 | MR. AVENATTI:  Your Honor, can I approach, please? |
| 09:36 | 24 | THE COURT:  Yes. |
| 09:36 | 25 | MR. AVENATTI:  Your Honor, I would like to start |

09:36   **1**   where Mr. Fitzgerald ended.

09:36   **2**        Mr. Fitzgerald claimed that this data was not

09:36   **3**   seized.  There is no question the data was seized.  It was

09:36   **4**   contained within the forensic images of the servers.  In

09:37   **5**   fact -- and I have handed the Court a copy of the search

09:37   **6**   warrant application, which is Document 4-1 on 8:19-MJ-00418.

09:37   **7**   This is the search warrant application for the ten devices,

09:37   **8**   which included the Eagan Avenatti servers.

09:37   **9**        This is the application that the Assistant U.S.

09:37   **10**  Attorneys prepared and which was supported by the affidavit

09:37   **11**  of Special Agent Karlous back in the spring of 2019.  This

09:37   **12**  warrant which was ultimately issued provides in detail as to

09:37   **13**  what was to be seized and searched and what the government

09:38   **14**  was to look for.

09:38   **15**       In particular, it enumerates a number of

09:38   **16**  categories of information that the government was to search.

09:38   **17**  This is what the government asked to search for.  This is

09:38   **18**  what the government claimed in the application they needed

09:38   **19**  for the prosecution of the case.

09:38   **20**       I will direct the Court's attention to

09:38   **21**  paragraphs -- page 7 of 330 at the top, paragraph F:

09:38   **22**  "Records, documents, programs, applications, or materials

09:39   **23**  from January 2011 through March 25, 2019, relating to the

09:39   **24**  accounting records for Avenatti or any of the subject

09:39   **25**  entities" -- that's a defined term, Your Honor, to include

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:39 **1**  the law firm -- "including any Microsoft Dynamics NAV,

09:39 **2**  QuickBooks, or other electronic accounting data, files, or

09:39 **3**  records" (G) -- I am going to shortcut it -- relating to any

09:39 **4**  financial transactions, including any proposed or potential

09:39 **5**  financial transactions, including any of the subject

09:39 **6**  entities and/or Avenatti.

09:39 **7**         If you fast-forward to letter (P) on page 9 of

09:39 **8**  330, this is even more specific.  Paragraph P requires the

09:40 **9**  "search for documents, records, applications, materials

09:40 **10** relating to attorneys' fees or costs, and client billing

09:40 **11** records."

09:40 **12**        If you go on to letter T on page 10 of 330:

09:40 **13** "Records, documents, programs, applications, or materials

09:40 **14** from April 1st, 2011, to March 25, 2019, relating to

09:40 **15** Avenatti and/or EA LLP's representation of Client 1,

09:40 **16** including the approximately $4 million settlement payment."

09:41 **17**        If you go to U immediately underneath that, same

09:41 **18** thing relating to Client 2.

09:41 **19**        If you go to W, same thing as it relates to Client

09:41 **20** 3.

09:41 **21**        So there is no question that this data was seized.

09:41 **22** It was on our forensic copies.  If it wasn't seized,

09:41 **23** Mr. Varani could not have accessed it yesterday and provided

09:41 **24** the data to the defense.  There is no question it was

09:41 **25** seized.

09:41 **1**      Your Honor, they didn't leave the box behind in

09:41 **2** the attic.  They took all of the boxes out of the attic, and

09:41 **3** they've been in the possession of the government -- the

09:41 **4** boxes from the attic -- for years.

09:41 **5**      There is discussion about what was made available

09:41 **6** by way of the virtual server, Your Honor.  All of the data

09:42 **7** from Tabs and QuickBooks was not made available by way of

09:42 **8** the virtual server two years ago or in September/October of

09:42 **9** 2019.

09:42 **10**      On one occasion a certain e-mail was made

09:42 **11** available for us to review.  And, in fact, we know all the

09:42 **12** data wasn't made available because the data from Mr. Varani

09:42 **13** came from the forensic copies held in Washington, D.C.  We

09:42 **14** didn't have access to the forensic copies.

09:42 **15**      But putting aside the issue of access, as Your

09:42 **16** Honor rightfully noted, access does not relieve the

09:42 **17** government of its affirmative obligation to seek out

09:42 **18** exculpatory information or information favorable to the

09:42 **19** defense and to provide it to the defense.  It also doesn't

09:42 **20** relieve the government from its obligations under your

09:42 **21** January 2021 order, which could not have been more clear.

09:43 **22**      There is discussion by Mr. Sagel about what this

09:43 **23** data shows and what it doesn't show, and I'm happy to get

09:43 **24** into some of those details, although our review continues.

09:43 **25** There is no question this data was relevant even under his

09:43 **1** theory, and that was specifically one of the things that was

09:43 **2** ordered by Your Honor to be produced in January of 2021,

09:43 **3** relevant information.

09:43 **4** As Your Honor rightfully noted in one of Your

09:43 **5** Honor's questions, even if it didn't show any differences,

09:43 **6** it would still be relevant.  Your Honor also rightfully

09:43 **7** noted the existence now of data relating to Ms. Gardner in

09:43 **8** Tabs.

09:43 **9** Whether the data is the same or not -- and I

09:43 **10** submit that it's not.  Whether it's the same or not is of no

09:43 **11** consequence.  The issue we now have is that there was

09:43 **12** evidence put before the jury that there was no Tabs data for

09:44 **13** Gardner.  There was never any Tabs data for Gardner.  We now

09:44 **14** know that that's not accurate.

09:44 **15** The printouts that the government provided the

09:44 **16** defense last night, Your Honor, are not complete.  They do

09:44 **17** not contain all of the data for the clients in the

09:44 **18** Indictment.  There are unallocated costs within Tabs.  There

09:44 **19** are other reports in Tabs.  There's other information even

09:44 **20** in the short period of time that I was able to review the

09:44 **21** information last night that casts serious doubt as to the

09:44 **22** printouts by the government.

09:45 **23** The information that was provided by way of the

09:45 **24** Tabs data and likely the QuickBooks data goes directly to

09:45 **25** motive and intent, Your Honor, among other things.  While it

09:45  **1**   might be true that I in my opening statement referenced the

09:45  **2**   calculations on the chart and talked about what was

09:45  **3**   required, I'm perplexed as to how that helps the government.

09:45  **4**        If the government was aware by way of my opening

09:45  **5**   statement that that was my defense, to the extent that they

09:45  **6**   did not understand the importance of that cost data, the

09:45  **7**   Tabs data and the QuickBooks data, they were certainly on

09:45  **8**   notice at that point in time.  And yet they did nothing to

09:45  **9**   look for the data.  They did nothing to produce it to the

09:45  **10**  defense.

09:45  **11**       They obviously knew the importance of the Tabs

09:45  **12**  data because they had Mr. Drum rely on the two exhibits, one

09:45  **13**  from Mr. Barela and one from Mr. Johnson.  They were on

09:46  **14**  notice from Ms. Regnier of the importance of the Tabs data

09:46  **15**  and the information.

09:46  **16**       Lastly, let me make this point, Your Honor -- and

09:46  **17**  we have another pending filing relating to this issue.

09:46  **18**  There is no question that when the Prosecution Team believed

09:46  **19**  a document existed on those servers or within the

09:46  **20**  information seized that was in the possession of the

09:46  **21**  Privilege Review Team -- there is no question that they had

09:46  **22**  the ability to and in fact did reach out to the Privilege

09:46  **23**  Review Team and inquire as to where A, B, C, D, or E was.

09:46  **24**  That's how Mr. Andre -- we put this in our reply.  That's

09:46  **25**  how Mr. Andre was able to represent to the Court that a

09:46 **1**  QuickBooks file was on its way to be produced.  He would not

09:46 **2**  have known that but for communication with the Privilege

09:46 **3**  Review Team as to that fact because clearly the government

09:47 **4**  wanted the QuickBooks files produced.

09:47 **5**          About a month or two before the trial, Your Honor,

09:47 **6**  we had not heard from Mr. Fitzgerald in some time, and the

09:47 **7**  defense received notification from Mr. Fitzgerald that all

09:47 **8**  of a sudden the Privilege Review Team was getting ready to

09:47 **9**  produce to the Prosecution Team about 20 or 25 documents

09:47 **10** that had not been previously produced.

09:47 **11**         We were puzzled by this because we had not heard

09:47 **12** from the Privilege Review Team in some time, and it seemed

09:47 **13** odd to us that just out of the blue the Privilege Review

09:47 **14** Team would have located these 20 to 25 documents to produce

09:47 **15** to the Prosecution Team.

09:47 **16**         Upon review of the documents, Your Honor, we

09:47 **17** discovered that they were relevant, and it told us that the

09:47 **18** prosecution wanted to use the documents in the trial.

09:47 **19** That's why all of a sudden they were being produced to the

09:48 **20** Prosecution Team.  Now, I don't know if that's the case or

09:48 **21** not, but there's strong evidence to suggest that it was.

09:48 **22**         **And the one thing that you haven't heard here**

09:48 **23** **today, Your Honor, and the one thing that you've never**

09:48 **24** **heard, the representation that's never been made by either**

09:48 **25** **Mr. Sagel, Mr. Wyman, Mr. Andre prior, or by**

09:48   1   **Mr. Fitzgerald -- the one thing the Court has never heard is**

09:48   2   **that the Prosecution Team was not in regular contact with**

09:48   3   **the Privilege Review Team for the purpose of gaining**

09:48   4   **documents and information that they thought would help their**

09:48   5   **case.  That representation has never been made, and I would**

09:48   6   **submit, Your Honor, it never will be made, because the fact**

09:48   7   **of the matter is that the Privilege Review Team has worked**

09:48   8   **closely with the government when it benefited the government**

09:48   9   **as it related to preparation for trial.**

09:48   10          The prejudice associated with this information not

09:48   11  being produced is extraordinary.  Your Honor touched on that

09:49   12  through some of your questioning.  I should have had the

09:49   13  benefit of this information.  I should have been able to use

09:49   14  it in cross-examination and otherwise.  And details matter.

09:49   15          I should have been able to use the lack of taking

09:49   16  into account various costs and even post-settlement

09:49   17  payments, Your Honor.  The $37,000 payment I think was made

09:49   18  within a few months of the settlement.  Who's to say that

09:49   19  wasn't associated with the settlement?  It's not some minor

09:49   20  $1,900 payment.  It's a significant payment.  I should have

09:49   21  been able to cross-examine Mr. Drum with the benefit of

09:49   22  that.  I should have had the data.  I wasn't provided the

09:49   23  data.

09:49   24          Even when I complained about it, I was repeatedly

09:49   25  told that I had everything when they knew I did not have

09:49  1    everything.  They knew I didn't have the Tabs data.

09:50  2          **For each of those reasons, Your Honor, I would ask**

09:50  3    **that the Court grant the defense motion at 706.  I'm happy**

09:50  4    **to answer any other questions.**

09:50  5          THE COURT:  No.  Thank you.

09:50  6          MR. FITZGERALD:  Your Honor, may I address the

09:50  7    Court?

09:50  8          THE COURT:  Sir, he gets the last word.

09:50  9          MR. FITZGERALD:  But he made representations about

09:50  10   the 25 documents.

09:50  11         THE COURT:  The moving party gets the last word.

09:50  12         I want to review the facts in the case as I see

09:50  13   them before setting out my ruling.

09:50  14         First of all, financial data is critical to this

09:50  15   case.  I don't believe the government disputes that,

09:50  16   although the government suggests that there may be other

09:50  17   critical data.  But if one looks to Mr. Drum's charts,

09:50  18   particularly 430 through 457 that sum up the case, those

09:50  19   charts are based almost exclusively on financial data.

09:51  20         Second, the government was on notice, as

09:51  21   Mr. Avenatti pointed out, for some time of the existence of

09:51  22   Tabs data.  In a July 25, 2019, interview with Ms. Regnier,

09:51  23   the government learned of the Tabs data.  The notes of

09:51  24   Special Agent Karlous indicate that it relates to billing

09:51  25   and accounting.  That particular handwritten memo is

09:51   1   attached to Defense 1084.

09:51   2           Of more significance I think is the interview with

09:52   3   Ms. Regnier on November 19, 2019.  The report of that

09:52   4   interview was Defendant's Exhibit 1085.  At paragraph 14,

09:52   5   Ms. Regnier indicated -- I will quote the paragraph -- not

09:52   6   her quote but a quote from the report:  "EA used two systems

09:52   7   to track case expenses.  The first is QuickBooks, and the

09:52   8   accounting entries came from expense reports, et cetera.

09:52   9   The second system used by EA to track case expenses is

09:52  10   Tabs."

09:52  11           I believe that between those two interviews the

09:52  12   government was fully on notice of the significance of the

09:52  13   Tabs data.  The questioning at trial I believe established

09:53  14   that no effort was made to secure the Tabs data.  On

09:53  15   August 18, the morning session at page 40 provides the

09:53  16   following.  The question was being put to Agent Karlous:

09:53  17           "Q    As you sit here today two years after being

09:53  18           told in a conference call with other members of

09:53  19           the investigative team about the Tabs data -- as

09:53  20           you sit here today, do you recall a single thing

09:53  21           that you or anyone else did to confirm or deny the

09:53  22           existence of the Tabs data on the servers?

09:54  23           "A    I don't know if we have Tabs data."

09:54  24           Then it continues over on page 41:

09:54  25           "Q    Okay.  Well, in light of your answer, have

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

09:54  1        you personally -- let me ask you this.  Are you
09:54  2        aware of anyone on the investigative team in the
09:54  3        last two years making inquiry as to whether the
09:54  4        Tabs data was included within the forensic images
09:54  5        on the servers?
09:54  6        "A      It may have occurred, but I don't know."
09:54  7            Similar questioning was conducted the next day of
09:54  8    Agent Tashchyan.  It was apparent from their testimony that
09:54  9    no one had gone back to the forensic copies of the servers
09:54  10   to conduct a search.
09:54  11           I think the significance of the Tabs data was
09:54  12   pointed out early in the trial when Ms. Regnier testified on
09:55  13   the morning session on July 28 at page 93:
09:55  14       "Q      When you had to figure out costs for a
09:55  15       case, you would look at Tabs; would you not?
09:55  16       "A      No.  I would look at both Tabs and
09:55  17       QuickBooks.
09:55  18       "Q      Why would you look at both QuickBooks and
09:55  19       Tabs?
09:55  20       "A      To make sure we had encompassed all the
09:55  21       costs.
09:55  22       "Q      You couldn't rely on just one?  You had to
09:55  23       look at both?
09:55  24       "A      Yes.
09:55  25       "Q      Otherwise the calculation could be wrong?

09:55  1          "A     Correct."

09:55  2          I think that testimony in and of itself is

09:55  3  sufficient to establish the materiality of the Tabs data,

09:55  4  particularly where at least in the case of three of the

09:55  5  victim clients the costs were an element in determining what

09:55  6  net payment Mr. Avenatti was entitled to out of the

09:56  7  settlement.

09:56  8          The Prosecution Team conducted a search of its

09:56  9  files and provided the Court an extensive filing at Docket

09:56  10  737 of various pieces of Tabs data.  Two of the reports were

09:56  11  identical to the trial exhibits, Exhibit 48, the Johnson

09:57  12  draft, and Exhibit 174, the Barela Tabs data.

09:57  13          All the other Tabs documents related to other

09:57  14  clients and really aren't material to this case.  It shows

09:57  15  that the government did a diligent search for Tabs data in

09:57  16  the materials that the Prosecution Team had, but it by no

09:57  17  means convinced the Court that that was the only Tabs data

09:57  18  that was out there to be had in the materials which were

09:57  19  seized.

09:57  20          Tabs data wasn't used at trial, as I indicated,

09:57  21  Tabs data offered for proving up the Johnson loss, and

09:58  22  similarly for Barela.  No Tabs data was had for Gardner.  I

09:58  23  think that it's significant that the prosecution didn't have

09:58  24  the benefit of other Tabs data relating to those two clients

09:58  25  and relating to Gardner for whom no Tabs data was offered.

09:58  **1**      I also think Tabs data would have been of

09:58  **2**  assistance to the government even with respect to the two

09:58  **3**  other victims, Tran and Phan.

09:58  **4**      MR. AVENATTI:  Your Honor, you said "government"

09:58  **5**  the last two times.  Was that purposeful, or did you mean to

09:58  **6**  say the "defense"?

09:58  **7**      THE COURT:  I meant to say the defense.

09:58  **8**      MR. AVENATTI:  I'm sorry to interrupt.

09:58  **9**      THE COURT:  Thank you for the correction.

09:58  **10**      **The documents would have been of assistance to the**

09:58  **11**  **defense in questioning the appropriate amount that**

09:58  **12**  **Mr. Avenatti drew down for himself, even though with respect**

09:58  **13**  **to Tran and Phan, no costs were relevant because their fee**

09:59  **14**  **contracts simply provided for a straight net percentage out**

09:59  **15**  **of the amounts recovered.**

09:59  **16**      I believe that the data would have been useful in

09:59  **17**  an overall showing that the government's accounting records,

09:59  **18**  the methods of Mr. Drum in particular, weren't accurate.  He

09:59  **19**  wasn't accurate in part of his analysis.  I think the jury

09:59  **20**  could question the accuracy of his methods and results with

09:59  **21**  respect to other clients.

09:59  **22**      It is no answer that the government is not

09:59  **23**  required to prove the exact amount that Mr. Avenatti

09:59  **24**  misappropriated.  The government put forth a number, and I

09:59  **25**  believe the defendant was entitled to challenge that number

| | | |
|---|---|---|
| 09:59 | 1 | and to show that it was not accurate.  It may have shown |
| 09:59 | 2 | that the amount was appropriated was lesser or greater, or |
| 10:00 | 3 | it would have put a question mark there, and I think the |
| 10:00 | 4 | defendant was entitled to have the ability to put that |
| 10:00 | 5 | question mark there. |
| 10:00 | 6 | I think the testimony -- the factual presentations |
| 10:00 | 7 | this morning indicate to me that out of the identified Tabs |
| 10:00 | 8 | material it would likely have been relevant material to |
| 10:00 | 9 | assist the defense in its cross-examination. |
| 10:00 | 10 | Mr. Fitzgerald indicated to me that if the |
| 10:00 | 11 | additional materials for Tabs and QuickBooks were identified |
| 10:00 | 12 | as part of the initial process of screening the search |
| 10:00 | 13 | warrant materials, he would have reviewed these materials, |
| 10:00 | 14 | and if anything were relevant, he would have passed them on |
| 10:00 | 15 | to the Prosecution Team.  We'll never know the answer to |
| 10:00 | 16 | that question because it didn't occur.  It seems to me given |
| 10:00 | 17 | the volume of Tabs and the representations I have received |
| 10:00 | 18 | from the defense this morning that there would have been at |
| 10:01 | 19 | least some data passed on. |
| 10:01 | 20 | The question then is is there a violation of |
| 10:01 | 21 | Brady?  I focus on Brady because I think the analysis of |
| 10:01 | 22 | Brady is sufficient, even though there may be other grounds |
| 10:01 | 23 | which would call for the government's production of |
| 10:01 | 24 | materials from the Tabs data at least be identified. |
| 10:01 | 25 | Brady versus Maryland, 373 U.S. 83-87 (1963), |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

10:01  **1**    requires production of materials that are advantageous to

10:01  **2**    the defendant or that tend to call into doubt -- call the

10:01  **3**    government's case into doubt.

10:01  **4**            Brady establishes three requirements:  One, the

10:01  **5**    evidence at issue must be favorable to the accused.  I find

10:02  **6**    that the Tabs and other accounting data that was not

10:02  **7**    produced would have been favorable to the defendant.

10:02  **8**            Two, the evidence must have been suppressed by the

10:02  **9**    government willfully or inadvertently.  I find that it was,

10:02  **10**   quote, "suppressed," although I don't think that's the

10:02  **11**   appropriate word in the context.  But it wasn't produced

10:02  **12**   through inadvertence and a failure to appreciate what was

10:02  **13**   there.

10:02  **14**           I find no willful conduct on the part of the

10:02  **15**   Prosecution Team.  I find no willful conduct on the part of

10:02  **16**   the Privilege Review Team.  I think the Taint Team has

10:02  **17**   fairly acknowledged that there may have been some

10:02  **18**   shortcomings in the review process.

10:02  **19**           Finally, there must be a finding that prejudice

10:03  **20**   must have ensued.  I find that prejudice occurred here in a

10:03  **21**   number of ways.  I think the defendant was denied an

10:03  **22**   opportunity to craft his overall theory of the case and

10:03  **23**   presentation, including the opening statement, by not having

10:03  **24**   this additional material.  I believe that the defense was

10:03  **25**   prejudiced in its ability to cross-examine certain

| | | |
|---|---|---|
| 10:03 | 1 | witnesses, in particular, Mr. Drum. |
| 10:03 | 2 | At page 5 of his most recent report at Docket 775, |
| 10:03 | 3 | Mr. Avenatti outlines a number of things that he could have |
| 10:04 | 4 | done had he had the Tabs information, including |
| 10:04 | 5 | cross-examination of certain witnesses, ability to question |
| 10:04 | 6 | the government's preparation techniques generally, and so |
| 10:04 | 7 | on.  I won't repeat those. |
| 10:04 | 8 | The question is what remedy should I adopt?  I do |
| 10:04 | 9 | not believe that an adjournment is an appropriate remedy. |
| 10:04 | 10 | First of all, an adjournment would not solve the problem |
| 10:04 | 11 | that Mr. Avenatti didn't have this material at the front end |
| 10:04 | 12 | to craft his theory of the case, his opening statement, and |
| 10:04 | 13 | examining of the witnesses.  He might have done something |
| 10:04 | 14 | different, or he might not have done something different if |
| 10:04 | 15 | he had this data.  The point is he didn't have the |
| 10:04 | 16 | opportunity to make that choice. |
| 10:04 | 17 | I believe that any adjournment wouldn't be a |
| 10:04 | 18 | short-lived affair but would require a significant amount of |
| 10:05 | 19 | time (a) to complete the production to the defendant of the |
| 10:05 | 20 | newly described materials and then allow the defendant |
| 10:05 | 21 | adequate time to assimilate and craft a strategy based on |
| 10:05 | 22 | the newly produced material.  I am not prepared to say that |
| 10:05 | 23 | that would be a short-lived effort.  Given the volume of new |
| 10:05 | 24 | material, it seems unlikely that effort would be |
| 10:05 | 25 | short-lived. |

10:05  1          The representation to the jury was our best

10:05  2  estimate the case would be concluded by August 20.

10:05  3  Obviously, we are past that date, and the defense is still

10:05  4  on the defense's case-in-chief.  I do not believe it would

10:05  5  be appropriate to hold the jury for an extended period of

10:05  6  time to allow the defense adequate time to assimilate and

10:05  7  prepare in light of the newly produced material.

10:06  8          I want to go back and emphasize two points.  I

10:06  9  repeat my findings that I find no misconduct on the part of

10:06  10 the Prosecution Team and no misconduct on the part of the

10:06  11 Taint Team.  Shortcomings there may have been, but I find no

10:06  12 misconduct, intentional or otherwise, on the part of the

10:06  13 Taint Team in carrying out its activity.

10:06  14         For all those reasons, I grant a new trial.  The

10:06  15 matter will proceed to trial on October 12, 2021, at 8:30

10:06  16 a.m.  That's the current date that we ought to have in place

10:06  17 our severed portion of the case.  I set a status conference

10:06  18 for September 27, 2021, at 9:00 a.m.  I set a further

10:07  19 interim status conference for September 2 at 8:30 a.m. to

10:07  20 discuss the overall timing of the case.

10:07  21         In terms of a retrial, you should be aware that I

10:07  22 will be away from October 17th to October 24th.  If we

10:07  23 proceed on October 12th on the victim counts, we could

10:07  24 impanel a jury I believe the week before I leave and then

10:07  25 start the trial probably the week I come back.  I want to

10:07 **1** give the parties an opportunity to assimilate the schedule
10:07 **2** that I have put out there and come back to me with their
10:07 **3** thoughts.  That's what we will do on September 2.
10:07 **4**          All pending motions are denied or moot at this
10:07 **5** time.
10:07 **6**          **Anything further?**
10:08 **7**          MR. AVENATTI:  Your Honor, from the defense, I
10:08 **8** believe that the Motion for Mistrial should be with
10:08 **9** prejudice.  I have heard Your Honor's directives this
10:08 **10** morning, but I would like to have an opportunity to at least
10:08 **11** submit briefing for consideration by the Court on that point
10:08 **12** once I have had a chance to look at some of the data.  So
10:08 **13** what I would like to do is collect my thoughts and then
10:08 **14** propose a briefing schedule to the government and to the
10:08 **15** Court.
10:08 **16**          THE COURT:  That's fine.  I think we would like to
10:08 **17** resolve that issue.  The strong presumption is that when a
10:08 **18** mistrial is granted at the request of the defendant, the
10:08 **19** grant of a new trial is proper.  But I will afford you an
10:08 **20** opportunity to move for whatever relief you want.  I don't
10:08 **21** think we should do it on an expedited basis, but we
10:08 **22** shouldn't drag it out either.
10:08 **23**          MR. AVENATTI:  I agree, Your Honor.  I'm going to
10:08 **24** need some time to look at the data, but I agree that it's
10:09 **25** going to have to be dealt with on a measured approach.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 10:09 | 1 | THE COURT:  Anything further from the government? |
| 10:09 | 2 | MR. SAGEL:  No, Your Honor. |
| 10:09 | 3 | THE COURT:  Okay, we will be adjourned.  Thank |
| 10:09 | 4 | you. |
| 10:09 | 5 | MR. AVENATTI:  Your Honor, are you bringing the |
| 10:09 | 6 | jurors in?  Are they here? |
| 10:09 | 7 | THE COURT:  No, they're not here.  I plan to send |
| 10:09 | 8 | them the usual certificate for service, and I plan to send |
| 10:09 | 9 | each one a personal letter indicating that I concluded the |
| 10:09 | 10 | trial and thanking them for their service. |
| 10:09 | 11 | MR. AVENATTI:  Understood. |
| 10:09 | 12 | THE COURT:  I'm not going to get into the merits |
| 10:09 | 13 | of anything.  They put in a significant amount of time, and |
| 10:09 | 14 | I watched these folks.  By and large, they were on time |
| 10:09 | 15 | every day.  They were diligent.  They were watching what was |
| 10:09 | 16 | going on.  I think that the parties' efforts to help the |
| 10:09 | 17 | Court in seating a fair and impartial jury were achieved. |
| 10:09 | 18 | They were diligent, and they should be told that. |
| 10:10 | 19 | Thank you. |
| 10:10 | 20 | **(Whereupon, the proceedings were concluded.)** |
| 10:10 | 21 | *     *     * |
| 10:10 | 22 | |
| 10:10 | 23 | |
| 10:10 | 24 | |
| 10:10 | 25 | |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

67

| | |
|---|---|
| 10:10 | 1 |
| 10:10 | 2 |
| 10:10 | 3 |
| 10:10 | 4 |

**CERTIFICATE**

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:  August 25, 2021

/s/   Sharon A. Seffens  8/25/21
_____
SHARON A. SEFFENS, U.S. COURT REPORTER

**MR. AVENATTI: [25]** 3/11 6/19 7/1 8/18 9/12
9/15 10/13 11/19 13/1 13/20 15/25 16/10
18/15 19/4 20/11 20/14 41/14 48/23 48/25 60/4
60/8 65/7 65/23 66/5 66/11
**MR. FITZGERALD: [11]** 3/18 3/25 41/3 41/23
42/4 44/14 46/12 46/17 46/25 56/6 56/9
**MR. SAGEL: [35]** 3/5 21/5 21/13 21/25 22/14
22/19 23/5 23/17 23/25 24/2 24/18 24/25
25/15 26/7 26/12 27/5 27/17 27/22 28/2 28/8
28/23 28/25 30/5 30/9 30/13 32/16 33/17 36/5
37/7 37/11 39/2 40/13 40/19 40/25 66/2
**THE CLERK: [1]** 3/3
**THE COURT: [67]** 3/10 3/13 3/24 6/17 6/24
8/17 9/2 9/14 10/12 11/18 12/24 13/17 15/24
16/6 18/13 19/2 19/25 20/8 21/2 21/7 21/22
22/9 22/16 23/2 23/8 23/21 24/1 24/13 24/23
25/11 25/16 26/9 27/1 27/10 27/19 27/24 28/7
28/16 28/24 30/2 30/7 30/10 32/14 33/15 37/3
40/12 40/14 40/23 41/1 41/21 42/3 44/10 46/5
46/15 46/18 48/3 48/24 56/5 56/8 56/11 60/7
60/9 65/16 66/1 66/3 66/7 66/12

**$**

**$1,810,000 [1]** 34/5
**$1,900 [2]** 29/13 55/20
**$1,910,000 [1]** 34/5
**$111,113.22 [2]** 31/12 31/13
**$27,000 [1]** 29/16
**$37,000 [2]** 29/16 55/17
**$4 [2]** 21/19 50/16
**$4 million [2]** 21/19 50/16
**$900 [1]** 33/9
**$944 [1]** 33/7

**'**

**'10 [1]** 30/25
**'11 [1]** 30/25

**/**

**/s [1]** 67/15

**0**

**00418 [1]** 49/6
**0870 [1]** 1/21

**1**

**1-1053 [1]** 1/20
**10 [1]** 50/12
**1019 [1]** 17/17
**1053 [1]** 1/20
**107 [1]** 2/16
**1084 [3]** 11/18 11/19 57/1
**1085 [3]** 12/25 13/1 57/4
**1100 [1]** 2/7
**12 [3]** 4/14 7/15 64/15
**12/19/2017 [1]** 31/9
**12th [3]** 17/1 24/8 64/23
**14 [4]** 4/14 7/15 13/2 57/4
**16 [3]** 10/3 17/11 18/8
**17 [2]** 5/24 6/1
**174 [6]** 15/21 15/22 16/18 31/8 31/8 59/12
**17th [1]** 64/22
**18 [1]** 57/15
**19 [2]** 12/21 57/3
**193 [3]** 31/8 31/10 31/13
**1963 [1]** 61/25
**1st [1]** 50/14

**2**

**20 [3]** 54/9 54/14 64/2
**2011 [2]** 49/23 50/14
**2012 [1]** 30/25
**2015 [2]** 30/21 31/1
**2017 [1]** 31/9
**2019 [24]** 5/7 6/2 9/21 10/2 10/2 10/8 10/14
11/3 11/16 12/6 12/21 25/18 34/12 37/20 44/8
44/20 44/20 47/7 49/11 49/23 50/14 51/9
56/22 57/3

**2020 [5]** 14/8 17/18 35/7 35/13 37/20
**2021 [7]** 1/17 31 57/2 63/24 65/1 66/18
67/13
**21 [1]** 67/15
**213 [1]** 2/8
**24 [2]** 1/17 3/1
**24th [4]** 10/8 10/14 11/3 64/22
**25 [7]** 49/23 50/14 54/9 54/14 56/10 56/22
67/13
**25th [5]** 6/2 9/21 11/16 12/6 14/18
**26 [1]** 1/12
**27 [1]** 64/18
**28 [2]** 58/13 67/7

**3**

**312 [1]** 2/7
**31st [1]** 5/7
**330 [3]** 49/21 50/8 50/12
**338-3598 [1]** 2/12
**3598 [1]** 2/12
**36 [1]** 41/25
**373 [1]** 61/25
**3rd [1]** 30/21

**4**

**4-1 [1]** 49/6
**40 [1]** 57/15
**400,000 [1]** 34/18
**408 [1]** 14/19
**41 [1]** 57/24
**411 [2]** 1/20 2/11
**430 [2]** 21/8 56/18
**457 [3]** 21/9 21/9 56/18
**48 [5]** 15/21 15/22 16/18 28/8 59/11
**481-4900 [1]** 2/17
**4900 [1]** 2/17
**4:00 last [1]** 8/20
**4th [4]** 1/20 25/17 30/21 31/1

**5**

**543-0870 [1]** 1/21
**5th [1]** 29/2

**6**

**6,000 [2]** 38/20 38/23
**6683 [1]** 2/8
**6:00 p.m [2]** 4/16 7/16

**7**

**706 [6]** 9/6 9/9 19/17 19/21 20/25 56/3
**714 [2]** 1/21 2/12
**72 [1]** 25/11
**737 [2]** 24/15 59/10
**74 [1]** 5/6
**745 [2]** 10/6 10/10
**753 [1]** 67/8
**775 [2]** 3/16 63/2

**8**

**8/25/21 [1]** 67/15
**8000 [1]** 2/11
**83-87 [1]** 61/25
**87 [1]** 61/25
**894-6683 [1]** 2/8
**8:05 [1]** 3/1
**8:19-MJ-00418 [1]** 49/6
**8:30 [1]** 64/15
**8:30 a.m [1]** 64/19

**9**

**90012 [1]** 2/8
**92672 [1]** 2/16
**92701 [2]** 1/20 2/11
**93 [1]** 58/13
**949 [1]** 2/17
**968 [1]** 17/17
**9:00 [1]** 64/18
**9:25 [1]** 48/5
**9:36 [1]** 48/6

**A**

**a.m [6]** 3/1 48/5 48/6 64/16 64/18 64/19
**abandon [1]** 18/7
**ability [4]** 53/22 61/4 62/25 63/5
**able [16]** 4/9 4/13 8/19 17/11 18/17 22/2
26/21 36/14 38/13 38/17 43/24 52/20 53/25
55/13 55/15 55/21
**about [35]** 4/15 4/15 9/24 14/24 15/11 15/20
20/18 24/2 24/3 24/7 26/6 28/23 31/2 32/3
35/2 38/3 38/12 41/18 42/6 43/7 43/14 44/1
45/25 47/6 47/16 47/22 48/3 51/5 51/22 53/2
54/5 54/9 55/24 56/9 57/19
**above [1]** 67/9
**above-entitled [1]** 67/9
**absent [1]** 5/17
**absolute [1]** 27/11
**Absolutely [1]** 16/10
**access [19]** 5/22 6/7 8/23 23/19 25/5 25/6
26/21 27/1 27/3 33/19 34/15 34/20 34/21
37/17 37/25 44/7 51/14 51/15 51/16
**accessed [1]** 50/23
**accessible [1]** 8/2
**accessing [2]** 5/19 6/1
**according [2]** 9/22 11/24
**account [3]** 22/10 45/20 55/16
**accounting [7]** 12/5 49/24 50/2 56/25 57/8
60/17 62/6
**accuracy [2]** 22/12 60/20
**accurate [16]** 19/11 22/23 27/15 28/12 28/18
40/17 40/18 52/14 60/18 60/19 61/1
**accurately [1]** 37/19
**accused [1]** 62/5
**achieved [1]** 66/17
**acknowledged [2]** 12/13 62/17
**acknowledging [1]** 26/10
**across [1]** 22/12
**Act [1]** 14/14
**acted [2]** 19/20 40/10
**acting [2]** 27/11 44/18
**activity [1]** 64/13
**actual [3]** 8/24 19/14 40/6
**actually [6]** 8/2 8/4 17/7 23/3 32/9 35/1
35/22
**addition [1]** 37/4
**additional [2]** 61/11 62/24
**address [3]** 22/5 22/21 56/6
**adequate [2]** 63/21 64/6
**adjourned [1]** 66/3
**adjournment [3]** 63/9 63/10 63/17
**admit [2]** 16/2 43/14
**admitted [1]** 15/21
**adopt [1]** 63/8
**advantage [2]** 23/18 38/1
**advantageous [1]** 62/1
**advised [1]** 13/3
**ADVISORY [1]** 2/15
**advocating [1]** 41/20
**affair [1]** 63/18
**affidavit [1]** 49/10
**affirmative [1]** 51/17
**afford [1]** 65/19
**afforded [1]** 36/8
**after [20]** 4/2 6/4 6/11 10/2 10/20 12/8 12/9
14/13 25/23 29/2 29/5 29/11 29/19 29/22
30/20 31/25 33/5 33/8 45/16 57/17
**again [13]** 13/25 14/2 16/25 18/25 34/15
34/24 36/23 38/4 43/13 45/3 46/13 47/15
47/18
**agent [12]** 6/6 9/23 11/21 11/22 12/21 12/22
16/22 38/11 49/11 56/24 57/16 58/8
**agents [5]** 42/19 43/6 43/10 47/10 47/21
**ago [5]** 11/4 19/8 24/20 46/1 51/8
**agree [8]** 13/24 19/25 21/3 30/5 36/24 41/21
65/23 65/24
**agreed [5]** 5/2 5/19 7/1 8/6 23/24
**agreements [2]** 3/22 4/20
**agrees [1]** 6/20
**ahead [1]** 24/1
**ALEXANDER [2]** 2/5 3/6

**A**

**all [52]** 4/11 5/1 5/8 7/6 7/25 10/3 11/14 12/3 12/14 14/1 14/3 14/6 14/16 14/20 15/2 15/8 16/23 18/18 20/24 22/10 24/14 27/17 29/3 29/10 30/14 30/22 32/18 33/7 34/25 35/3 35/10 36/18 38/14 38/16 38/18 40/9 41/10 45/11 46/5 46/13 51/2 51/6 51/11 52/17 54/7 54/19 56/14 58/20 59/13 63/10 64/14 65/4
**allegedly [1]** 20/10
**allow [2]** 63/20 64/6
**allowed [4]** 4/21 6/13 23/10 42/19
**allowing [1]** 33/19
**almost [2]** 21/11 56/19
**along [2]** 33/13 35/6
**already [2]** 14/11 32/10
**also [9]** 24/18 26/17 26/20 32/13 35/23 42/11 51/19 52/6 60/1
**alternative [1]** 26/20
**alternatively [1]** 28/21
**although [3]** 51/24 56/16 62/10
**always [1]** 39/15
**am [5]** 27/8 33/18 36/25 50/3 63/22
**AMERICA [2]** 1/9 3/4
**among [1]** 52/25
**amount [11]** 7/13 9/16 9/17 13/9 13/10 28/14 60/11 60/23 61/2 63/18 66/13
**amounts [2]** 33/25 60/15
**Ana [4]** 1/16 1/20 2/11 3/1
**analogy [2]** 27/18 47/20
**analysis [13]** 21/17 22/17 23/3 28/21 29/1 31/21 36/11 36/12 36/22 38/8 43/19 60/19 61/21
**analyzed [1]** 21/9
**analyzes [1]** 21/8
**Andre [8]** 10/7 11/2 11/13 11/23 26/9 53/24 53/25 54/25
**Andre's [1]** 25/17
**Angeles [1]** 2/8
**another [4]** 12/23 33/8 45/16 53/17
**answer [5]** 27/22 56/4 57/25 60/21 61/15
**any [33]** 3/17 5/16 5/22 8/19 10/24 13/6 14/13 15/1 17/24 19/12 21/1 23/11 24/4 26/2 26/13 26/21 30/3 33/12 33/22 33/23 38/14 38/17 43/25 47/9 49/24 50/1 50/3 50/4 50/5 52/5 52/13 56/4 63/17
**anybody [1]** 40/10
**anybody's [1]** 40/10
**anyone [3]** 5/20 57/21 58/2
**anything [14]** 21/20 31/19 32/9 35/14 35/25 37/4 37/21 39/15 40/2 46/8 61/14 65/6 66/1 66/13
**apparent [2]** 7/24 58/8
**appear [1]** 13/5
**APPEARANCES [1]** 2/1
**appellate [1]** 17/22
**applicable [2]** 5/5 6/9
**application [4]** 49/6 49/7 49/9 49/18
**applications [3]** 49/22 50/9 50/13
**appointed [2]** 10/16 25/19
**appreciate [2]** 33/11 62/12
**approach [4]** 18/21 33/19 48/23 65/25
**appropriate [6]** 46/11 46/22 60/11 62/11 63/9 64/5
**appropriated [1]** 61/2
**approximately [1]** 50/16
**April [2]** 10/1 50/14
**April 1st [1]** 50/14
**Arden [1]** 16/23
**Arden's [1]** 32/22
**are [71]**
**aren't [2]** 35/25 59/14
**argue [1]** 41/22
**argument [3]** 43/20 44/4 44/4
**as [69]**
**aside [2]** 42/18 51/15
**ask [6]** 11/25 20/25 34/14 46/5 56/2 58/1
**asked [5]** 14/15 19/14 19/14 33/21 49/17
**asking [2]** 37/1 40/8
**aspersions [1]** 19/22

**assessment [1]** 4/16
**assimilate [3]** 43/21 65/6 65/9
**assist [1]** 61/9
**assistance [2]** 60/2 60/10
**Assistant [8]** 2/4 2/6 2/10 10/7 11/22 12/18 12/22 49/9
**associated [2]** 55/10 55/19
**assuming [1]** 34/19
**assurances [1]** 12/10
**attached [2]** 16/19 57/1
**attachment [2]** 24/15
**attempt [1]** 5/21
**attempted [1]** 7/23
**attention [2]** 9/19 49/20
**attic [5]** 42/21 47/21 51/2 51/2 51/4
**Attorney [6]** 2/3 2/4 2/6 2/10 10/7 12/22
**Attorney's [2]** 6/6 7/19
**attorneys [4]** 11/22 12/18 47/17 49/10
**attorneys' [1]** 50/10
**audit [1]** 8/24
**August [8]** 1/17 3/1 17/1 24/8 44/8 57/15 64/2 67/13
**August 12th [2]** 17/1 24/8
**August 18 [1]** 57/15
**August 20 [1]** 64/2
**August 2019 [1]** 44/8
**AUSA [1]** 9/24
**authority [2]** 24/9 44/18
**automatically [1]** 35/25
**avail [1]** 11/15
**availability [1]** 37/24
**available [9]** 8/23 21/10 22/22 44/9 45/20 51/5 51/7 51/11 51/12
**AVENATTI [21]** 1/11 2/14 3/4 3/12 5/13 6/18 9/10 12/1 26/19 27/25 37/5 49/8 49/24 50/6 50/15 56/21 59/6 60/12 60/23 63/3 63/11
**Avenatti's [2]** 3/14 9/6
**Avenida [1]** 2/16
**aware [6]** 8/12 12/18 46/7 53/4 58/2 64/21
**away [1]** 64/22

**B**

**back [9]** 23/23 39/20 42/6 47/20 49/11 58/9 64/8 64/25 65/2
**backlog [1]** 44/15
**backwards [1]** 23/17
**bad [3]** 19/20 40/10 40/12
**bank [2]** 35/17 35/25
**bankruptcy [1]** 5/16
**Barela [16]** 15/23 16/22 29/24 31/5 31/9 31/11 31/12 32/22 33/4 33/9 36/6 38/14 38/22 53/13 59/12 59/20
**Barela's [1]** 33/5
**based [5]** 13/22 21/16 29/1 29/3 31/21 43/19 44/25 45/2 56/19 63/21
**baseless [1]** 33/16
**basic [3]** 20/5 20/6 46/2
**basically [2]** 14/9 29/17
**basis [4]** 13/19 13/21 22/11 65/21
**be [76]**
**bear [1]** 42/1
**became [1]** 7/22
**because [34]** 7/5 7/9 8/5 13/11 13/16 18/17 19/11 19/23 22/10 22/22 27/6 30/9 31/23 32/24 33/22 34/19 35/20 35/25 37/18 38/5 41/12 41/15 43/24 45/3 46/18 51/12 53/12 54/3 54/11 55/6 60/13 61/16 61/21
**been [61]** 6/16 9/16 11/7 12/10 13/6 13/17 14/2 14/3 14/6 14/11 16/1 16/11 16/11 17/11 18/10 18/17 19/1 19/7 19/10 21/16 26/6 27/13 27/19 31/25 32/10 34/20 34/22 35/10 36/24 37/11 38/6 38/7 39/17 39/17 40/2 40/16 43/21 43/24 46/20 46/23 47/1 47/8 47/10 51/3 51/21 54/10 54/24 55/5 55/13 55/15 55/21 60/1 60/10 60/16 61/8 61/18 62/7 62/8 62/17 64/11
**before [17]** 14/14 16/14 19/10 20/19 21/20 24/16 24/19 30/21 37/11 39/18 41/4 42/1 42/6 52/12 54/5 56/13 64/24

**began [1]** 7/23
**behalf [4]** 3/6 5/20 44/2 44/10
**behind [1]** 51/1
**beholden [1]** 24/10
**being [11]** 10/18 25/21 33/11 40/20 40/21 42/13 45/19 54/19 55/11 57/16 57/17
**believe [33]** 3/20 4/16 5/23 9/2 15/14 19/4 19/16 22/2 24/16 26/22 27/6 27/23 27/24 35/15 36/3 37/5 38/12 40/7 40/8 40/17 44/10 44/11 56/15 57/11 57/13 60/16 60/25 62/24 63/9 63/17 64/4 64/24 65/8
**believed [2]** 6/12 53/18
**believes [5]** 28/9 39/23 40/4 41/8 41/9
**belong [1]** 37/23
**benefit [4]** 10/10 55/13 55/21 59/24
**benefited [1]** 55/8
**best [2]** 38/7 64/1
**between [6]** 17/19 34/6 42/23 43/2 43/15 57/11
**beyond [3]** 19/1 26/10 36/2
**billing [3]** 12/5 50/10 56/24
**bills [1]** 31/9
**bit [1]** 32/15
**blue [1]** 54/13
**board [1]** 22/12
**both [41]** 11/22 22/23 26/7 36/19 37/20 40/21 44/23 46/1 58/16 58/18 58/23
**box [1]** 51/1
**boxes [2]** 51/2 51/4
**Brady [32]** 10/3 11/15 12/11 12/15 14/1 14/6 14/9 18/8 18/10 19/19 23/22 24/3 27/2 27/2 27/3 27/3 27/7 27/16 34/7 36/11 36/12 36/12 36/23 37/22 41/8 42/25 44/4 61/21 61/21 61/22 65/25 62/4
**Brady/Bundy [1]** 44/4
**BRANDON [1]** 2/4
**BRETT [2]** 2/9 3/5
**break [1]** 48/4
**brief [1]** 4/2
**briefing [3]** 9/16 65/11 65/14
**bring [3]** 9/19 16/7 41/22
**bringing [1]** 66/5
**broad [1]** 32/3
**broadbrush [1]** 22/22
**Building [1]** 2/10
**bunch [1]** 8/25
**Bundy [10]** 17/15 17/20 17/21 18/3 20/6 24/3 34/23 34/24 41/10 44/4

**C**

**CA [4]** 1/20 2/8 2/11 2/16
**Cafe [1]** 33/3
**calculate [2]** 39/10 39/13
**calculated [1]** 23/4
**calculation [1]** 58/25
**calculations [1]** 53/2
**CALIFORNIA [3]** 1/5 1/16 3/1
**call [12]** 9/20 11/24 12/2 14/7 36/20 39/20 47/4 47/5 57/18 61/23 62/2 62/2
**came [8]** 15/19 29/3 31/15 33/5 35/4 44/21 51/13 57/8
**can [23]** 9/12 16/15 21/25 23/6 23/13 24/6 27/9 29/7 29/23 29/24 29/25 30/19 31/6 32/5 33/20 36/10 39/24 43/1 45/13 47/3 47/4 47/25 48/23
**can't [2]** 36/18 42/25
**cannot [2]** 18/19 24/6
**capture [1]** 25/13
**captured [1]** 4/18
**carrying [1]** 64/13
**case [70]**
**cases [7]** 18/4 24/4 32/20 33/23 34/4 40/20 40/22
**casting [1]** 19/21
**casts [1]** 52/21
**categories [1]** 49/16
**cause [1]** 18/5
**cautious [1]** 33/19

**C**

**Cefali** [1]  3/12
**center** [1]  29/18
**CENTRAL** [1]  1/5
**certain** [10]  3/22 4/22 5/7 16/24 41/5 44/25
 47/18 51/10 62/25 63/5
**certainly** [8]  13/18 18/1 18/2 44/17 45/14 47/8
 47/12 53/7
**certificate** [2]  66/8 67/4
**CERTIFIED** [1]  1/9
**certify** [1]  67/6
**cetera** [3]  19/23 23/23 57/8
**challenge** [2]  23/11 60/25
**challenges** [3]  23/15 23/15 23/16
**chance** [1]  65/12
**change** [4]  18/6 32/9 35/24 38/8
**changes** [5]  5/7 18/21 36/14
**charge** [1]  32/23
**chart** [2]  39/9 53/2
**charts** [3]  21/15 56/17 56/19
**check** [1]  31/12
**checks** [2]  28/13 29/14
**chief** [4]  2/5 16/8 39/19 64/4
**choice** [1]  63/16
**chose** [1]  38/1
**CI** [2]  10/16 25/19
**CI's** [1]  26/25
**Circuit** [4]  17/16 17/17 17/20 18/4
**circumstance** [1]  27/5
**circumstances** [1]  41/20
**cite** [1]  18/3
**cited** [2]  17/15 40/21
**citing** [1]  27/25
**civil** [1]  5/16
**claim** [1]  20/11
**claimed** [4]  15/7 15/9 49/2 49/18
**claiming** [1]  19/13
**claims** [3]  9/23 21/23 22/3
**clarification** [1]  3/21 4/14
**clarifications** [1]  4/5
**classic** [1]  41/8
**clawback** [1]  42/6
**clear** [7]  13/7 15/4 15/4 17/6 17/21 18/3 51/21
**clearly** [2]  20/20 54/3
**Clemente** [1]  2/16
**clicked** [1]  6/10
**client** [17]  7/6 7/11 12/1 12/4 12/5 13/10
 13/13 15/18 21/11 26/23 33/1 38/17 38/23
 50/10 50/15 50/18 50/19
**client's** [1]  26/22
**clients** [20]  4/10 4/11 5/22 5/25 6/8 6/9 6/10
 7/4 7/8 7/10 8/13 11/3 11/11 15/9 22/25 38/24
 52/17 59/5 59/14 59/24 60/21
**Clifford** [1]  5/25
**close** [2]  47/3 47/5
**closely** [1]  55/8
**Code** [1]  67/7
**cold** [1]  9/1
**colleague** [1]  45/8
**collect** [1]  65/13
**collection** [1]  9/4
**collectively** [1]  5/24
**come** [4]  44/12 46/6 64/25 65/2
**comes** [4]  22/5 24/10 31/22 32/8
**comment** [3]  8/14 39/2 39/4
**comments** [2]  37/15 38/3
**communication** [1]  54/2
**company** [2]  10/19 25/22
**compare** [1]  34/23
**comparison** [1]  8/6
**compel** [2]  12/9 25/4
**complain** [1]  15/12
**complained** [2]  14/1 55/24
**complete** [2]  52/16 63/19
**completes** [3]  10/25 26/3 26/14
**comply** [2]  12/11 20/5
**comprise** [1]  10/18 25/21
**computer** [6]  8/19 8/21 10/20 11/8 25/23
 44/22

**concentrate** [1]  20/12
**concern** [1]  44/6
**concerning** [1]  32/4
**concerns** [3]  15/15 33/12 33/15
**conclude** [1]  38/10
**concluded** [2]  64/2 66/9 66/20
**conclusion** [1]  4/3
**conduct** [3]  58/10 62/14 62/15
**conducted** [4]  11/16 42/15 58/7 59/8
**conference** [6]  6/5 14/7 57/18 64/17 64/19
 67/11
**conferring** [2]  36/4 39/1
**confirm** [2]  7/20 57/21
**conformance** [1]  67/10
**connection** [2]  10/15 25/18
**consented** [2]  10/16 25/19
**consequence** [1]  52/11
**consequences** [3]  14/25 42/8 43/25
**consideration** [2]  19/21 65/11
**considered** [1]  16/16
**constitutional** [1]  20/5
**consuming** [1]  38/19
**contact** [1]  55/2
**contain** [1]  52/17
**contained** [1]  49/4
**contempt** [1]  15/6
**context** [2]  20/16 41/17 62/11
**contingency** [1]  32/20
**continue** [2]  39/21 39/21
**continued** [2]  11/14 15/12
**continues** [3]  17/12 51/24 57/24
**contracts** [2]  32/14 60/14
**controlled** [1]  41/9
**conviction** [1]  17/22
**convince** [1]  23/21
**convinced** [1]  59/17
**copies** [5]  11/14 50/22 51/13 51/14 58/9
**copy** [7]  10/10 10/22 12/9 26/1 26/5 26/11
 49/5
**correct** [13]  7/9 11/19 13/1 15/25 23/9 23/13
 26/7 27/23 28/25 32/1 32/16 59/1 67/8
**correction** [2]  46/13 60/9
**correctly** [1]  42/16
**cost** [5]  15/22 15/23 16/14 19/15 53/6
**costs** [31]  13/23 16/4 21/21 22/5 23/3 24/21
 28/13 29/1 29/12 29/15 31/1 31/1 31/11
 31/15 31/22 31/25 32/25 33/7 33/22 35/5
 35/22 35/22 39/5 39/14 50/10 52/18 55/16
 58/14 58/21 59/5 60/13
**could** [28]  10/5 13/7 13/8 13/8 13/10 13/17
 13/18 13/20 13/21 13/21 13/24 17/4 18/14
 19/3 31/25 35/23 36/16 37/7 38/3 38/6 43/6
 43/23 50/23 51/21 58/25 60/20 63/3 64/23
**couldn't** [1]  58/22
**counsel** [11]  2/1 2/15 3/7 3/19 5/12 10/3 36/4
 39/1 44/21 45/5 45/21
**counted** [1]  35/20
**counts** [1]  64/23
**County** [2]  10/19 25/22
**couple** [3]  6/19 37/7 37/14
**course** [2]  46/25 47/3
**court** [51]  1/4 3/19 5/17 7/16 10/10 10/16
 14/5 14/15 14/15 14/18 17/5 17/10 17/15
 17/17 19/21 20/20 20/25 21/1 24/16 24/19
 25/19 33/11 35/13 36/5 36/8 36/9 37/1 37/2
 41/3 41/8 41/9 41/10 41/13 41/22 42/2 44/17
 44/18 45/14 45/18 46/13 49/5 53/25 55/1 56/3
 56/7 59/9 59/17 65/11 65/15 66/17 67/16
**Court's** [5]  6/12 9/19 43/7 44/6 49/20
**Court-appointed** [2]  10/16 25/19
**Courthouse** [1]  1/19 2/7
**cover** [1]  37/7
**craft** [3]  62/22 63/12 63/21
**created** [2]  12/1 39/9 43/12
**creating** [4]  10/17 10/20 25/20 25/23
**credibly** [1]  18/13
**credit** [2]  30/16 30/17
**criminal** [2]  2/5 5/16
**critical** [2]  56/14 56/17

**cross** [14]  15/17 16/8 28/19 29/4 29/6 31/24
 35/16 36/18 39/21 55/9 55/21 61/4 63/2
 63/5
**cross-examination** [9]  15/17 16/8 28/19 29/6
 36/16 39/21 55/14 61/9 63/5
**cross-examine** [2]  55/21 62/25
**cross-examined** [3]  29/4 31/24 36/18
**crystal** [1]  15/4
**cue** [1]  36/5
**Cummings** [1]  3/12
**current** [2]  29/8 64/16

**D**

**D.C** [3]  7/18 11/8 51/13
**data** [121]
**database** [1]  43/5
**databases** [1]  25/5
**date** [10]  8/8 8/24 9/24 12/16 12/17 29/5 31/1
 64/3 64/16 67/13
**Daubert** [1]  28/21
**day** [4]  1/12 35/1 58/7 66/15
**days** [2]  17/1 46/19
**dealing** [1]  20/17
**dealt** [1]  65/25
**DEAN** [2]  2/15 2/15
**December** [1]  5/7
**December 31st** [1]  5/7
**decided** [1]  16/8
**decides** [1]  19/21
**decrease** [1]  13/10
**deemed** [1]  5/9
**defendant** [33]  1/12 2/13 5/12 14/20 14/23
 22/7 22/16 23/8 23/10 23/11 23/18 24/16
 24/19 25/9 28/9 29/9 31/18 34/2 35/12 36/13
 36/15 40/22 44/21 45/6 45/21 60/25 61/4 62/2
 62/7 62/21 63/19 63/20 65/18
**defendant's** [3]  14/22 20/25 57/4
**defense** [56]  3/21 3/23 4/3 4/6 4/15 4/21 5/19
 5/20 5/21 6/4 6/16 6/20 11/11 11/13 15/3 15/6
 15/7 16/2 16/2 17/4 17/8 18/6 18/22 26/23
 39/11 39/19 42/9 44/7 44/9 44/21 45/1 45/5
 45/12 45/17 45/20 46/1 47/7 47/17 50/24
 51/19 51/19 52/16 53/5 53/10 54/7 56/3 57/1
 60/6 60/7 60/11 61/9 61/18 62/24 64/3 64/6
 65/7
**defense's** [1]  64/4
**defined** [2]  5/10 49/25
**definitely** [2]  17/4 47/11
**delay** [1]  32/14
**delta** [1]  34/18
**demand** [1]  11/14
**demanded** [1]  16/25
**demonstrably** [2]  19/9 28/10
**demonstrate** [1]  20/21
**denied** [3]  12/8 62/21 65/4
**deny** [1]  57/21
**denying** [2]  37/17 44/7
**Department** [1]  11/7
**depending** [1]  8/7
**described** [1]  63/20
**despite** [2]  12/19 19/13
**detail** [1]  49/12
**details** [2]  51/24 55/14
**determination** [2]  44/5 46/8
**determine** [4]  4/10 6/9 25/12 46/21
**determined** [1]  45/8
**determining** [3]  21/20 42/8 59/5
**devices** [3]  10/17 25/20 49/7
**did** [28]  9/1 12/9 13/12 16/2 16/2 16/6 22/12
 27/17 32/5 33/1 34/24 35/7 36/15 36/17 36/19
 36/20 37/23 38/16 44/8 45/16 53/6 53/8 53/9
 53/22 55/25 57/21 59/15 60/5
**didn't** [21]  15/10 20/14 30/3 30/5 32/1 33/6
 34/15 35/1 35/14 35/21 35/22 37/23 47/21
 51/1 51/14 52/5 56/1 59/23 61/16 63/11 63/15
**difference** [6]  31/2 31/5 31/7 31/14 43/15
 46/3
**differences** [1]  52/5
**different** [7]  8/22 18/6 24/6 31/19 44/4 63/14

**D**

**different...** [1] 63/14
**difficult** [1] 42/12
**digital** [3] 10/17 25/20 42/17
**diligent** [3] 59/15 66/15 66/18
**diligently** [1] 43/6
**direct** [1] 49/20
**directed** [1] 14/19
**directing** [1] 14/15
**direction** [1] 44/16
**directive** [2] 17/6 17/6
**directives** [1] 65/9
**directly** [2] 42/1 52/24
**disclosure** [1] 35/7
**discovered** [1] 54/17
**discovery** [3] 4/15 7/16 14/11
**discuss** [2] 26/20 64/20
**discussed** [1] 25/2
**discusses** [1] 26/18
**discussion** [4] 24/1 41/18 51/5 51/22
**disputes** [1] 56/15
**distinction** [3] 42/23 42/25 43/2
**DISTRICT** [2] 1/4 1/5
**DIVISION** [2] 1/6 2/5
**do** [33] 4/13 7/24 8/5 9/19 16/11 17/11 19/4 23/12 24/8 25/16 29/24 29/25 29/25 33/10 36/3 36/22 38/2 39/19 39/20 39/22 40/4 40/4 41/1 41/3 43/24 52/16 57/20 63/8 64/4 65/3 65/13 65/21
**Docket** [6] 3/15 10/6 14/19 24/15 59/9 63/2
**document** [5] 5/6 6/25 10/13 49/6 53/19
**documents** [19] 9/4 12/14 20/10 25/14 35/9 38/18 39/17 42/7 49/22 50/9 50/13 54/9 54/14 54/16 54/18 55/4 56/10 59/13 60/10
**does** [11] 13/5 21/15 21/19 22/19 26/15 27/2 27/20 28/5 40/8 41/17 51/16
**doesn't** [5] 22/16 23/21 32/9 51/19 51/23
**doing** [3] 22/7 24/20 43/1
**dollar** [1] 33/25
**dollars** [1] 21/18
**don't** [29] 8/9 8/15 9/7 17/24 18/16 19/23 22/2 25/11 26/12 27/7 27/14 27/23 33/22 33/23 33/25 34/16 34/20 37/3 37/19 38/8 41/16 42/23 44/11 54/20 56/15 57/23 58/6 62/10 65/20
**done** [9] 8/7 8/8 9/2 12/20 29/9 33/3 63/4 63/13 63/14
**double** [1] 35/20
**doubt** [3] 52/21 62/2 62/3
**doubting** [1]
**down** [5] 16/13 39/6 44/13 45/7 60/12
**DPPA** [1] 14/17
**draft** [4] 15/24 15/25 31/9 59/12
**drafts** [1] 29/9
**drag** [1] 65/22
**drew** [1] 60/12
**drive** [1] 6/13
**dropped** [1] 29/16
**Drum** [13] 21/8 22/12 23/1 28/23 28/25 31/20 35/8 36/17 39/20 53/12 55/21 60/18 63/1
**Drum's** [1] 56/17
**due** [4] 8/18 8/20 14/13 41/10
**during** [2] 11/6 12/2
**Dynamics** [1] 50/1

**E**

**e-mail** [2] 31/10 51/10
**e-mailed** [1] 28/15
**e-mails** [1] 30/14
**EA** [20] 10/14 10/16 10/18 10/20 10/21 10/21 10/23 10/25 25/19 25/21 25/23 25/24 25/24 26/1 26/3 26/21 26/24 50/15 57/6 57/9
**each** [13] 7/3 7/9 13/2 13/11 14/4 19/16 21/11 23/6 30/20 34/4 38/16 56/2 66/9
**Eagan** [3] 13/7 26/19 49/8
**earlier** [3] 33/7 43/20 47/20
**earliest** [1] 24/12
**early** [2] 11/3 58/12
**easily** [1] 17/23

**effort** [6] 13/6 13/15 17/2 57/14 63/23 63/24
**efforts** [1] 66/16
**egregious** [1] 30/7
**eight** [3] 5/11 12/23 17/1
**either** [9] 14/21 16/7 34/18 36/7 36/25 37/25 41/20 54/24 65/22
**electronic** [3] 7/9 34/14 50/2
**element** [1] 59/5
**else** [1] 57/21
**emphasize** [1] 14/1
**encompassed** [1] 58/20
**end** [3] 8/21 34/5 63/11
**ended** [2] 42/12 49/1
**enormous** [1] 7/12
**enough** [1] 9/8
**ensued** [1] 62/20
**ensure** [1] 26/20
**entire** [4] 9/17 11/24 14/10 18/21
**entirety** [1] 6/22 38/21
**entities** [2] 49/25 50/6
**entitled** [6] 16/7 16/11 16/12 21/17 22/8 23/8 23/12 23/14 23/16 23/23 34/5 59/6 60/25 61/4 67/9
**entries** [1] 57/8
**entry** [1] 8/25
**enumerates** [1] 49/15
**equation** [1] 36/24
**especially** [2] 21/9 31/19 38/8
**establish** [2] 21/10 59/3
**established** [5] 15/16 27/19 32/13 36/24 57/13
**establishes** [1] 62/4
**estimate** [1] 64/2
**et** [3] 19/23 23/23 57/8
**even** [26] 17/22 18/5 18/7 22/21 23/1 23/9 23/12 25/2 29/16 29/17 30/7 30/15 30/23 31/21 32/21 34/10 40/4 50/8 51/25 52/5 52/19 55/16 55/24 60/2 60/12 61/22
**event** [3] 14/13 15/1 17/24
**events** [2] 4/2 25/11
**ever** [1] 21/20
**every** [8] 14/4 23/7 30/20 33/13 34/4 34/8 38/16 66/15
**everything** [9] 7/21 15/10 22/11 25/8 29/5 34/8 34/21 55/25 56/1
**evidence** [15] 10/24 10/24 14/21 23/9 26/2 26/2 26/13 28/1 32/12 39/25 40/1 52/12 54/21 62/5 62/8
**exact** [2] 11/12 60/23
**exactly** [6] 7/17 9/8 22/25 31/13 31/16 32/6
**examination** [10] 15/17 16/8 22/17 28/19 29/6 36/16 39/21 55/14 61/9 63/5
**examine** [2] 55/21 62/25
**examined** [3] 29/4 31/24 36/18
**examining** [1] 63/13
**example** [5] 21/24 32/1 34/10 34/23 42/6
**examples** [1] 28/4 37/2
**except** [1] 18/16
**exclusively** [1] 56/19
**exculpatory** [12] 13/8 13/16 13/18 13/19 13/21 13/22 13/24 14/9 38/4 38/5 51/18 59/22 61/5 61/10
**Excuse** [1] 3/25
**executed** [1] 9/22
**exhaustive** [1] 47/9
**exhibit** [11] 10/9 11/18 12/25 15/22 16/19 20/21 28/8 31/10 57/4 59/11 59/12
**Exhibit 1084** [1] 11/18
**Exhibit 1085** [2] 12/25 57/4
**Exhibit 174** [1] 31/10
**Exhibit 193** [1] 31/10
**Exhibit 48** [2] 28/8 59/11
**exhibits** [10] 9/17 10/5 15/21 16/21 19/8 21/8 22/23 28/8 31/10 57/4 59/11
**exist** [2] 27/17 27/20
**existed** [4] 17/3 32/1 32/2 53/19
**existence** [5] 12/19 47/6 52/7 56/21 57/22
**exists** [2] 34/19 44/23
**expedited** [1] 65/21
**expense** [4] 16/14 29/17 29/18 57/8

**expenses** [25] 13/4 13/13 15/9 16/4 21/21 22/6 24/20 29/22 29/23 29/25 29/24 30/5 29/21 30/15 30/16 30/23 31/4 32/25 33/22 35/6 39/5 39/10 39/13 57/7 57/9
**experience** [1] 38/14
**expert** [5] 18/24 19/12 19/13 19/13 35/7
**explained** [1] 17/10
**exploring** [1] 6/11
**exported** [1] 6/14
**extended** [1] 64/5
**extensive** [2] 29/6 59/9
**extensively** [1] 31/24
**extent** [6] 18/17 40/16 40/18 41/7 41/8 53/5
**extra** [1] 35/23
**extract** [1] 34/11
**extraordinary** [1] 55/11
**extremely** [1] 35/11

**F**

**F.3d** [1] 17/17
**facie** [1] 23/13
**facility** [1] 29/20
**fact** [13] 12/12 14/7 19/19 23/9 28/11 44/5 47/16 47/18 49/5 51/11 53/22 54/3 55/6
**facts** [8] 27/15 41/5 41/11 41/12 41/13 41/22 41/24 56/12
**factual** [3] 41/18 43/19 61/6
**failure** [4] 20/2 20/5 20/16 62/12
**failures** [1] 20/22
**fair** [4] 9/16 9/16 47/24 66/17
**fairly** [1] 62/17
**fairness** [1] 46/2
**faith** [9] 19/20 20/24 13/27/12 40/11 40/12
**fall** [2] 27/15 47/2
**false** [4] 19/9 19/10 28/10 34/2
**familiar** [1] 20/20
**far** [1] 4/5
**fashion** [4] 19/3 19/6 23/2 23/13
**fast** [1] 50/7
**fast-forward** [1] 50/7
**favorable** [6] 14/23 18/1 18/5 51/18 62/5 62/7
**February** [3] 29/2 30/21 31/1
**February 3rd** [1] 30/21
**February 4th** [1] 31/1
**February 5th** [1] 29/2
**Federal** [1] 2/10
**FedEx** [1] 29/14
**fee** [1] 60/13
**feel** [2] 37/14 45/13
**fees** [1] 50/10
**few** [3] 9/20 46/19 55/18
**figure** [1] 58/14
**file** [6] 7/9 7/9 7/10 25/3 37/4 54/1
**filed** [5] 5/6 6/2 6/25
**files** [22] 4/8 4/8 4/10 7/3 7/4 7/5 7/6 7/22 7/25 8/2 8/9 12/1 34/14 34/17 38/20 38/23 45/1 45/15 45/25 50/2 54/4 59/9
**filing** [3] 16/20 53/17 59/9
**Filippo** [2] 30/14 30/17
**filtering** [1] 43/10
**filters** [1] 43/4
**final** [2] 15/14 39/2
**finally** [5] 5/18 6/3 17/8 62/19
**finances** [4] 21/16 22/1 22/5 22/21
**financial** [11] 3/15 15/8 21/3 21/9 21/11 22/3 22/17 50/4 50/5 56/14 56/19
**find** [13] 17/2 22/2 38/13 38/16 40/15 44/1 62/5 62/9 62/14 62/15 62/20 64/9 64/11
**finding** [2] 30/6 62/19
**findings** [2] 3/17 64/9
**fine** [4] 28/18 37/4 38/7 65/16
**finished** [2] 4/6 6/4
**firm** [2] 38/21 50/1
**first** [13] 4/5 4/21 5/8 10/13 11/10 16/4 16/13 23/17 43/14 45/13 56/14 57/7 63/10
**Fitzgerald** [12] 3/8 6/21 41/1 41/16 41/19 41/21 49/1 49/2 54/6 54/7 55/1 61/10
**five** [4] 16/20 16/23 18/23 47/22
**focus** [3] 20/8 24/6 61/21

**F**
focuses [1] 45/18
folks [1] 66/14
follow [2] 6/24 27/18
following [4] 11/13 15/5 26/18 57/16
footnote [1] 29/17
forego [1] 41/24
foregoing [1] 67/7
forensic [20] 4/18 10/17 10/20 10/23 11/5 11/6 11/9 11/12 25/20 25/23 26/1 26/5 26/11 26/24 49/4 50/22 51/13 51/14 58/4 58/9
formal [1] 6/24
format [1] 67/10
former [1] 47/24
forth [9] 11/1 21/17 21/21 26/4 26/14 32/4 32/25 39/14 60/24
forward [1] 50/7
found [7] 6/11 10/5 14/10 20/11 40/6 42/7 47/6
four [3] 11/20 12/3 29/10
Fourth [1] 2/11
FOX [1] 2/4
frankly [2] 19/15 20/1
fraud [1] 34/1
Frauds [1] 2/6
free [2] 27/1 27/3
Friday [1] 17/5
front [1] 63/11
fulfill [1] 43/7
full [6] 8/5 18/17 20/12 30/1 37/17 44/7
fully [4] 27/23 33/11 36/19 57/12
further [9] 3/17 3/19 5/17 18/16 21/1 33/22 64/18 65/6 66/1

**G**
gain [1] 33/19
gaining [1] 55/3
Gardner [11] 29/25 30/3 30/12 36/7 38/15 38/22 52/7 52/13 52/13 59/22 59/25
gave [3] 30/16 30/17 37/23
generalized [1] 23/2
generally [1] 63/6
gentlemen [1] 13/2
Geoffrey [1] 32/8
get [11] 4/23 17/7 17/7 18/25 28/3 33/6 40/7 45/16 47/25 51/23 66/12
gets [2] 6/25 56/8 56/11
getting [2] 44/3 54/8
gigabytes [2] 7/13 7/18
Giglio [8] 12/15 13/21 14/1 14/6 18/8 18/10 23/22 37/22
give [2] 37/8 65/1
given [3] 6/7 61/16 63/23
glad [1] 26/20
go [20] 4/5 7/14 14/3 17/13 17/13 17/14 18/15 21/8 21/19 21/25 23/17 24/1 24/9 26/10 36/8 37/1 50/12 50/17 50/19 64/8
goes [3] 21/4 21/18 52/24
going [32] 7/13 8/14 9/7 12/7 12/11 14/3 18/25 19/22 22/7 37/13 38/10 39/16 41/4 41/14 47/20 48/3 50/3 65/23 65/25 66/12 66/16
gone [3] 9/18 20/22 58/9
good [7] 3/5 3/10 3/11 3/13 19/20 24/13 27/12
good-faith [1] 24/13
got [2] 7/12 44/16
government [66] 5/19 8/12 10/22 10/25 12/10 12/13 13/15 14/16 14/19 14/21 15/9 15/21 16/3 16/13 16/16 17/2 19/11 19/20 19/23 20/7 20/12 20/23 22/18 23/22 23/25 26/14 27/14 31/8 35/10 36/4 39/1 39/4 39/6 41/15 43/12 44/2 44/11 44/12 49/16 49/17 49/18 51/15 51/17 51/20 52/15 52/22 53/3 53/4 54/3 55/8 55/8 56/15 56/16 56/20 56/23 57/12 59/15 60/2 60/4 60/22 60/24 62/9 65/14 66/1
government's [13] 10/15 15/2 18/23 22/13 25/18 34/25 37/19 43/16 43/17 60/17 61/23 62/3 63/6
grab [1] 45/6
grant [6] 20/25 21/22 39/24 56/3 64/14 65/19

granted [2] 19/18 65/18
grateful [2] 9/4 67/2
grounds [1] 61/22
guess [3] 17/11 22/14 40/19
guidance [1] 47/25
guideposts [1] 9/20
guilt [2] 14/22 14/23

**H**
had [51] 12/9 12/22 13/22 14/1 14/3 14/6 14/8 14/11 15/4 15/7 15/10 19/11 23/19 24/15 24/17 25/14 26/14 34/15 34/14 34/15 34/21 38/2 42/5 43/21 45/21 46/6 47/6 47/10 47/10 47/10 47/10 52/1 54/6 54/10 54/11 54/12 55/22 55/25 58/9 58/14 58/20 58/22 59/16 59/18 59/22 63/4 63/4 63/15 65/12
handed [1] 49/5
handled [1] 12/5
handwritten [1] 56/25
HANNA [1] 2/3
happen [2] 36/15 44/19
happened [9] 4/2 6/3 7/17 17/1 34/4 37/20 41/18 41/25 44/14
happens [2] 8/7 21/20
happy [2] 51/23 56/3
hard [4] 6/13 9/1 33/5 43/6
has [39] 6/16 9/15 9/18 10/22 12/13 17/16 19/1 20/22 21/1 21/9 25/25 27/25 30/1 32/13 32/17 33/13 33/18 34/6 34/11 34/20 34/22 35/10 39/7 39/11 39/15 39/18 39/25 40/1 40/9 40/10 40/16 41/15 41/25 42/10 45/24 55/1 55/5 55/7 62/16
hasn't [2] 27/19 34/20
have [127]
haven't [2] 18/17 54/22
having [7] 11/7 25/5 25/6 43/15 43/16 47/23 62/23
he [97]
he's [5] 22/22 29/22 30/6 35/8 39/19
hear [2] 32/3 37/5
heard [9] 9/11 39/25 40/1 54/6 54/11 54/22 54/24 55/1 65/9
hearing [1] 67/6
heart [1] 21/4
heat [2] 20/3 20/4
held [4] 9/4 44/2 51/13 67/9
help [2] 55/4 66/16
helps [1] 53/3
her [19] 9/22 21/19 30/13 36/18 57/6
here [19] 10/8 10/14 23/6 26/6 34/16 34/24 35/2 41/16 41/21 44/14 45/14 47/4 48/4 54/22 57/17 57/20 62/20 66/6 66/7
hereby [1] 67/6
hiding [1] 35/14
him [21] 21/10 22/23 26/16 29/14 29/14 29/22 30/16 30/17 33/19 34/11 35/5 35/7 37/23 37/24 39/3 39/18 39/24 40/3
himself [1] 60/12
his [32] 5/12 25/17 29/11 29/11 29/13 29/13 29/14 29/18 29/20 30/22 30/23 31/21 32/19 33/6 33/9 34/7 37/24 38/2 39/4 39/9 39/11 39/12 39/19 39/21 45/21 51/25 60/19 60/20 62/22 63/2 63/12 63/12
hold [1] 64/5
home [1] 9/22
Honor [96]
Honor's [3] 12/12 52/5 65/9
HONORABLE [1] 1/8
hourly [2] 32/23 32/24
hours [5] 12/23 17/12 25/11 38/12 41/25
house [2] 42/19 47/21
housing [1] 29/20
how [16] 12/1 13/24 14/11 15/19 17/3 18/25 20/21 22/7 32/4 32/18 32/23 33/6 35/21 38/3 39/10 53/3 53/24 53/25

**I**
I'll [1] 4/6

I'm [32] 4/6,8/12 8/14 9/17 14/3 15/11 16/23 20/16 18/25 19/22 20/6 20/17 24/22 27/22 28/3 30/6 33/12 33/17 34/19 34/19 37/13 38/10 40/14 41/14 43/13 51/23 53/3 56/3 60/8 65/23 66/12
I've [2] 10/10 37/11
identical [2] 31/2 59/11
identified [8] 10/4 29/17 46/9 46/18 46/19 61/7 61/11 61/24
image [5] 10/17 10/20 25/20 25/23 26/24
images [6] 11/5 11/6 11/9 11/12 49/4 58/4
immediately [2] 15/14 50/17
impanel [1] 64/24
impartial [1] 66/17
importance [4] 12/19 53/6 53/11 53/14
important [5] 9/20 12/7 15/19 41/5 42/11
importantly [1] 12/4
impossible [1] 8/4
inability [1] 44/1
inaccurate [3] 28/16 28/20 40/15
inadvertence [1] 62/12
inadvertently [1] 62/9
inception [1] 40/2
include [3] 7/7 32/1 49/25
included [7] 7/21 8/1 29/5 29/5 47/9 49/8 58/4
including [12] 15/13 16/22 22/20 24/7 24/22 40/9 50/1 50/4 50/5 50/16 62/23 63/4
income [1] 13/12
incorrect [2] 22/9 23/4
increase [1] 13/9
inculpatory [1] 13/8
indeed [1] 18/4
indicate [2] 56/24 61/7
indicated [3] 57/5 59/20 61/10
indicating [1] 66/9
Indictment [3] 10/1 42/14 52/18
individuals [1] 11/20
information [47] 3/19 4/17 5/1 5/10 5/12 5/14 5/22 6/10 6/21 7/8 8/22 8/25 9/8 10/3 10/5 11/15 14/1 14/6 14/9 14/16 14/20 15/13 17/13 17/13 17/14 17/23 17/25 18/5 18/14 19/7 19/15 25/10 26/21 34/21 49/16 51/18 51/18 52/3 52/19 52/21 52/23 53/15 53/20 55/4 55/10 55/13 63/4
informed [2] 12/3 12/4
informs [2] 9/5 41/12
initial [3] 27/25 43/10 61/12
input [1] 28/16
inquire [1] 53/23
inquiry [3] 6/12 36/11 58/3
instruction [1] 33/25
integral [1] 15/17
intelligently [1] 9/9
intent [1] 52/25
intention [1] 37/5
intentional [1] 64/12
interest [1] 8/5
interim [3] 15/23 28/14 64/19
interjected [1] 16/4 39/5
interpose [1] 41/14
interrupt [1] 60/8
interview [9] 9/24 11/16 11/21 12/8 12/23 20/19 56/22 57/2 57/4
interviews [1] 57/11
introduced [3] 31/8 31/17 32/10
investigate [1] 26/11
investigation [3] 10/15 25/18 42/14
investigative [2] 57/19 58/2
invite [1] 4/6
iPhone [1] 4/22
irrelevant [1] 32/20
IRS [6] 8/20 10/16 25/19 26/25 44/13 44/21
IRS-CI [2] 10/16 25/19
IRS-CI's [2] 26/25
is [167]
isn't [4] 28/17 30/7 39/15 40/12
isolated [1] 20/2
issue [16] 4/11 9/16 14/15 14/23 16/4 36/3 45/18 45/22 47/3 47/5 47/15 51/15 52/11

**issue... [3]** 53/17 62/5 65/17
**issued [4]** 10/1 14/18 17/5 49/12
**issues [5]** 3/20 20/17 22/4 42/1 43/18
**it [181]**
**it's [32]** 7/13 8/1 8/22 10/9 15/18 17/11 17/17 19/23 22/6 23/21 23/25 27/6 28/10 28/17 29/19 30/8 30/10 32/24 33/5 35/1 37/5 39/6 40/10 40/13 41/15 47/17 52/10 52/10 55/19 55/20 59/23 65/24
**Item [1]** 3/3
**itemized [1]** 30/23
**items [4]** 15/7 38/14 38/15 38/15
**its [18]** 12/13 12/15 13/11 13/16 17/6 17/6 25/13 40/16 40/18 44/7 47/16 51/17 51/20 54/1 59/8 61/9 62/25 64/13
**itself [1]** 59/2

## J

**JAMES [1]** 1/8
**January [4]** 14/18 49/23 51/21 52/2
**January 2011 [1]** 49/23
**January 2021 [1]** 51/21
**January 25th [1]** 14/18
**Jencks [1]** 20/18
**JOHN [6]** 1/11 2/14 3/4 32/22 35/8 39/20
**Johnson [16]** 15/22 16/23 29/10 29/22 29/24 30/19 31/4 31/20 32/8 35/20 36/6 38/15 38/22 53/13 59/11 59/21
**Johnson's [1]** 30/22
**JUDGE [1]** 1/8
**judged [1]** 47/1
**judgment [2]** 47/4 47/5
**Judicial [1]** 67/11
**Julian [1]** 10/7
**July [4]** 11/16 12/6 56/22 58/13
**July 25 [1]** 56/22
**July 25th [2]** 11/16 12/6
**July 28 [1]** 58/13
**June [1]** 35/12
**jurors [1]** 66/6
**jury [12]** 3/2 16/14 19/10 22/6 33/25 39/25 52/12 60/19 64/1 64/5 64/24 66/17
**just [13]** 5/24 7/22 27/12 34/23 35/12 37/7 39/7 41/15 41/25 45/6 47/17 54/13 58/22
**Justice [1]** 11/8
**JVS [2]** 1/11 3/3

## K

**Karlous [7]** 9/24 11/21 12/22 16/22 49/11 56/24 57/16
**kept [2]** 32/19 35/21
**Kim [1]** 11/22
**knew [6]** 42/24 42/24 45/18 53/11 55/25 56/1
**know [19]** 15/10 18/16 20/20 26/12 27/22 34/9 34/16 34/18 35/5 36/18 37/12 43/14 44/1 51/11 52/14 54/20 57/23 58/6 61/15
**knowing [1]** 37/13
**knowledge [2]** 40/17 40/18
**known [4]** 14/21 39/14 39/15 54/2

## L

**L.A [1]** 7/19
**lab [1]** 11/8
**lack [2]** 38/15 55/15
**large [1]** 66/14
**largely [1]** 5/5
**last [22]** 3/14 6/4 8/13 8/20 9/18 16/20 17/5 17/11 18/11 22/3 22/25 25/11 26/19 38/11 41/25 44/24 52/16 52/21 56/8 56/11 58/3 60/5
**lasting [1]** 12/2
**Lastly [1]** 53/16
**late [1]** 8/12
**later [4]** 8/8 8/14 12/7 29/11
**latest [1]** 17/1
**law [7]** 2/15 38/21 41/11 41/13 41/22 46/2 50/1
**lawyers [1]** 32/19
**learned [1]** 56/23

**least [8]** 15/23 18/23 33/1 38/7 59/4 61/19 61/24 65/10
**leave [8]** 8/15 51/1 64/24
**legal [5]** 41/24 42/1 43/11 43/18 43/20
**less [2]** 30/16 38/12
**lesser [1]** 61/2
**let [23]** 23/17 28/11 34/9 35/5 41/12 45/5 46/5 53/16 58/1
**let's [1]** 6/24
**letter [4]** 25/17 50/7 50/12 66/9
**level [1]** 35/23
**license [1]** 4/12
**lied [1]** 29/22
**light [4]** 14/11 46/6 57/25 64/7
**like [17]** 3/18 5/3 9/10 22/4 22/21 26/5 28/3 29/25 36/7 41/18 47/8 47/17 47/19 48/25 65/10 65/13 65/16
**likely [2]** 52/24 61/8
**limited [1]** 17/10
**lines [4]** 4/7 4/14 7/2 7/15
**list [2]** 6/8 45/13
**listed [2]** 5/23 7/3
**listing [2]** 15/22 15/23
**literally [1]** 17/2
**litigation [1]** 5/25
**little [3]** 16/15 18/19 32/15
**lived [3]** 63/18 63/23 63/25
**living [6]** 29/13 29/17 29/18 29/20 30/23 31/4
**LLP [16]** 10/14 10/16 10/18 10/21 10/21 10/23 10/25 12/1 25/19 25/21 25/24 25/24 26/1 26/3 26/21 26/24
**LLP's [1]** 50/15
**loan [2]** 29/10 31/3
**located [1]** 54/14
**location [1]** 10/4
**lodge [2]** 36/9 37/2
**long [10]** 20/21 32/12 37/12 38/16 39/18 39/25 42/11
**long-run [1]** 42/11
**look [21]** 5/21 8/19 12/20 19/12 21/7 29/7 29/19 31/7 32/21 36/25 38/7 40/20 48/1 49/14 53/9 58/15 58/16 58/18 58/23 65/12 65/24
**looked [1]** 6/8
**looking [1]** 47/1
**looks [1]** 56/17
**Los [1]** 2/8
**loss [1]** 59/21
**losses [1]** 21/10
**lot [6]** 8/22 8/22 17/12 17/13 17/14 35/20

## M

**machine [4]** 7/21 7/25 8/3 8/10
**made [33]** 4/15 4/17 4/19 11/2 12/16 12/17 13/6 13/15 14/5 14/8 15/3 17/2 17/20 18/14 20/9 20/12 22/3 22/18 24/13 27/25 38/4 45/7 46/8 51/5 51/7 51/10 51/12 54/24 55/5 55/6 55/17 56/9 57/14
**mail [2]** 31/10 51/10
**mailed [1]** 28/15
**mails [1]** 30/14
**maintained [1]** 12/2
**major [2]** 2/6 42/13
**make [14]** 16/12 23/10 23/14 23/16 25/17 36/10 37/8 37/14 42/23 44/9 46/2 53/16 58/20 63/16
**makes [2]** 18/3 23/3
**making [5]** 36/12 42/15 44/5 44/18 58/3
**malfunction [1]** 8/19
**managed [1]** 19/10 25/22
**manner [1]** 14/20
**many [4]** 17/19 19/6 19/6 23/19
**March [5]** 6/2 9/21 35/7 49/23 50/14
**March 25 [2]** 49/23 50/14
**March 25th [2]** 6/2 9/21
**Marchino [2]** 30/14 30/17
**mark [2]** 61/3 61/5
**Maryland [1]** 61/25
**matched [1]** 32/6
**matches [1]** 31/12

**material [22]** -5/8 5/20 6/11 6/15 16/16 27/2 59/14 61/8 61/8 62/24 63/11 63/22 63/24 64/7
**materiality [2]** 17/21 59/3
**materials [15]** 27/21 46/8 46/9 46/18 49/22 50/9 50/13 59/16 59/18 61/11 61/13 61/13 61/24 62/1 63/20
**math [1]** 24/20
**matter [5]** 31/11 55/7 55/14 64/15 67/9
**matters [1]** 5/13
**may [18]** 4/12 5/12 10/2 10/8 10/14 11/3 16/23 25/17 26/22 26/8 43/18 56/6 56/16 58/6 61/1 61/22 62/17 64/11
**May 24th [3]** 10/8 10/14 11/3
**May 4th [1]** 25/17
**maybe [3]** 16/20 35/24 38/12
**mayor [1]** 47/24
**me [16]** 3/25 9/3 9/5 23/17 23/21 28/11 37/1 37/8 41/12 46/5 53/16 58/1 61/7 61/10 61/16 65/2
**mean [4]** 13/23 20/14 42/23 60/5
**meaning [2]** 24/23 27/14
**means [1]** 59/17
**meant [1]** 60/7
**Meanwhile [1]** 13/25
**measured [1]** 65/25
**mechanism [3]** 25/9 25/12 38/2
**medical [1]** 29/18
**meet [1]** 17/24
**meeting [1]** 4/3
**members [2]** 12/3 57/18
**memo [1]** 56/25
**memorandum [1]** 11/25
**memorialize [2]** 3/21 5/3
**mention [1]** 38/20
**mentioned [1]** 11/5 37/24 40/9
**merits [2]** 44/3 66/12
**methods [2]** 60/18 60/20
**MICHAEL [4]** 1/11 2/14 3/4 3/11
**Michelle [1]** 32/11
**Microsoft [1]** 50/1
**middle [1]** 15/16
**might [3]** 53/1 63/13 63/14
**million [3]** 21/19 34/17 50/16
**mind [2]** 15/2 28/17
**minimum [3]** 16/21 28/17 28/19
**minor [1]** 55/19
**minute [2]** 39/11 48/4
**Miramar [1]** 2/16
**misappropriated [1]** 60/24
**misconduct [3]** 64/9 64/10 64/12
**misfunction [1]** 8/21
**misses [1]** 27/12
**missing [5]** 15/12 20/10 25/1 25/9 34/9 34/14
**mistaken [1]** 30/11
**mistrial [3]** 20/9 65/8 65/18
**MixinIT [2]** 10/19 25/22
**MJ [1]** 49/6
**modifications [1]** 6/20
**modified [1]** 5/3
**moment [1]** 4/9
**money [11]** 13/9 13/10 21/18 21/19 22/8 28/15 29/3 33/5 33/6 33/9 34/2
**month [3]** 12/7 12/8 54/5
**months [6]** 29/11 29/19 33/4 33/7 33/8 55/18
**moot [1]** 65/4
**more [11]** 23/1 23/19 30/7 34/17 36/20 42/11 42/11 47/23 50/8 51/21 57/2
**morning [10]** 3/5 3/10 3/11 3/13 8/7 57/15 58/13 61/7 61/18 65/10
**most [6]** 11/20 12/4 17/25 18/2 29/8 63/2
**motion [10]** 9/6 10/6 12/8 19/17 19/17 20/25 25/3 41/16 56/3 65/8
**motions [3]** 19/21 20/9 65/4
**motive [1]** 52/25
**move [1]** 65/20
**moved [2]** 14/14 15/6
**moves [1]** 29/20
**moving [1]** 56/11

# M

**Mr [6]** 6/21 41/16 41/19 53/25 60/18 63/11
**Mr. [73]**
**Mr. Andre [6]** 11/2 11/13 11/23 26/9 53/24 54/25
**Mr. Andre's [1]** 25/17
**Mr. Arden [1]** 16/23
**Mr. Avenatti [10]** 5/13 6/18 9/10 27/25 37/5 56/21 59/6 60/12 60/23 63/3
**Mr. Avenatti's [2]** 3/14 9/6
**Mr. Barela [7]** 16/22 29/24 31/5 32/22 33/4 33/9 53/13
**Mr. Drum [9]** 21/8 22/12 23/1 28/23 28/25 31/20 53/12 55/21 63/1
**Mr. Drum's [1]** 56/17
**Mr. Fitzgerald [8]** 41/1 41/21 49/1 49/2 54/6 54/7 55/1 61/10
**Mr. Johnson [8]** 16/23 29/10 29/22 29/24 31/4 31/20 35/20 53/13
**Mr. Johnson's [1]** 30/22
**Mr. Sagel [5]** 11/22 14/8 21/3 51/22 54/25
**Mr. Steward [2]** 3/12 10/2
**Mr. Tashchyan [2]** 7/20 7/24
**Mr. Varani [7]** 4/19 7/17 8/1 11/6 11/9 50/23 51/12
**Mr. Varani's [1]** 7/22 8/10
**Mr. Wyman [1]** 54/25
**Ms [11]** 9/22 11/17 12/23 16/22 31/10 31/13 36/17 53/14 57/3 57/5 58/8
**Ms. [10]** 3/12 12/3 21/19 21/24 29/25 30/3 30/12 35/16 52/7 56/22
**Ms. Cummings-Cefali [1]** 3/12
**Ms. Gardner [4]** 29/25 30/3 30/12 52/7
**Ms. Phan [1]** 21/24
**Ms. Phan's [1]** 21/19
**Ms. Regnier [3]** 12/3 35/16 56/22
**much [2]** 14/11 32/23
**multiple [2]** 28/10 37/24
**must [4]** 62/5 62/8 62/19 62/20
**my [18]** 4/9 6/7 6/14 15/19 24/20 27/15 33/15 37/5 39/2 42/12 45/8 47/20 53/1 53/4 53/5 56/13 64/9 65/13
**myriad [1]** 13/23

# N

**namely [2]** 19/11 42/14
**nature [4]** 7/7 13/11 13/16 20/18
**NAV [1]** 50/1
**necessary [7]** 37/3 39/12 39/13 39/23 40/5 40/12 40/13
**need [10]** 4/12 9/7 18/20 25/10 37/14 39/10 40/6 41/4 48/1 65/24
**needed [5]** 15/3 36/11 40/3 44/16 49/18
**needless [1]** 8/21
**needs [6]** 8/8 39/20 39/22 40/4 44/6 45/20
**net [2]** 59/6 60/14
**never [17]** 13/8 13/9 13/15 19/11 19/14 19/14 28/12 28/17 33/21 34/18 52/13 54/23 54/24 55/1 55/5 55/6 61/15
**new [11]** 5/18 29/18 29/20 31/3 32/8 39/15 46/5 46/6 63/23 64/14 65/19
**newly [4]** 46/9 63/20 63/22 64/7
**next [1]** 58/7
**NICOLA [1]** 2/3
**night [12]** 3/14 6/4 8/13 8/20 16/20 18/12 22/3 35/1 38/11 44/24 52/16 52/21
**nine [2]** 33/4 33/6
**Ninth [4]** 17/16 17/17 17/20 18/4
**no [53]** 3/16 5/6 5/21 8/9 11/15 14/9 14/9 15/4 17/2 18/9 19/4 21/2 21/25 24/15 29/12 29/15 29/23 30/2 30/9 30/11 32/11 33/17 35/14 37/25 38/13 39/24 43/14 45/11 49/3 50/21 50/24 51/3 53/25 53/25 54/5 54/6 56/5 57/14 58/9 58/16 59/16 59/22 59/25 60/13 60/22 62/14 62/15 64/9 64/10 64/11 66/2 66/7
**non [1]** 23/14
**non-winning [1]** 23/14
**noncompliance [1]** 14/25

# North

**North [1]** 2/7
**not [28]**
**noted [3]** 51/16 52/4 52/7
**notes [2]** 20/19 56/23
**nothing [11]** 12/20 17/1 17/2 30/19 30/20 31/17 31/18 32/2 36/14 53/8 53/9
**notice [4]** 53/8 53/14 56/20 57/12
**notification [1]** 54/7
**November [2]** 12/21 57/3
**November 19 [2]** 12/21 57/3
**now [24]** 5/4 8/23 9/1 16/18 17/22 19/8 19/19 28/23 33/2 33/24 33/25 36/8 37/2 39/7 43/13 43/14 43/23 43/24 44/23 45/13 45/22 52/7 52/11 52/13 54/20
**number [14]** 4/8 7/3 7/15 9/21 16/19 20/9 20/10 34/6 34/17 49/15 60/24 60/25 62/21 63/3
**numbers [4]** 7/9 20/21 33/10 38/20

# O

**objection [1]** 41/15
**obligation [8]** 12/13 23/22 26/10 27/2 27/3 27/8 27/16 51/17
**obligations [2]** 12/15 51/20
**obtained [3]** 10/22 25/25 34/2
**obviously [9]** 9/15 36/6 37/11 37/21 42/24 43/23 45/5 53/11 64/3
**occasion [1]** 51/10
**occasions [4]** 23/18 23/19 37/16 37/24
**occur [1]** 61/16
**occurred [3]** 20/3 58/6 62/20
**October [8]** 42/6 44/20 44/25 51/8 64/15 64/22 64/22 64/23
**October 12 [1]** 64/15
**October 12th [1]** 64/23
**October 17th [1]** 64/22
**October 2019 [1]** 44/20
**October 24th [1]** 64/22
**odd [1]** 54/13
**odyssey [1]** 9/18
**offer [2]** 30/3 44/12
**offered [2]** 59/21 59/25
**office [6]** 4/4 6/6 7/19 8/20 26/25 44/23
**offices [3]** 2/15 7/19 44/21
**Oh [1]** 46/15
**Okay [4]** 8/17 10/12 57/25 66/3
**Olson [3]** 18/3 20/6 24/4
**omissions [1]** 34/3
**once [8]** 4/5 10/25 12/3 26/3 26/13 42/21 45/7 45/12
**one [38]** 3/20 9/21 14/7 14/21 15/6 16/9 20/2 20/3 23/7 27/14 30/20 33/1 34/4 34/23 36/3 37/8 37/25 38/16 38/25 39/6 39/9 39/11 42/5 42/23 42/24 44/23 52/1 52/1 52/12 53/13 54/22 54/23 55/1 56/17 58/9 58/22 62/4 66/9
**one-time [1]** 12/12
**only [14]** 5/15 12/9 13/7 13/10 13/12 16/12 31/2 31/5 31/7 32/16 32/25 37/18 38/3 59/17
**open [1]** 45/14
**opening [6]** 39/9 39/12 53/1 53/4 62/23 63/12
**opinions [1]** 19/9
**opportunity [9]** 26/24 36/9 39/19 40/3 62/22 63/16 65/1 65/10 65/20
**opposed [2]** 41/16 41/25
**Orange [2]** 10/19 25/22
**order [15]** 5/3 5/6 6/21 12/12 14/14 14/15 14/18 14/19 14/24 15/3 15/5 15/8 44/8 44/8 51/21
**ordered [2]** 44/11 52/2
**other [37]** 4/11 5/13 5/16 13/17 18/4 20/17 22/4 23/12 23/14 32/16 32/18 33/1 33/3 33/7 36/23 37/8 38/1 40/2 41/24 42/10 44/5 47/25 50/2 52/19 52/25 56/4 56/16 57/18 59/13 59/13 59/24 60/3 60/11 61/22 62/6
**others [2]** 30/7 21/23 45/11
**otherwise [4]** 20/15 55/14 58/25 64/12
**ought [1]** 64/16
**our [25]** 4/3 10/5 10/9 12/8 15/14 15/15 16/19

18/11 23/25 24/5 24/11 24/21 27/7 34/8 34/21 40/22 38/01 39/17 40/5 44/23 50/25 51/24 53/24 64/1 64/17
**out [27]** 6/1 17/3 23/9 26/17 30/8 31/6 31/11 38/17 42/10 42/19 42/20 47/6 51/2 51/17 53/22 54/13 56/18 58/12 58/14 59/4 59/9 59/18 60/14 61/7 64/13 65/2 65/22
**outdated [1]** 28/20 30/10
**outlined [3]** 17/8 18/11 18/14
**outlines [1]** 63/3
**outside [1]** 45/4
**over [17]** 5/15 7/17 7/22 8/1 9/18 11/3 12/23 20/7 24/19 24/20 27/13 35/1 36/8 37/1 37/22 45/12 57/24
**overall [4]** 6/8 60/17 62/22 64/20
**oversight [1]** 20/3
**owed [2]** 13/9 13/11 15/18
**own [1]** 38/2

# P

**p.m [2]** 4/16 7/16
**packet [1]** 10/11
**page [11]** 4/7 9/1 26/18 49/21 50/7 50/12 57/15 57/24 58/13 63/2 67/10
**page 10 [1]** 50/12
**page 40 [1]** 57/15
**page 41 [1]** 57/24
**page 5 [1]** 63/2
**page 7 [1]** 49/21
**page 9 [1]** 50/7
**page 93 [1]** 58/13
**paid [3]** 21/16 30/14 35/17
**papers [1]** 14/4
**paragraph [11]** 5/8 5/10 5/11 5/24 6/1 13/2 26/19 49/21 50/8 57/4 57/5
**paragraphs [1]** 49/21
**parallels [1]** 17/19
**parameters [1]** 45/3
**paraphrasing [1]** 15/11
**part [17]** 15/18 21/10 21/17 24/2 27/14 41/24 42/10 42/13 42/22 43/22 60/19 61/12 62/14 62/15 64/9 64/10 64/12
**partially [2]** 21/5 21/13
**particular [5]** 10/9 49/15 56/25 60/18 63/1
**particularly [2]** 56/18 59/4
**parties [5]** 4/20 5/2 9/2 44/23 65/1
**parties' [1]** 66/16
**parts [1]** 36/23
**party [1]** 56/11
**passage [1]** 14/13
**passed [6]** 27/13 46/10 46/23 47/13 61/14 61/19
**past [3]** 24/4 46/19 64/3
**Patrick [1]** 3/7
**Pause [1]** 37/10
**pay [2]** 35/21 35/22
**paying [2]** 29/22 31/3
**payment [5]** 50/16 55/17 55/20 55/20 59/6
**payments [7]** 29/10 29/10 29/13 29/13 30/22 31/3 55/17
**pending [3]** 10/6 53/17 65/4
**penny [1]** 31/13
**people [1]** 22/8
**percentage [1]** 60/14
**Perche [1]** 33/4
**perfect [1]** 43/13
**perhaps [1]** 30/10
**period [4]** 20/7 22/2 52/20 64/5
**permission [2]** 5/11 5/17
**perplexed [1]** 53/3
**personal [1]** 66/9
**personally [1]** 58/1
**perspective [4]** 18/22 22/6 22/9 42/12
**pertinent [1]** 25/10
**Phan [5]** 21/24 32/12 38/22 60/3 60/13
**Phan's [1]** 21/19
**photographs [1]** 4/22
**pieces [2]** 28/1 59/10
**place [1]** 64/16

**P**

placed [1] 20/19
Plaintiff [1] 1/10 2/2
plan [2] 66/7 66/8
platter [1] 23/24
please [4] 28/7 34/9 42/3 48/23
plus [1] 9/19
podium [1] 9/13
point [14] 3/20 16/12 16/15 18/15 22/15 23/15 26/17 35/14 37/25 45/15 53/8 53/16 63/15 65/11
pointed [2] 56/21 58/12
points [2] 6/19 38/10 64/8
portion [1] 64/17
position [4] 5/7 28/1 33/15 39/3 39/11 40/23
possessing [1] 27/9
possession [20] 11/7 23/25 24/5 24/11 24/21 24/23 24/25 27/7 27/8 34/8 34/22 34/25 37/22 39/17 40/10 43/12 43/16 43/17 51/3 53/20
possible [1] 19/5
post [3] 17/22 42/14 55/16
post-conviction [1] 17/22
post-Indictment [1] 42/14
post-settlement [1] 55/16
potential [1] 50/4
potentially [2] 22/11 27/20
prefer [1] 20/12
prejudice [9] 18/11 18/17 31/18 36/13 36/22 55/10 62/19 62/20 65/9
prejudiced [1] 62/25
prejudicial [1] 18/25
preparation [2] 55/9 63/6
prepare [1] 64/7
prepared [3] 40/14 49/10 63/22
preparing [1] 20/4
present [4] 3/2 3/12 11/21 24/8
presentation [1] 9/7 22/13 62/23
presentations [1] 61/6
presented [2] 32/7 43/5
PRESIDING [1] 1/8
presumption [1] 65/17
previously [1] 54/10
Price [3] 18/4 20/6 24/3
prima [1] 23/13
print [1] 38/17
printed [1] 31/6
printout [1] 35/3
printouts [3] 36/6 52/15 52/22
prior [1] 54/25
privilege [30] 3/8 3/24 4/1 4/21 4/24 5/14 9/4 11/11 25/13 27/11 27/21 41/5 41/19 42/4 42/8 42/13 43/25 44/6 44/9 46/21 47/11 53/21 53/22 54/2 54/8 54/12 54/13 55/3 55/7 62/16
privileged [1] 47/12
PRO [1] 2/14
probably [4] 4/17 9/23 21/15 64/25
problem [2] 20/22 63/10
procedures [1] 26/20
proceed [6] 18/20 19/3 19/5 28/6 64/15 64/23
proceeded [1] 16/18
proceeding [1] 5/17
proceedings [5] 1/15 37/10 48/6 66/20 67/9
process [10] 7/12 7/23 8/18 14/14 22/20 24/11 35/4 38/19 61/12 62/18
process of [1] 8/18
processes [1] 43/9
produce [15] 10/24 12/13 13/6 13/15 14/16 14/20 23/22 26/2 26/13 27/2 27/3 46/23 53/9 54/9 54/14
produced [41] 5/1 5/2 5/9 6/16 7/5 7/6 7/7 11/10 12/20 13/5 14/2 14/8 14/12 15/3 15/4 15/5 15/7 15/10 17/4 17/7 17/8 18/8 18/10 19/7 24/14 34/16 45/15 45/16 46/1 47/9 52/2 54/1 54/4 54/10 54/19 55/11 62/7 62/11 63/22 64/7
production [5] 8/12 16/25 61/23 62/1 63/19
programs [2] 49/22 50/13
prong [1] 36/23
proper [1] 36/10 65/19

property [1] 34/2
propose [1] 65/14
proposed [1] 50/4
prosecution [34] 3/7 3/22 6/6 6/16 11/20 24/8 24/14 24/17 24/24 24/25 25/16 27/13 27/16 40/16 42/9 42/24 45/24 45/25 46/11 46/23 47/13 49/19 53/18 54/9 54/15 54/18 54/20 55/2 59/8 59/16 59/23 61/15 62/15 64/10
prosecutors [1] 47/16
Protection [1] 14/14
Protective [3] 5/3 5/5 6/20
protocols [5] 11/1 26/4 26/14 26/15 45/5
prove [3] 34/1 34/1 60/23
provide [13] 3/9 4/1 4/24 5/12 13/15 22/11 27/9 29/23 32/5 34/15 36/7 40/3 51/19
provided [20] 5/14 9/3 10/10 12/10 25/7 33/9 34/8 34/10 34/22 35/4 35/9 35/12 36/15 39/18 50/23 52/15 52/23 55/22 59/9 60/14
provides [3] 26/16 49/12 57/15
providing [1] 26/23
proving [2] 5/18 59/21
provision [1] 5/18
punishment [2] 14/22 14/24
pure [2] 21/11 44/4
purpose [2] 11/24 55/3
purposeful [1] 60/5
purposes [2] 42/25 43/11
pursuant [5] 5/2 18/8 18/10 44/6 67/6
put [18] 6/13 6/22 14/4 16/9 19/10 22/6 24/16 24/19 28/9 33/24 52/12 53/24 57/16 60/24 61/3 61/4 65/2 66/13
putting [3] 16/14 42/17 51/15
puzzled [1] 54/11

**Q**

qualifies [1] 17/23
question [22] 8/9 15/1 16/15 17/25 18/1 18/9 18/19 22/11 22/12 22/14 22/17 25/1 30/11 49/3 50/21 50/24 51/25 53/23 57/16 60/20 61/3 61/5 61/16 61/20 63/5 63/8
questioning [4] 55/12 57/13 58/7 60/11
questions [4] 11/25 21/1 52/5 56/4
quibbling [1] 47/15
quick [1] 22/24
QuickBooks [27] 4/8 13/4 15/3 17/14 20/13 20/17 27/21 30/13 30/17 34/11 34/11 35/6 35/16 35/17 45/15 46/6 47/8 50/2 51/7 52/24 53/7 54/1 54/4 57/7 58/17 58/18 61/11
quickly [1] 37/8
quote [7] 12/6 29/8 43/21 57/5 57/6 57/6 62/10
quote/unquote [1] 29/8 43/21

**R**

rather [2] 8/4 14/10
Re [1] 3/15
reach [1] 53/22
reached [1] 3/23
ready [2] 43/8 54/8
Reagan [1] 2/10
really [6] 19/20 36/22 42/5 42/10 46/2 59/14
reason [8] 8/3 27/6 27/10 31/14 32/5 33/24 36/21 39/25
reasonable [2] 43/7 47/16
reasons [8] 13/18 13/23 19/6 19/16 20/24 32/12 56/2 64/14
rebuttal [1] 37/5
recall [3] 18/22 20/9 57/20
received [3] 3/14 54/7 61/17
Receiver [4] 10/16 10/22 25/19 25/25
recent [1] 63/2
recess [3] 39/23 40/3 40/5 48/5
recognize [1] 15/19
recommended [1] 33/25
record [9] 6/23 12/24 30/3 32/6 37/14 40/8 40/14 41/4 44/6
records [13] 29/3 33/10 33/20 35/17 35/24 36/1 49/22 49/24 50/3 50/9 50/11 50/13 60/17

recovered [1] 60/15
reduction [1] 14/23
reference [1] 4/8
referenced [3] 15/15 32/17 53/1
references [4] 28/9 32/18 33/1 40/22
referencing [1] 38/5
refers [2] 4/16 29/9
reflects [2] 13/2 37/20
regard [4] 4/20 15/15 24/21 40/20
regarding [1] 11/25
regards [9] 22/1 28/8 31/5 35/19 36/6 37/16 38/9 38/25 40/1
Regnier [12] 11/17 12/3 12/23 16/22 31/13 35/16 36/17 54/6 54/6 54/22 57/3 57/5 58/12
Regnier's [2] 9/22 31/10
regular [1] 55/2
regulations [1] 67/11
rehash [1] 9/17
relate [2] 4/10 4/11
related [4] 7/2 38/18 55/9 59/13
relates [9] 7/4 8/14 30/21 31/20 31/20 33/6 35/15 50/19 56/24
relating [15] 5/13 5/22 6/21 7/8 8/13 15/8 49/23 50/3 50/10 50/14 50/18 52/7 53/17 59/24 59/25
relativity [1] 43/5
relevance [2] 7/10 47/16
relevant [24] 6/12 10/23 10/24 14/22 16/16 17/25 19/24 26/1 26/2 26/13 26/22 27/12 27/20 36/10 38/24 47/2 47/13 51/9 52/3 52/6 54/17 60/13 61/8 61/14
reliable [1] 28/22
relied [1] 28/18
relief [3] 19/17 21/22 65/20
relieve [2] 51/16 51/20
rely [4] 42/25 43/1 53/12 58/22
relying [2] 35/8 35/9
remarkable [1] 14/11
remedies [2] 40/7 40/21
remedy [2] 63/8 63/9
rep [1] 44/13
repeat [2] 63/7 64/9
repeated [4] 12/10 20/14 20/15 20/22
repeatedly [3] 14/5 32/17 55/24
reply [3] 10/6 10/9 53/24
report [10] 3/15 3/21 7/3 15/14 15/15 17/9 18/11 57/3 57/6 63/2
reported [1] 67/8
reporter [2] 17/17 67/16
REPORTER'S [1] 1/15
reports [10] 8/13 8/15 8/23 8/24 8/25 22/25 29/7 33/20 52/19 57/8 59/10
represent [1] 53/25
representation [9] 11/2 11/13 14/8 37/18 37/19 50/15 54/24 55/5 64/1
representations [6] 12/17 14/5 27/24 34/3 56/9 61/17
represented [1] 37/21
request [7] 34/7 37/17 43/7 45/14 45/17 47/7 65/18
requested [4] 9/3 10/3 19/17 45/1
requests [2] 10/8 45/7
require [2] 38/23 63/18
required [4] 14/16 18/7 53/3 60/23
requirements [3] 20/5 20/6 62/1
requires [2] 50/8 62/1
reserve [1] 8/14
resolve [1] 65/17
respect [8] 20/10 21/23 41/10 60/2 60/12 60/21
respectfully [2] 43/19 44/3
respond [5] 4/6 26/7 39/7 39/8 40/19
responded [2] 10/7 34/7
response [1] 15/8
responsible [4] 42/13 42/17 42/18 45/19
results [1] 60/20
resumed [1] 48/6
retained [1] 10/2
retrial [1] 64/21

# R

**retrospect [2]** 42/20 47/18
**returned [2]** 10/21 25/24
**revenue [1]** 13/12
**review [52]** 3/8 3/22 3/24 4/1 4/21 4/22 4/24
5/14 5/21 9/5 10/25 11/11 17/10 17/12 18/18
18/21 22/24 25/13 26/3 26/14 26/15 26/24
27/11 27/21 27/25 33/18 33/20 38/23 41/5
41/19 42/4 42/13 44/1 44/8 46/20 46/21 47/11
51/11 51/24 52/20 53/21 53/23 54/3 54/8
54/12 54/13 54/16 55/3 55/7 56/12 62/16
62/18
**reviewed [7]** 44/23 45/2 46/7 46/10 46/20
47/10 61/13
**reviewing [1]** 6/4
**right [6]** 22/17 23/6 24/20 28/24 36/19 46/16
**rightfully [3]** 51/16 52/4 52/6
**road [2]** 16/13 39/6
**Roberson [1]** 12/21
**Ronald [2]** 2/10
**room [1]** 6/5
**RPR [1]** 1/19
**rule [6]** 9/5 9/9 10/3 18/8 37/6 41/4
**ruling [1]** 56/13
**run [1]** 42/11

# S

**SACR [2]** 1/11 3/3
**SACR-19-00061-JVS [2]** 1/11 3/3
**SAGEL [9]** 2/9 3/5 9/24 11/22 12/22 14/8 21/3
51/22 54/25
**said [15]** 4/24 7/19 9/10 10/8 10/14 25/3
28/25 30/14 31/21 32/1 34/20 40/15 46/13
47/11 60/4
**same [11]** 11/8 11/12 26/5 26/18 28/14 33/24
44/22 50/17 50/19 52/9 52/10
**sampling [1]** 9/3
**San [1]** 2/16
**Santa [4]** 1/16 1/20 2/11 3/1
**sat [1]** 45/7
**say [17]** 5/24 8/21 18/16 20/1 21/5 21/13
25/10 33/13 37/13 38/6 41/1 45/14 47/4 55/18
60/6 60/7 63/22
**saying [9]** 22/22 28/12 28/17 30/6 33/12
33/17 33/18 34/19 38/1
**says [5]** 24/3 24/3 26/19 31/11 39/3
**scenario [1]** 38/7
**schedule [2]** 65/1 65/14
**scope [1]** 12/14
**screening [1]** 61/12
**screens [1]** 4/22
**screenshots [1]** 4/23
**scrutinize [1]** 35/24
**SE [1]** 2/14
**search [33]** 3/15 5/23 6/1 9/21 10/23 11/1
12/14 24/9 26/1 26/4 26/15 42/15 42/20 43/4
43/13 45/3 45/4 45/9 46/14 46/15 46/22 47/2
47/21 47/23 49/5 49/7 49/16 49/17 50/9 58/10
59/8 59/15 61/12
**searched [1]** 11/9 49/13
**searches [2]** 4/18 44/25
**searching [2]** 47/9 47/21
**seating [1]** 66/17
**second [8]** 4/14 5/1 5/11 36/3 37/8 38/25
56/20 57/9
**section [2]** 2/6 26/18 67/6
**secure [1]** 57/14
**see [8]** 32/3 33/2 33/6 33/21 36/10 36/14
38/23 56/12
**seek [2]** 16/3 51/17
**seemed [1]** 54/12
**seems [3]** 26/9 61/16 63/24
**seen [5]** 25/8 35/19 45/21 45/22 45/24
**SEFFENS [3]** 1/19 67/15 67/16
**seize [2]** 42/19 44/2
**seized [22]** 10/24 26/2 26/13 42/21 42/22
43/2 43/3 43/3 43/21 43/23 43/25 47/10 47/19
47/19 49/3 49/3 49/13 50/21 50/22 50/25
53/20 59/19

**seizure [1]** 43/10
**SERNA [1]** 61/2
**send [4]** 29/14 42/19 66/7 66/8
**sending [2]** 42/8 42/9
**senior [1]** 11/20
**sense [2]** 21/6 21/14
**sensitive [1]** 5/9
**sent [4]** 6/15 7/17 7/22 8/1
**September [7]** 44/20 44/25 47/7 51/8 64/18
64/19 65/3
**September 2 [2]** 64/19 65/3
**September 2019 [1]** 44/20
**September 27 [1]** 64/18
**September of [1]** 47/7
**September/October of [1]** 51/8
**serious [1]** 52/21
**serve [1]** 23/24
**server [21]** 7/7 10/15 10/18 10/21 10/21 10/23
10/25 12/1 12/2 24/9 25/21 25/24 25/24 26/1
26/3 26/22 26/25 37/17 38/11 51/6 51/8
**servers [17]** 10/4 10/20 11/14 12/9 23/20 25/6
25/23 26/19 37/23 38/13 44/7 49/4 49/8 53/19
57/22 58/5 58/9
**service [3]** 3/15 66/8 66/10
**session [2]** 57/15 58/13
**set [9]** 6/1 8/11 11/1 26/4 26/14 44/22 44/24
64/17 64/18
**sets [1]** 8/6
**setting [1]** 56/13
**settled [1]** 31/25
**settlement [11]** 21/18 29/3 29/11 29/19 31/22
33/5 50/16 55/16 55/18 55/19 59/7
**seven [2]** 18/23 29/19
**several [5]** 22/15 22/20 28/11 31/15 36/20
**severed [1]** 64/17
**SHARON [3]** 1/19 67/15 67/16
**she [4]** 9/23 9/23 12/4 31/10
**sheets [2]** 32/19 32/20 32/21 35/4
**shocking [1]** 19/15
**short [8]** 22/1 39/23 40/3 40/5 52/20 63/18
63/23 63/25
**short-lived [3]** 63/18 63/23 63/25
**shortcomings [2]** 62/18 64/11
**shortcut [1]** 50/3
**should [24]** 5/25 10/11 10/13 18/9 19/7 19/18
21/16 27/13 33/8 41/19 43/24 43/25 44/2 46/2
55/12 55/13 55/15 55/20 55/22 63/8 64/21
65/8 65/21 66/18
**shouldn't [1]** 65/22
**show [16]** 8/15 8/15 22/21 23/13 29/7 29/8
31/6 32/2 32/5 36/11 38/18 38/18 40/8 51/23
52/5 61/1
**showed [1]** 39/10
**showing [4]** 20/12 21/15 24/14 60/17
**shown [2]** 28/20 61/1
**shows [4]** 31/18 31/19 51/23 59/14
**side [4]** 41/5 41/20 42/13 47/25
**significance [3]** 57/2 57/12 58/11
**significant [5]** 55/20 59/23 63/18 66/13
**similar [3]** 44/24 47/23 58/7
**similarly [2]** 32/11 59/22
**simply [1]** 57/20
**since [3]** 10/22 25/25 34/11
**single [1]** 57/20
**sins [1]** 27/14
**Sir [2]** 23/21 56/8
**sit [5]** 23/23 34/16 44/13 57/17 57/20
**sitting [1]** 37/13
**six [6]** 7/13 7/17 10/17 16/20 25/20 45/10
**skipping [1]** 22/20
**skips [1]** 24/4
**small [3]** 3/20 46/12 47/23
**so [35]** 6/22 7/8 12/9 16/14 17/3 17/12 20/12
21/17 21/21 23/1 23/17 26/7 29/25 32/4 32/20
32/24 32/25 33/5 33/7 33/15 35/23 36/9 36/11
37/12 39/14 39/15 39/18 42/17 44/20 45/7
45/10 45/18 50/21 63/6 65/12
**software [1]** 4/13 6/11 8/24
**solve [1]** 63/10

**some [23]** 7/10 19/3 21/23 22/1 23/12 28/3
28/4 28/19 29/3 33/14 38/23 42/15 45/11
54/6 54/12 55/12 55/19 56/21 61/19 62/17
65/12 65/24
**something [15]** 14/10 25/1 25/3 25/9 34/9
34/13 41/2 43/16 43/17 43/21 43/22 45/4 47/1
63/13 63/14
**sometime [1]** 14/8
**sometimes [1]** 47/3
**sorry [1]** 60/8
**sought [1]** 40/21
**sound [1]** 41/18
**sounds [1]** 26/5
**SOUTHERN [1]** 1/6
**speaking [2]** 20/15 20/16
**speaks [1]** 19/19
**special [9]** 9/23 11/21 11/21 12/21 12/22
16/22 38/11 49/11 56/24
**specialist [1]** 44/22
**specific [7]** 7/11 25/2 25/3 28/1 28/2 28/3
38/17 38/24 45/16 56/6
**specifically [5]** 10/4 12/12 28/25 38/9 52/1
**specifics [2]** 28/4 28/5
**spend [1]** 19/22
**spring [2]** 2/7 49/11
**staff [1]** 44/15
**standard [1]** 17/21 17/22 17/23 17/24
**stands [1]** 18/20
**start [6]** 21/14 28/11 31/1 41/12 48/25 64/25
**started [1]** 17/6
**starts [1]** 24/7
**stated [1]** 6/21
**statement [10]** 12/17 25/17 26/8 38/4 39/12
40/17 53/1 53/5 62/23 63/12
**statements [7]** 15/23 15/24 15/25 32/3 34/3
39/9 41/17
**states [15]** 1/4 1/9 1/19 2/3 2/4 2/6 2/7 2/10
3/4 3/6 3/9 6/5 12/12 67/7 67/11
**status [8]** 3/14 3/21 7/2 15/14 15/15 17/9
64/17 64/19
**stenographically [1]** 67/8
**steps [1]** 22/20
**STEWARD [4]** 2/15 2/15 3/12 10/2
**still [11]** 7/12 8/8 13/4 18/16 29/8 38/2 39/18
39/19 43/15 52/6 64/3
**stored [4]** 10/18 10/19 25/21 25/22
**straight [1]** 60/14
**strategy [4]** 18/6 18/7 18/7 63/21
**Street [3]** 1/20 2/7 2/11
**stricken [1]** 59/3
**strictly [1]** 20/16
**strong [2]** 54/21 65/17
**struck [1]** 18/24
**stuff [1]** 32/8
**subject [4]** 28/19 46/9 49/24 50/5
**submit [5]** 13/14 43/19 52/10 55/6 65/11
**subpoena [2]** 46/10 46/13
**subpoenaed [1]** 25/13
**subsequently [1]** 15/6
**substantial [3]** 18/11 19/1 27/12
**substantiated [1]** 20/11
**substantiates [1]** 22/3
**such [4]** 10/4 19/21 26/23 30/23
**sudden [2]** 54/8 54/19
**sufficient [2]** 59/3 61/22
**sufficiently [1]** 9/5
**suggest [3]** 20/15 25/12 54/21
**suggesting [2]** 19/2 21/22
**suggestion [2]** 44/15 44/17
**suggests [1]** 56/16
**Suite [1]** 1/20 2/11 2/16
**sum [1]** 56/18
**summary [1]** 41/7
**summed [1]** 21/8
**Sunrise [1]** 29/20
**supervision [1]** 6/7
**supplement [3]** 3/17 4/2 6/3
**support [8]** 22/25 23/2 23/3 30/4 30/15 33/10
33/22 33/23

**S**

support is [1] 30/15
supported [1] 49/10
supports [2] 31/16 32/9
suppose [1] 27/10
suppressed [2] 62/8 62/10
sure [7] 9/14 17/16 27/22 28/3 37/9 42/15
58/20
system [9] 4/18 4/23 6/5 6/14 44/22 44/24
44/24 45/22 57/9
systems [2] 13/3 57/6

**T**

table [2] 3/7 40/2
Tabs [95]
taint [6] 27/11 27/15 47/10 62/16 64/11 64/13
take [7] 4/21 7/13 31/11 36/5 38/16 45/20
48/3
taken [3] 22/10 33/18 48/5
taking [2] 42/7 55/15
talk [1] 14/24
talked [3] 20/18 42/5 53/2
talking [6] 15/11 24/7 26/6 28/23 35/2 47/22
talks [3] 24/2 24/3 31/2
Tashchyan [3] 7/20 7/24 58/8
tasks [1] 42/5
team [64] 3/7 3/8 3/22 3/24 4/1 4/21 4/25 5/14
6/6 6/6 9/5 11/11 11/20 24/8 24/14 24/17
24/24 25/13 25/16 27/11 27/11 27/13 27/15
27/16 27/21 40/16 41/19 42/5 42/9 42/24 43/5
44/8 45/24 45/25 46/11 46/20 46/21 46/24
47/11 47/14 53/18 53/21 53/23 54/3 54/8 54/9
54/12 54/14 54/16 55/2 55/3 55/7 57/19
58/2 59/8 59/16 61/15 62/15 62/16 62/16
64/10 64/11 64/13
Team's [2] 24/25 44/1
technical [1] 8/3
techniques [1] 63/6
ten [5] 33/4 33/7 33/8 48/4 49/7
ten-minute [1] 48/4
tend [1] 62/2
terabytes [1] 47/22
term [1] 49/25
terms [3] 27/16 47/2 64/21
tertiary [1] 36/2
test [1] 36/12
testified [1] 11/6 23/1 29/1 31/14 35/16 38/9
58/12
testimony [4] 9/23 58/8 59/2 61/6
than [6] 8/4 30/16 30/18 34/17 60/14 66/19
Thank [13] 3/25 6/17 10/12 21/2 40/23 40/25
46/4 48/2 48/3 56/5 60/9 66/3 66/19
thanking [1] 66/10
that [395]
that's [131] 10/5 12/24 16/16 21/11 21/13 24/2
27/23 28/2 31/22 32/1 34/21 36/2 36/25 37/3
37/4 38/4 38/21 38/21 40/17 46/15 49/25
52/14 53/24 53/24 54/19 54/20 54/24 62/10
64/16 65/3 65/16
their [12] 4/22 6/22 7/7 8/21 21/18 32/14 45/7
55/4 58/8 60/13 64/22 66/19
them [29] 6/22 12/4 16/3 20/20 20/21 21/16
21/18 23/7 30/20 31/6 32/6 35/4 36/7 37/1
37/25 38/17 44/9 44/12 45/2 45/8 45/9 45/10
45/11 45/12 46/10 56/13 61/14 66/8 66/9
themselves [1] 25/6
then [24] 4/20 5/15 5/18 6/3 6/10 6/15 7/23
15/16 16/18 18/15 32/22 32/24 39/2 42/18
42/22 43/10 44/20 45/8 47/10 57/24 61/20
63/20 64/24 65/13
theory [4] 23/11 52/1 62/22 63/12
there [86]
there's [12] 8/9 8/22 8/24 8/25 8/25 13/23
16/20 22/4 30/11 35/23 52/19 54/21
therefore [1] 43/22
thereof [1] 38/15
these [33] 4/10 7/8 8/13 11/5 11/5 11/8 16/21
19/16 22/8 22/25 29/21 29/21 31/3 32/18
32/19 33/7 33/20 33/21 33/23 34/4 34/24 35/8
35/10 35/24 36/25 39/16 39/20 41/17 41/20
45/8 46/1 60/3 66/14
they [70]
they're [2] 21/17 66/7
they've [2] 45/22 51/3
thing [6] 50/18 50/19 54/22 54/23 55/1 57/20
things [20] 20/18 22/15 33/21 35/10 35/20
36/19 37/8 42/18 42/19 42/21 43/2 43/2 43/3
43/4 43/11 45/6 47/18 52/1 52/25 63/3
think [45] 9/5 9/7 9/8 14/7 16/20 16/23 17/23
18/13 19/23 20/24 22/4 22/19 23/8 23/11
23/14 24/13 26/6 28/17 31/4 34/16 36/2 37/18
37/19 39/4 40/23 42/1 42/11 46/1 47/24 55/17
57/2 58/11 59/2 59/23 60/1 60/19 61/3 61/6
61/21 62/10 62/16 62/21 65/16 65/21 66/16
third [2] 3/23 4/1
this [130]
those [9] 4/24 6/10 7/3 8/2 8/15 10/8 11/11
13/2 16/2 20/11 20/24 31/15 33/20 42/4 43/9
43/10 44/25 45/10 46/8 46/9 46/18 51/24
53/19 56/2 56/18 57/11 59/24 63/7 64/1
though [6] 60/12 61/22
thought [6] 34/13 39/2 44/12 44/17 45/9 55/4
thoughts [2] 65/3 65/13
three [6] 3/20 5/8 5/10 21/14 59/4 62/4
through [30] 4/7 4/14 7/2 7/14 7/15 11/11
12/5 14/3 15/13 16/7 17/13 17/14 17/14
21/25 23/6 28/10 30/20 31/15 31/21 35/4
38/12 43/4 43/9 45/2 46/14 47/7 49/23 55/12
56/18 62/12
tied [2] 35/17 35/25
time [36] 8/5 8/5 11/10 13/25 13/25 14/2 14/2
14/4 18/20 19/22 20/22 24/12 29/4 32/19
32/20 32/22 33/13 34/8 37/12 38/1 38/19
46/20 52/20 53/8 54/6 54/12 56/21 63/19
63/21 64/6 64/6 65/5 65/24 66/13 66/14
time-consuming [1] 38/19
timeline [1] 9/18
timely [1] 14/20
times [3] 24/7 35/1 60/5
timing [2] 12/7 64/20
Title [1] 67/7
today [6] 8/7 22/4 34/24 54/23 57/17 57/20
told [10] 9/25 12/4 33/11 45/10 45/11 45/25
54/17 55/25 57/18 66/18
too [3] 22/1 22/4 31/6
took [3] 23/18 37/25 51/2
top [1] 49/21
total [2] 31/11 39/13
totality [1] 24/17
totally [1] 45/4
touched [1] 55/11
town [2] 47/23 47/24
track [5] 13/4 13/12 35/21 57/7 57/9
tracked [1] 13/12
traction [1] 17/7
Tran [4] 32/12 38/22 60/3 60/13
transactions [4] 31/3 32/18 50/4 50/5
transcript [4] 1/9 1/15 67/8 67/10
transparent [2] 35/11 40/16
treading [1] 43/18
trial [31] 1/12 9/22 11/7 15/14 15/16 18/6
18/20 19/2 19/5 20/3 20/4 31/8 31/17 31/19
32/7 32/9 32/10 32/13 43/8 54/5 54/18 55/9
57/13 58/12 59/11 59/20 64/14 64/15 64/25
65/19 66/10
true [2] 53/1 67/7
trying [1] 4/23
TUESDAY [1] 3/1
turn [3] 26/17 35/1 37/22
turned [3] 42/10 42/20 45/11
twice [2] 12/4 45/23
two [33] 3/21 7/15 8/6 9/19 11/3 13/3 14/22
16/21 18/4 19/7 23/18 31/7 33/21 34/14 37/16
38/10 38/12 42/5 43/9 46/1 51/8 53/12 54/5
57/6 57/11 57/17 58/3 59/10 59/24 60/2 60/5
62/8 64/8
two-plus [1] 9/19
twofold [1] 39/8

**U**

U.S [8] 7/19 10/7 11/22 12/18 12/22 49/9
61/25 67/16
ultimately [1] 49/12
unallocated [1] 52/18
unclear [1] 8/1
under [24] 6/7 10/14 14/16 17/22 23/11 27/2
27/5 28/21 30/17 36/11 36/22 41/20 42/20
43/3 44/18 45/9 46/2 46/22 47/2 51/20 51/25
undermine [2] 28/1 28/5
underneath [1] 50/17
understand [4] 7/17 41/17 46/17 53/6
understanding [2] 4/9 6/15
Understood [1] 66/11
UNITED [14] 1/4 1/9 1/19 2/3 2/4 2/6 2/7 2/10
3/3 3/6 3/8 6/5 67/7 67/11
unless [2] 21/1 36/19
unlikely [1] 63/24
unquote [2] 29/8 43/21
until [2] 8/20 17/5
up [13] 6/24 15/13 16/7 21/8 23/24 29/2 29/19
31/21 42/12 44/22 44/24 56/18 59/21
updated [1] 31/12
upon [5] 27/15 28/18 35/8 35/10 54/16
us [12] 4/17 7/13 7/20 7/24 14/5 24/10 25/5
34/9 34/14 51/11 54/13 54/17
use [12] 5/15 9/12 16/3 16/12 16/18 18/6
18/14 34/23 36/17 54/18 55/13 55/15
used [14] 12/6 13/3 16/17 16/21 28/16 30/13
30/14 32/25 36/16 38/6 38/7 57/6 57/9 59/20
useful [2] 36/13 60/16
using [1] 35/11
usual [1] 66/8
utilize [1] 39/20
utilized [2] 28/13 28/15

**V**

valid [2] 45/9 45/10
value [1] 39/3
Varani [7] 4/19 7/17 8/1 11/6 11/9 50/23
51/12
Varani's [2] 7/22 8/10
various [4] 8/13 24/6 55/16 59/10
vendor [1] 4/13
versus [3] 3/4 35/16 61/25
very [11] 7/7 11/3 13/11 13/16 17/10 18/13
22/24 32/12 33/19 36/21 37/8 38/16 41/5
41/23 43/6
victim [2] 59/5 64/23
victims [4] 21/11 21/14 21/23 60/3
videotapes [1] 34/25
view [1] 15/19
violation [2] 40/7 61/20
virtual [15] 4/17 4/23 6/4 6/14 7/21 7/25 8/2
8/10 23/20 38/11 38/13 44/24 45/22 51/6 51/8
volume [3] 27/12 61/17 63/23
voluminous [1] 38/19
voluntary [1] 44/10
vs [1] 1/10

**W**

wait [3] 23/23 30/2 30/2
walk [2] 23/6 30/19
want [12] 7/16 9/19 20/8 37/1 37/4 37/14 38/6
41/1 56/12 64/8 64/25 65/20
wanted [4] 6/22 23/19 54/4 54/18
wants [1] 36/20
warrant [21] 5/23 6/2 9/21 10/22 11/1 25/25
26/4 26/15 42/20 43/4 45/3 45/4 45/9 46/15
46/22 47/3 47/23 49/6 49/7 49/12 61/13
warrants [4] 12/14 24/10 42/15 46/14
was [196]
Washington [3] 7/18 11/6 11/7
wasn't [12] 20/11 22/22 28/21 32/24 44/14
50/22 51/12 55/19 55/22 59/20 60/19 62/11
watched [1] 66/14
watching [1] 66/15
way [12] 5/21 7/20 21/7 26/12 26/15 33/14
39/8 51/6 51/7 52/23 53/4 54/1

# W

**ways [1]** 62/21
**we [137]**
**We'll [1]** 61/15
**we're [3]** 4/23 35/2 35/11
**we've [4]** 26/6 34/7 34/8 35/12
**week [2]** 64/24 64/25
**weekend [1]** 5/15
**weeks [1]** 31/15
**well [23]** 6/24 8/4 11/3 12/15 12/18 13/17 16/6
18/4 20/8 21/7 21/18 22/16 23/15 24/13 27/10
27/24 28/2 28/16 30/7 39/18 41/23 43/23
57/25
**went [7]** 14/24 16/13 39/6 43/4 43/5 45/2
47/21
**were [78]**
**weren't [8]** 8/19 16/7 32/19 42/21 42/22 45/5
46/19 60/18
**West [2]** 1/20 2/11
**what [101]**
**what's [7]** 9/4 9/8 24/4 24/11 30/18 32/10
34/18
**whatever [8]** 27/10 30/18 31/1 34/17 38/20
39/22 40/4 65/20
**whatsoever [1]** 13/6
**when [38]** 6/24 7/5 11/5 17/5 19/21 20/11
20/15 22/5 24/2 24/7 29/20 31/2 31/7 31/21
31/22 32/8 32/21 35/7 35/17 36/12 36/22
36/25 38/20 39/9 40/15 40/20 43/7 44/14
45/18 47/22 47/24 53/18 55/8 55/24 55/25
58/12 58/14 65/17
**where [14]** 10/4 17/3 25/2 25/7 26/16 29/9
39/10 40/19 47/15 47/20 47/25 49/1 53/23
59/4
**Whereupon [1]** 66/20
**whether [22]** 15/2 16/6 19/19 25/12 28/14
28/14 28/17 29/4 31/24 34/4 36/16 36/17 40/9
43/20 44/15 44/16 46/8 46/21 47/1 52/9 52/10
58/3
**which [37]** 4/10 4/11 5/3 5/23 5/24 5/25 6/1
6/5 6/9 7/23 10/18 19/15 22/2 25/21 26/18
29/8 30/21 30/23 31/10 33/8 34/7 34/15 34/24
35/15 35/24 36/17 44/23 45/15 45/22 45/25
49/6 49/8 49/10 49/12 51/21 59/18 61/23
**while [4]** 7/14 7/18 21/15 52/25
**who [13]** 13/22 13/22 30/14 33/1 39/5 39/6
39/25 41/15 43/6 44/22 45/18 45/19 45/21
**Who's [1]** 55/18
**whom [2]** 25/15 59/25
**why [16]** 13/14 13/18 13/23 16/16 21/13 27/6
28/2 33/6 33/21 35/23 36/25 39/25 41/13
45/11 54/19 58/18
**will [27]** 4/12 5/9 5/24 7/10 8/15 10/24 18/3
18/15 20/1 21/13 26/2 26/13 32/22 33/13
34/18 36/5 38/22 39/8 41/23 49/20 55/6 57/5
64/15 64/22 65/3 65/19 66/3
**willful [2]** 62/14 62/15
**willfully [1]** 62/9
**winning [2]** 23/14 23/15
**wire [1]** 34/1
**withdraw [2]** 28/13 28/15
**within [8]** 7/22 8/10 12/14 49/4 52/18 53/19
55/18 58/4
**without [5]** 25/5 25/6 37/13 38/4 44/3
**witnesses [10]** 16/19 16/21 18/23 28/10
28/12 36/20 38/9 63/1 63/5 63/13
**won't [1]** 63/7
**word [3]** 56/8 56/11 62/11
**words [1]** 23/14
**work [2]** 33/2 33/2
**worked [2]** 43/6 55/7
**working [2]** 5/20 13/22
**would [84]**
**wouldn't [3]** 21/3 22/10 63/17
**wrong [5]** 41/10 41/11 41/11 41/13 58/25
**WYMAN [2]** 2/5 3/6 54/25

# Y

**year [1]** 24/20

**years [12]** 9/19 11/4 19/8 20/7 30/25 33/21
34/14 46/9 47/4 51/6 58/7 58/8
**yes [12]** 3/18 22/14 23/25 24/18 27/6 41/3
43/24 46/12 46/15 46/25 48/24 58/24
**yesterday [12]** 3/17 3/23 4/2 4/19 5/2 5/9 5/15
9/3 11/9 11/10 17/8 50/23
**yet [2]** 46/20 53/8
**you [90]**
**you're [3]** 19/2 28/17 28/23
**you've [5]** 9/3 20/9 21/7 24/13 54/23
**your [113]**

# Z

**zero [2]** 21/18 45/24